UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ABBY CHAMPION, ALANNA ARRINGTON,
AMBAR CRISTAL ZARZUELA MONTERO,
ANNA CLEVELAND, ANOK YAI, BLANCA
PADILLA, BRIONKA HALBERT, BROOKE
ROBINSON, CALLUM STODDART, CARA
TAYLOR, CLAIRE DELOZIER, CYNTHIA
ARREBOLA, DAMIEN MEDINA, DYLAN
CHRISTENSEN, EMILY REBECCA HILL
p/k/a EMI RED, ENIOLA ABIORO,
GEORGINA GRENVILLE, GRACE
ELIZABETH HARRY CABE p/k/a GRACE
ELIZABETH, GRACE HARTZEL, HIANDRA
MARTINEZ, JAL BUI, JOÃO KNORR,
KRISTIN LILJA SIGURDARDOTTIR p/k/a
KRISTIN LILJA, LEONA WALTON p/k/a
BINX WALTON, LINEISY MONTERO,
LUCIA LOPEZ AYERDI p/k/a LUCIA LOPEZ,
LUISANA GONZALEZ, MANUELA
MILOQUI p/k/a MANU MILOQUI, MARIA
VITORIA SILVA DE OLIVEIRA p/k/a MARIA
VITORIA, MARIAM URUSHADZE p/k/a
MARISHA URUSHADZE, MAUD
HOEVELAKEN, MAYA GUNN, MYRTHE
BOLT, RACHELLE HARRIS, ROCIO
MARCONI, SARA EIRUD, SELENA
FORREST, SHUPING LI, TANG HE, UGBAD
ABDI p/k/a UGBAD, VERA VAN ERP,
VIKTORIIA PAVLOVA p/k/a ODETTE
PAVLOVA, XIAOQIAN XU,

            Plaintiffs,

    -against-

MODA OPERANDI, INC., ADVANCE
PUBLICATIONS, INC. d/b/a CONDE NAST,
ADVANCE MAGAZINE PUBLISHERS, INC.
d/b/a CONDE NAST,

            Defendants.

-------------------------------------------------------------------X

:
:
:  20 Civ. 07255 (LAK)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**DEFENDANT MODA OPERANDI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Kimberly M. Maynard
New York, New York 10005
Phone:  (212) 980-0120
Fax:  (347) 438-2114

*Attorneys for Defendant Moda Operandi, Inc.*

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT ............................................................................................................. 10

    I.     PLAINTIFFS CLAIM FOR RELIEF UNDER
          SECTION 43(A) OF THE LANHAM ACT FAILS
          AS A MATTER OF LAW .................................................................... 10

          A.     Considered in the Context of Moda's Site, It Is
                 Implausible that Plaintiffs' Images Imply Their
                 Endorsement of Moda ................................................................ 12

          B.     There can be no False Endorsement Claim
                 because Plaintiffs Are Actually Associated with Moda's
                 Products .................................................................................... 18

    II.    THE RIGHT OF PUBLICITY CLAIMS BY
          PLAINTIFFS NOT DOMICILED IN NEW YORK
          SHOULD BE DISMISSED AS A MATTER OF LAW ...................... 21

CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albert v. Apex Fitness, Inc.*,
   No. 97 Civ. 1151 (LAK), 1997 WL 323899 (S.D.N.Y. June 13,
   1997) ..................................................................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)...................................................................... 11

*Bovinett v. HomeAdvisor, Inc.*,
   No. 17 C 6229, 2018 WL 1234963 (N.D. Ill. Mar. 9, 2018) .................................. 20

*Burck v. Mars, Inc.*,
   571 F. Supp. 2d 446 (S.D.N.Y. 2008)...................................................................... 23

*Burton v. Label, LLC*,
   344 F. Supp. 3d 680 (S.D.N.Y. 2018)...................................................................... 20

*Cairns v. Franklin Mint Co.*,
   107 F. Supp. 2d 1212 (C.D. Cal. 2000) .................................................................. 15

*Chanel, Inc. v. RealReal, Inc.*,
   449 F. Supp. 3d 422 (S.D.N.Y. 2020)................................................... 14, 17, 18, 19

*Cummings v. Soul Train Holdings LLC*,
   67 F. Supp. 3d 599 (S.D.N.Y. 2014)........................................................................ 22

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
   604 F.2d 200 (2d Cir. 1979).................................................................................... 13

*Diana Princess of Wales Mem'l Fund v. Franklin Mint Co.*,
   216 F.3d 1082 (9th Cir. 1999), *as amended on denial of reh'g* (Feb.
   24, 2000) ................................................................................................................. 24

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010)................................................................................. 3, 11

ii

*Dryer v. Nat'l Football League*,
  814 F.3d 938 (8th Cir. 2016) ................................................................................... 20

*Valencia ex rel. Franco v. Lee*,
  316 F.3d 299 (2d Cir. 2003)..................................................................................... 11

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
  713 F. Supp. 2d 215 (S.D.N.Y. 2010)...................................................................... 22

*Gibson v. SCE Grp., Inc.*,
  391 F. Supp. 3d 228 (S.D.N.Y. 2019)...................................................................... 16

*Hart v. Amazon.com, Inc.*,
  191 F. Supp. 3d 809 (N.D. Ill. 2016), *aff'd,* 845 F.3d 802 (7th Cir.
  2017) ........................................................................................................................ 14

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) ................................................................................... 23

*Madama v. Genesis Rehab Servs.*,
  No. CIV.A. 12-1451 MLC, 2014 WL 3695976 (D.N.J. July 24,
  2014) ........................................................................................................................ 21

*Martin v. Wendy's Int'l, Inc.*,
  183 F. Supp. 3d 925 (N.D. Ill. 2016) ...................................................................... 14

*Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*,
  333 F. Supp. 2d 418 (D. Md. 2004) ......................................................................... 21

*Naked Cowboy v. CBS*,
  844 F. Supp. 2d 510 (S.D.N.Y. 2012)...................................................................... 13

*Nelson v. Working Class, Inc.*,
  No. 99 CIV. 8854 HB, 2000 WL 420554 (S.D.N.Y. Apr. 18, 2000) .................... 22

*Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*,
  269 F.3d 114 (2d Cir. 2001)..................................................................................... 12

*Pelton v. Rexall Sundown, Inc.*,
  No. 99 CIV 4342 JSM, 2001 WL 327164, at *4 (S.D.N.Y. Apr. 4,
  2001) ................................................................................................................... 15, 16

iii

*Pirone v. MacMillan, Inc.*,
   894 F.2d 579 (2d Cir. 1990)....................................................................... 13, 14, 15, 17

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961)............................................................................... 3, 12

*Roberts v. Bliss*,
   229 F. Supp.3d 240 (S.D.N.Y. 2017)................................................................ 12, 13

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989).............................................................................. 13, 22

*Rostropovich v. Koch Int'l Corp.*,
   No. 94 CIV. 2674 (JFK), 1995 WL 104123 (S.D.N.Y. Mar. 7,
   1995) ...................................................................................................................... 23

*Se. Bank, N.A. v. Lawrence*,
   66 N.Y.2d 910 (N.Y. 1985) ................................................................................... 22

*Yankee Pub. Inc. v. News Amer. Publ'g*,
   809 F. Supp. 267 (S.D.N.Y. 1992) ........................................................................ 12

**Statutes**

28 U.S.C. § 1367(c)(3)................................................................................................ 11

Lanham Act..........................................................................................................*passim*

New York's Civil Rights Law ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 44.1.................................................................................................... 23

Defendant Moda Operandi, Inc. ("Moda") submits this memorandum in support of its motion to dismiss Plaintiffs' claims under the Lanham Act, 15 U.S.C. § 1101 *et. seq.* in their entirety.  Plaintiffs' pleading does not plausibly allege that an appreciable number of ordinarily prudent consumers, looking for or buying designer apparel on Moda's e-commerce website, are likely to mistakenly believe that Plaintiffs endorsed or sponsored, or are associated with Moda or its goods.  Moreover, the right of publicity claims for the majority of the forty-three Plaintiffs under Sections 50 and 51 of New York's Civil Rights Law must be dismissed because these Plaintiffs are not domiciled in New York and therefore do not have right of publicity claims under the New York statute.

Moda is an e-tailer of luxury goods, including high fashion apparel.  Its e-commerce platform is devoted to the promotion and sale of the world's most renowned fashion designers, as well as the most promising emerging designers.  In addition to offering immediately available in-season fashion, Moda hosts online designer trunkshows, typically spanning two to four weeks, during which consumers can preorder the latest fashions from designers' runway collections for delivery in the next fashion season.  Like thousands of other e-tailers, consumers shopping on Moda's site can examine the apparel offered by viewing it close up and farther away; from the front, side, back, top and bottom; hanging free or laid flat; and, in some cases, as worn by a model.  Moda's site depicts hundreds of models in the same manner: wearing the

apparel of Moda's designers.  None of them are identified by name or other biographical information, and, most of the time, their faces are obscured.  Among these hundreds of models are the forty-three plaintiffs in this case ("Plaintiffs"), each of whom claims that Moda's typical consumers will understand the use of her image to imply source, sponsorship, or endorsement of Moda or its products.

Consumers who shop on e-commerce sites are accustomed to seeing images that show people modeling the clothing and other items offered for sale.  Plaintiffs' images are no different.  They are merely anonymous, generic photos that allow consumers a pre-purchase view of how the high-fashion apparel looks when worn on the runway or at a trunkshow.  While some may question whether those models were hired and paid by the designers to wear the apparel for a picture, they are not going to be confused into believing that the models are endorsing or associated with Moda's e-commerce website.

Indeed, Plaintiffs' images do not stand out from any of the other thousands of images on Moda's site and Plaintiffs are not depicted any differently from the hundreds of other models.  What reasonable consumers would believe that any one (let alone each and every one) of Plaintiffs endorsed Moda?  Who would believe this when their names are not mentioned?  What company would seek to create an impression of endorsement by a model and then obscure her face, even some of the time?

2

Moda should not be forced to go through expensive and time-consuming discovery, including extensive factual analysis regarding whether each model has protectable rights under the Lanham Act and has satisfied the multi-factored *Polaroid* test¸ *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), for establishing likelihood of confusion (including, quite possibly having to defend and/or conduct multiple separate consumer perception surveys designed to measure the recognizability of Plaintiffs' images and the existence (or lack) of consumer confusion). Plaintiffs' claims under the Lanham Act are not plausible and should be dismissed.

With respect to Plaintiffs' claims for violation of their right of publicity under Sections 50 and 51 of New York's Civil Rights Law, the law is clear that such protection only is available to persons who are domiciled in the State of New York. At least twenty-six of the Plaintiffs fail to meet that standard, and their claims must be dismissed.

## STATEMENT OF FACTS[1]

---

[1] This Statement of Facts is based on the allegations in Plaintiffs' Complaint and the documents and exhibits attached to and/or referred to therein. The Court may rely on pages from Moda's website that were not attached to the Complaint, because the Complaint relies heavily on the website. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

3

DefendantModa, an E-tailer of High Fashion

The Complaint defines Moda as an "online storefront," located at www.modaoperandi.com, through which consumers can purchase high-fashion design items that are, *inter alia*, seen on the runway.  Compl., Dkt. 1 ¶ 299.[2]  Moda enables its customers to pre-order these items at what are described as "online trunk shows[3]" before the items are available at stores. *Id.* ¶ 300.  While retail stores may only select certain pieces from a designer's runway show for ultimate sale to consumers, Moda offers consumers the opportunity to purchase items from the entire runway show.  *Id.* ¶ 301.

Significantly, there is no allegation, nor could there be an allegation, that Moda sells counterfeit or knock-off goods or that Moda is selling items other than those that the designers have chosen to make available for sale to consumers.  Rather, Moda sells the same high-end fashion products that are on display at the runway shows organized by the high fashion designers featured on its site.

In fact, Moda's entire online "trunkshow" business is a virtual extension of the runway, through which designers can market and sell their apparel and similar items.

---

[2] The Complaint is filed with this motion as Exhibit A to the Declaration of Edward H. Rosenthal ("Rosenthal Decl.").

[3] The term "trunkshow" comes from the practice of designers selling their fashion collections out of trunks prior to selling them in stores.

4

Its "About" page, found at www.modaoperandi/editorial/about-us, states that "Moda Operandi curates leading and emerging designers from around the world, bringing the best of their in-season assortment and the entirety of their next season collections to a general audience."  Declaration of Edward Rosenthal, dated January 15, 2021 ("Rosenthal Decl."), Ex. B (About-Us Page).  Moda's home page, found at www.modaoperandi.com, informs consumers that it is selling designer clothing and includes tabs allowing the user to navigate to designers and trunkshows.  *Id.*, Ex. C (Moda Homepage).  Users who click on the "designer" tab, find a list of hundreds of designers.  *Id.*, Ex. D (Designers Page).  A click on the name of a particular designer leads to pictures and descriptions of a range of apparel from that designer's collection. *See*, *e.g.*, *Id.*, Ex. E (Valentino Designer Page).

Moda's site mimics the runway not only by offering designer fashion, but also by hosting online designer trunkshows and providing commentary on fashion.  Moda's trunkshows typically span two to four weeks and allow consumers to preorder the latest fashions from designers' runway collections.  Its dedicated e-publication, *The Edit*, provides curated articles discussing the latest fashion news.  *Id.*, Ex. F (The-Edit Page), Ex. G (Trunkshow Questions Page).  Just as consumers who attend runway and trunkshows in person can pre-order apparel worn by the models, consumers visiting Moda's site can view apparel on the virtual runway or in a virtual trunkshow and then

pre-order it, and they can review articles in *The Edit* for information and opinions on the latest trends. *Id.*

Moda's site contains thousands of images of the apparel it offers for sale, allowing prospective purchasers to view it from almost every angle imaginable: top, bottom, front, back, close-up, and far away. *Id.*, Ex. H (Valentino Product Page); *see*, *e.g.*, Compl. Ex. 5, Dkt. 1-2 at 18-21. As on most e-commerce platforms, some of Moda's products are depicted by themselves (i.e., just a picture of the item offered for sale), others are depicted as they were worn by a model on the runway or in a photoshoot. *Id.* Moda's site contains the images of hundreds of models (including Plaintiffs) wearing designer apparel and accessories the runway. *See*, *e.g.*, *id.*, Ex. E (Valentino Designer Page). Each of these images is used for the same purpose in the same way—to demonstrate how the designer apparel looked on the runway. *Id.*; *see*, *e.g.*, Compl. Ex. 8, Dkt. 1-3 at 4 ("As seen on the SS '20 runway; style yours neutral shoes for a natural femme look"). There is no allegation in the Complaint that any one of Plaintiffs' images were used in a manner distinct from the images of any of the other models, including the other Plaintiffs.

Plaintiff Models

There are forty-three plaintiffs in this case, all of whom claim to be professional models. Compl., Dkt. 1 ¶ 52. All claim that they have worked in the State and County of New York (*Id.* ¶¶ 1-43), that they are represented by Next Model

6

Management, L.L.C., which is located in the City and State of New York (*Id.* ¶ 50), and that their careers all are "centered" in New York (*Id*. ¶¶ 51, 292). However, only sixteen of them claim to be "residents" of New York (Arrington, ¶ 2;  A.C. Montero, ¶ 3; Yai, ¶ 5; Padilla, ¶ 6; Taylor, ¶ 10; Medina, ¶ 13; Christensen, ¶ 14; Aborio, ¶ 16; Cabe, ¶ 18; Hartzel, ¶ 19; Walton, ¶ 24; Montero, ¶ 25; Gonzalez, ¶ 27; Abdi, ¶ 40; Van Erp, ¶ 41; Pavlova, ¶ 42).  One claims to be a resident of both New York and Brazil (Knorr, ¶ 33).

The remaining twenty-six Plaintiffs are alleged to be residents of a variety of other states or countries (the "Non-New York Plaintiffs"): nine are alleged to be from states in the United States other than New York, including two from California (Champion, ¶ 1, Forrest, ¶ 37), two from New Jersey (Cleveland, ¶ 4; Martinez, ¶ 20), two from Florida (Halbert, ¶ 7; Delozier, ¶ 11), one from Oregon (Robinson, ¶ 8), one from Alabama (Hill, ¶ 15), and one from the State of Washington (Bui, ¶ 21).  The other seventeen Plaintiffs are alleged to be from a variety of foreign countries, including four alleged to be from England or the United Kingdom (Stoddart, ¶ 9; Arrebola, ¶ 12; Grenville, ¶ 17; Gunn, ¶ 32), one from the country of Georgia (Urushadze, ¶ 30), two from the Netherlands (Hoevelaken, ¶ 31; Bolt, ¶ 33), one from Germany (Marconi, ¶ 35), three from China (Li, ¶ 38;  He, ¶ 39; Xu ¶ 43), one from Iceland (Sigurdardottir, ¶ 23), one from Spain (Ayerdi, ¶ 26), one from Argentina

(Miloqui, ¶ 28), one from Canada (Harris, ¶ 34), one from Sweden (Eirud, ¶ 36), and one from Brazil (Oliveira, ¶ 29).

For each Plaintiff, the Complaint contains a series of allegations describing the designers the models have worked with, the brands they are associated with, the publications they have been featured in, and their other professional successes, such as the number of followers on Instagram and ranking on the Models.com website. *Id.* ¶¶ 53-291. It further alleges that each of the Plaintiffs are routinely hired by companies to sell products, are well-known (at least in the modelling industry) in the United States, and have derived income from professional modeling and from the "use of their image, portrait, likeness or name" in connection with the sale or promotion of goods or services. *Id*. ¶¶ 293-297, 330.

Plaintiffs' Right of Publicity and False Endorsement Claim

The Complaint alleges that Moda and co-defendants Advance Publications, Inc. d/b/a Conde Nast and Advance Magazine Publishers, Inc., d/b/a Conde Nast (the "Advance Defendants") have used Plaintiffs' images, without their consent, "to market, promote, advertise and solicit sales of products," including by publishing images of Plaintiffs as "looks" for Moda's consumers to replicate and to promote the sale of individual designer items. *Id*. ¶¶ 317-556.

This use of Plaintiffs' images, according to the Complaint, gives rise to two causes of action. Plaintiffs allege that they each have a claim for relief under Sections

50 and 51 of the New York Civil Rights Law because Moda used their "name, portrait or picture for trade or advertising purposes" without prior written consent.  *Id*. ¶¶ 610-619.  Plaintiffs further allege that they have claims under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), because the use of their images has caused consumers to be "deceived and/or confused into thinking that [they] have provided their respective sponsorship or approval to the goods, services or brand of Moda."  *Id*. ¶¶ 620-652.

There is no allegation in the Complaint that any of the Plaintiffs ever is mentioned by name by Moda.  Nor is there any reference to any biographical or other identifying information.  In the vast majority of instances, Plaintiffs are shown with their faces partially or completely obscured.  *See*, *e.g.*, Compl. Ex. 3, Dkt. 1-1 (A.C. Montero), Ex. 5, Dkt. 1-2 (Yai), Ex. 7, Dkt. 1-2 (Halbert), Ex. 9, Dkt. 1-3 (Stoddart), Ex. 15, Dkt. 1-5 (Hill), Ex. 16, Dkt. 1-5 (Abioro), Ex. 17, Dkt. 1-5 (Grenville), Ex. 19, Dkt. 1-6 (Hartzel),  Ex. 20, Dkt. 1-7 (Martinez), Ex. 26, Dkt. 1-9 (Ayerdi), Ex. 28, Dkt. 1-9 (Miloqui), Ex. 29, Dkt. 1-10 (Oliveira), Ex. 34, Dkt. 1-11 (Harris), Ex. 37, Dkt. 1-12 (Forrest), Ex. 39, Dkt. 1-13 (He), Ex. 40, Dkt. 1-13 (Abdi).  In some instances, all of the images of a given Plaintiff alleged in the Complaint are obscured in this way. *See*, *e.g.*, Compl., Ex. 3, Dkt. 1-1 (A.C. Montero), Ex. 7, Dkt. 1-2 (Halbert), Ex. 9, Dkt. 1-3 (Stoddart), Ex. 16, Dkt. 1-5 (Abioro), Ex. 17, Dkt. 1-5 (Grenville), Ex. 28, Dkt. 1-9 (Miloqui), Ex. 29, Dkt. 1-10 (Oliveira).  In other instances, the Complaint does not provide any exhibit or other description of how a

9

particular Plaintiff was shown on Moda's webpage.  *See*, *e.g.*, Compl., Ex. 4, Dkt. 1-1

(Cleveland), Ex. 10, Dkt. 1-4 (Taylor), Ex. 11, Dkt. 1-4 (Delozier), Ex. 21, Dkt. 1-8

(Bui), Ex. 22, Dkt. 1-8 (Knorr), Ex. 24, Dkt. 1-8 (Sigurdardottir).

Importantly, there is no allegation in the Complaint that Moda depicts

Plaintiffs in anything other than a true and accurate photograph of them as they were

wearing the apparel at a runway show.  *See, generally*, Compl.  Nor is there any

allegation that Moda made any statements that any of the Plaintiffs endorses or is

associated with Moda's products.  The only "reference" to any of the Plaintiffs is that

they are shown, in the same manner as each other and as hundreds of other models,

wearing the designer apparel offered for sale by Moda.  Compl., Dkt. 1 ¶¶ 317-437.

And, Plaintiffs have not plead that anyone, anywhere has actually been confused by

Moda's website or the images of Plaintiffs depicted by Moda.

## ARGUMENT

## I.     PLAINTIFFS CLAIM FOR RELIEF UNDER SECTION 43(A) OF THE LANHAM ACT FAILS AS A MATTER OF LAW

Plaintiffs allege that Moda's use of images of them wearing designer apparel

on its e-commerce site caused Moda's consumers to be deceived or confused into

thinking that each Plaintiff has falsely endorsed or is falsely associated with Moda or

its products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  To

establish that Moda's use of their images creates a likelihood of confusion, however,

Plaintiffs must demonstrate that it is plausible that an "appreciable number of

10

ordinarily prudent purchasers" viewing Plaintiffs' images are likely to be confused or
misled as to the source of Moda's goods or are likely to mistakenly believe that
Plaintiffs endorsed or sponsored Moda or its goods.  Plaintiffs cannot meet this
standard.[4]

A claim is plausible only if the allegations "allow[] the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *See
Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009).  In considering a
12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the
complaint, documents attached to the complaint as exhibits, and documents incorporated
by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citing *Chambers*, 282 F.3d
at 153).  This is a "a context-specific task, that requires the reviewing court to draw on
its experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.  Here,
Plaintiffs' allegations, although voluminous, cannot meet that test.  Viewing with
common sense the full context of Moda's use of Plaintiffs' images, it is clear that

---

[4] Should the Court dismiss Plaintiffs' Lanham Act claims, it should also dismiss the
remainder of the claims for lack of subject matter jurisdiction as there is no diversity
between the parties.  *See* 28 U.S.C. § 1367(c)(3)("[A] district court[ ] may decline to
exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed
all claims over which it has original jurisdiction...."); *Valencia ex rel. Franco v. Lee*,
316 F.3d 299, 306 (2d Cir. 2003) ("[W]here the federal claims had been dismissed at a
relatively early stage and the remaining claims involved issues of state law that were
unsettled, we have concluded that the exercise of supplemental or pendent jurisdiction
was an abuse of discretion").

Plaintiffs do not—and cannot plausibly—allege false endorsement because: (a) it is inconceivable that any appreciable number of Moda's consumers would understand the use of Plaintiffs' images to indicate endorsement of Moda or its products, rather than to be a mere depiction of Moda's products as worn by models on the runway; and (b) any perceived endorsement is not false. Accordingly, Plaintiffs cannot plausibly plead likelihood of confusion and their Lanham Act claims must be dismissed.[5]

## A.   Considered in the Context of Moda's Site, It Is Implausible that Plaintiffs' Images Imply Their Endorsement of Moda

Not every use of a mark or image is actionable.[6]  *Yankee Pub. Inc. v. News Amer. Publ'g*, 809 F. Supp. 267, 273 (S.D.N.Y. 1992) ("Mere unauthorized use does not by itself make out a cause of action; likelihood of confusion is also an essential

---

[5] When assessing likelihood of confusion, the "a court should focus on the ultimate question of whether consumers are likely to be confused." *Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) (internal quotation omitted). Once a court has determined, on a motion to dismiss, "that it is implausible that a viewer would be confused," it "need not 'slavishly recite the litany of all eight *Polaroid* factors.'" *Roberts v. Bliss*, 229 F. Supp.3d 240, 253 (S.D.N.Y. 2017) (quoting *Orient Exp. Teading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988).

[6] For the following models, Plaintiffs fail to attach any examples of use of their images by Moda, on Moda's site: Cleveland (Ex. 4, Dkt. 1-1), Taylor (Ex. 10, Dkt. 1-4), Delozier (Ex. 11, Dkt. 1-4), Bui (Ex. 21, Dkt. 1-8), Knorr (Ex. 22, Dkt. 1-8), and Sigurdardottir (Ex. 24, Dkt. 1-8). Instead, the only examples provided depict Plaintiffs' images as used by the Advance Defendants. To the extent Plaintiffs are alleging claims against Moda based upon these uses, Moda specifically incorporates the Advance Defendants' motion to dismiss on the grounds that these images are editorial uses and thus protected by the First Amendment. *See Rogers v. Grimaldi*, 875 F.2d 994, 999-1000 (2d Cir. 1989).

element."); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 517 (S.D.N.Y. 2012)

(Lanham Act claims dismissed because name and costume was not used as a source indicator and, therefore, confusion was not possible). Likelihood of confusion is the "critical determinant" of any Lanham Act claim. *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 584 (2d Cir. 1990). Without it, there can be no false endorsement or false association. *See id*. at 584; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir. 1979).

For a false endorsement claim to survive, there must be something about the nature of the use of plaintiff's image to suggest endorsement. *See Roberts*, 229 F. Supp. 3d at 251 ("In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work.") (internal citation omitted). This principal has been recognized time and again, in a variety of situations, but always where the context makes it unlikely consumers will understand use of plaintiff's trademark or image to convey endorsement or sponsorship. For example, in *Chanel, Inc. v. RealReal, Inc.*, this Court found that plaintiff failed to state a claim for false endorsement where the display of numerous other brands, as well as the consignment nature of defendant RealReal's e-commerce site rendered it "highly unlikely" consumers "would confuse the nature of The RealReal's business, the source

13

of its products, or its affiliation—or lack thereof—with Chanel." 449 F. Supp. 3d 422, 439-40 (S.D.N.Y. 2020); *Albert v. Apex Fitness, Inc.*, No. 97 Civ. 1151 (LAK), 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997) (Kaplan, J.) (dismissing false endorsement claims because "[t]here is nothing about defendant's use of [plaintiff's] picture that implies that the plaintiff personally endorsed its products); *see also, e.g., Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 936 (N.D. Ill. 2016) (dismissing false endorsement claim under the Lanham Act where there was "no language directly or indirectly suggesting that plaintiff endorsed defendants' products, nor did the plaintiff's name and record appear in a context that might, by its nature, plausibly mislead consumers to believe that plaintiff endorsed defendants' products"); *Hart v. Amazon.com, Inc.,* 191 F. Supp. 3d 809, 820 (N.D. Ill. 2016), *aff'd,* 845 F.3d 802 (7th Cir. 2017) ("because Plaintiff does not sufficiently allege that Amazon's actions were likely to cause confusion among consumers, Plaintiff fails to state any cognizable claim under the Lanham Act").

In *Pirone*, the Second Circuit granted summary judgment dismissing claims by Babe Ruth's heirs alleging that use of his images in a weekly calendar caused a likelihood of confusion. 894 F.2d at 584-85. The Court recognized that "an ordinarily prudent purchaser would have no difficulty discerning that these photos are merely the subject matter of the calendar and do not in any way indicate sponsorship." *Id.* at 585. Similarly, in *Pelton v. Rexall Sundown, Inc*., this Court found there was no material

issue suggesting a likelihood that an ordinary consumer would understand use of a model's image to be an endorsement of the defendant or its product, particularly because the model's face was partially covered by her arm. Instead, "[a]n ordinary consumer would view Plaintiff's image in a swimsuit on the label not as an indication of sponsorship, but as a reminder of the benefits of taking [defendant's product]." No. 99 CIV 4342 JSM, 2001 WL 327164, at \*4 (S.D.N.Y. Apr. 4, 2001); *see also Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1221 (C.D. Cal. 2000) (use of various images of Princess Diana on commemorative plates do not suggest that her estate authorized the use and does not state a claim under the Lanham Act).

Here, given the context in which consumers encounter Plaintiffs' images, it is inconceivable that consumers would view it as indicating that Plaintiffs are endorsing Moda or its site:

*None of the Plaintiffs is identified by name.* Plaintiffs are nameless and, when they are even referred to at all, it is with only the word "model," in small print, to tell consumers what size clothing the model is wearing. *See*, *e.g.*, Compl., Ex. 5, Dkt. 1-2 at 21 ("Model is wearing a sample size IT 40" in small print). Unlike most endorsers, Plaintiffs' are anonymized—made to look like every other model on the site, and not even identified by name. Consumers will not understand use of unidentified images to be an endorsement. *See Gibson v. SCE Grp., Inc.,* 391 F. Supp. 3d 228, 245 (S.D.N.Y. 2019) ("[T]he misappropriation of a completely anonymous face could not form the

15

basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee."); *Pelton*, 2001 WL 327164, at \*4 (impression of endorsement unlikely where model's name is not mentioned).

 *Plaintiffs' faces are obscured.* Despite that the Plaintiffs presumably are best known by their faces,[7] the images on Moda's site are often faceless. It is implausible to suggest that consumers would believe Moda retained models to endorse it and then obscured their faces, even some of the time, when the most identifiable aspect of models (other than their names) and, therefore, the things most worth showing are their faces. *Pelton*, 2001 WL 327164, at \*4 (impression of endorsement implausible where model's face is obscured).

 *Plaintiffs do not stand out from each other, or anyone else.* When someone endorses a product, their name and image is typically displayed prominently alongside the product, in a manner that highlights the image and person and sets them apart from anyone else who is pictured. Here, every Plaintiff's images appear among—and in the same way as—the images of the other Plaintiffs, hundreds of other models' images, and thousands of images of apparel, making it inconceivable that any one model stands out as endorsing Moda or its products (*see*, *e.g*., Compl. Ex. 1, Dkt. 1-1 at 6;

---

[7] Notably, the Complaint does not contain any allegations that Plaintiffs enjoy fame, celebrity, or renown in their faceless images.

Ex. 2, Dkt. 1-1 at 40; Ex. 18, Dkt. 1-6 at 8; Ex. 24, Dkt. 1-8 at 49; Ex. 47, Dkt. 1-17 at 17).  *See Chanel, Inc.*, 449 F. Supp. 3d at 439-40 (no impression of endorsement where plaintiff's brand was one among many, and not used in a manner that set it apart from other brands).

  <u>*Moda emphasizes the actual sources of its products.*</u>  Moda's home page, "About" page, and the ebb and flow of its website are not devoted to any model (Plaintiffs or otherwise), but rather to the designers whose apparel it sells and to that apparel (Rosenthal Decl., Ex. B-H; *see*, *e.g.*, Compl., Ex. 18, Dkt. 1-6 at 30-34). Further, Plaintiffs' images are only used near the prominent display of (a) Moda's own trademark, MODA OPERANDI, and (b) the names of the high-fashion designers in whose runway shows Plaintiffs walked.  It is improbable that consumers, who encounter these prominent source identifiers on every page of the e-commerce portion of Moda's site will think that the generic, anonymized images of Plaintiffs' signal endorsement.  Instead, they would expect that if Plaintiffs were endorsing Moda, their names would be displayed just as prominently (or at least displayed).  *Pirone*, 894 F.2d at 584-85 (no possibility that endorsement is perceived, in part because actual source of products was prominently displayed); *Chanel, Inc.*, 449 F. Supp. 3d at 439-40 (nature of defendant's e-commerce platform and information on About and FAQ pages rendered impression of endorsement implausible).

17

In short, Moda's e-commerce platform is no different than the thousands of other e-commerce platforms selling apparel and other items.  It uses hundreds of images of nameless, faceless models in the same way, solely to demonstrate how its designer apparel looked on the runway.  The only difference is that because Moda offers apparel from the world's top designers, the people who happen to be modeling that apparel are alleged to be runway models.  But this does not mean there is something magical about Moda's generic use of Plaintiffs' anonymous images that conveys endorsement.  Instead, the context surrounding Plaintiffs' images screams the opposite.  The models' images are merely incidental to the true stars of Moda's site: the designers and their apparel.

Because it inconceivable that ordinarily prudent consumers viewing Plaintiffs' images in the context of Moda's site would think that Plaintiffs sponsored, endorsed, or are even associated with anyone or anything, let alone Moda or its products, there can be no plausible claim for likelihood of confusion and Plaintiffs' Lanham Act claims should be dismissed.

### B.     There can be no False Endorsement Claim because Plaintiffs Are Actually Associated with Moda's Products

Plaintiffs Lanham Act claims also fail because there is nothing false about Moda's use of their images.  In order to state a claim for false endorsement, Plaintiffs must plausibly allege that consumers will *mistakenly* believe that Plaintiffs endorsed or are associated with Moda or its products.  *Chanel, Inc.*, 449 F. Supp. 3d at 438

("[T]he Lanham Act 'does not prevent one who trades a branded product from accurately describing it. . . so long as the trader does not create confusion by implying an affiliation with the owner of the product.'") (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010)).

Plaintiffs acknowledge that they are wearing or wore the products depicted in their images.  Compl., Dkt. 1 ¶ 325.  They do not claim that their photographs show anything other than the way they looked when they appeared on the runway wearing and promoting designer apparel.  They do not plead that their images were photo-shopped or otherwise doctored to make it appear as if they wore the clothing of a designer with whom they never associated.  See, generally, Compl.  Nor could they make such an allegation, because each and every Plaintiff is depicted on Moda's online runway exactly as they appeared on the live runway: wearing the same designer apparel they agreed to and were paid to wear, including so that they could be photographed by anyone in attendance.  See, generally, Compl., Ex. 1-47, Dkt. 1-1 through 1-17.  Further, each of every one of Plaintiffs' images is being used exactly as it was intended to be used when taken on the runway: to allow the designers to promote and sell their apparel.  Finally, Plaintiffs are all professional models who have prior modeling experience and, therefore, understood that their appearance on the runway was for the purpose of selling the designers' apparel.  Compl., Dkt. 1 ¶ 330.

In other words, each Plaintiff actually (and willingly) associated with the products they are wearing in the images on Moda's site and, by extension, actually (and willingly) associated with the retailers who sell those products for the purpose of selling the products. *Id*. ¶ 325. Thus, any belief by consumers that Plaintiffs are associated with Moda or its products *will not be mistaken* because Plaintiffs *actually are* associated with Moda's products, which were always meant to be sold by a retailer. *Dryer v. Nat'l Football League*, 814 F.3d 938, 944 (8th Cir. 2016) (images of NFL players in footage of NFL games is not a false endorsement of NFL because objected-to footage depicts players' actual performances); *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6229, 2018 WL 1234963, at \*6 (N.D. Ill. Mar. 9, 2018) (dismissing false endorsement claim with prejudice because plaintiff-model voluntarily appeared in photoshoot and so unauthorized use of images in video was not false); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018) (no false association claim where defendant, a former employee, continued selling plaintiff's products after termination and, thus, defendant's representation that the products were plaintiff's was not false).  Similarly, any belief that Plaintiffs are associated with the retailers, such as Moda, that sell those products—a natural, obvious, and inevitable extension of donning designer clothing for commercial sale—is similarly not mistaken. *Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 430 (D. Md. 2004) (false endorsement claim dismissed because defendant's use of plaintiff's

image was not false and, although plaintiff did not consent to defendant's specific use of his image, plaintiff knew it would be commercially associated with product); *see also Madama v. Genesis Rehab Servs.*, No. CIV.A. 12-1451 MLC, 2014 WL 3695976, at \*8 (D.N.J. July 24, 2014) (dismissing false endorsement claim where plaintiff was associated with the products in question such that the use of her image was not false and where plaintiff knew her image would be used in commerce in connection with the products).

In sum, even *if* consumers understand Moda's use of Plaintiffs' images to indicate some association with Moda or the designer products that it sells, there is nothing false about it, and Plaintiffs' Lanham Action claims should be dismissed.

## II.     THE RIGHT OF PUBLICITY CLAIMS BY PLAINTIFFS NOT DOMICILED IN NEW YORK SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiffs' right of publicity claims under Sections 50 and 51 of New York Civil Rights Law must be dismissed as to the twenty-six plaintiffs who are not alleged to be domiciled in the State of New York.  The New York Court of Appeals has made clear that "right of publicity" claims are governed by the substantive law of the plaintiff's domicile.  *See Se. Bank, N.A. v. Lawrence*, 66 N.Y.2d 910, 911 (N.Y. 1985); *see also Rogers*, 875 F.2d at 1002.  Where a Plaintiff is not a domicile of New York,

he or she does not have a claim under New York's Civil Rights Law.[8]  *See*, *e.g.*,

*Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602 (S.D.N.Y. 2014)

(dismissing an Illinois domiciliary's right of publicity claims under New York law

against New York defendants, holding that the plaintiff could bring his claims only

under Illinois law); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713

F. Supp. 2d 215, 230 (S.D.N.Y. 2010) (dismissing right of publicity claim under New

York law where plaintiff was domiciled outside of New York); *Nelson v. Working*

*Class, Inc.*, No. 99 CIV. 8854 HB, 2000 WL 420554, at *2 (S.D.N.Y. Apr. 18, 2000)

(dismissing New York domiciliary's right of publicity claim brought under California

law); *Rostropovich v. Koch Int'l Corp.,* No. 94 CIV. 2674 (JFK), 1995 WL

104123 at *8 (S.D.N.Y. Mar. 7, 1995) (same).

Plaintiffs allege that Moda has violated New York Civil Rights Law Sections

50 and 51.  Compl., Dkt. 1 ¶¶ 610-619.  There is no allegation or claim under any

---

[8] New York law requires that only a *domicile* of New York has a right of publicity claim under New York's Civil Rights Law.  *Lawrence,* 66 N.Y.2d at 911; *Rogers,* 875 F.2d at 1002.  The Complaint does not mention the domicile of any of the Plaintiffs, but rather pleads their *residence*.  This is not a distinction without a difference.  It is possible that some of the Plaintiffs who have come to New York to work and currently reside in the state are domiciled elsewhere.  For example, the Complaint alleges that Plaintiff Knorr "resides in both Brazil and Brooklyn, New York," but does not allege Plaintiff Knorr's place of domicile.  Compl., Dkt. 1 ¶ 22.  If  Plaintiff Knorr's domicile is Brazil, he would not have a right of publicity claim under the New York statute.  *See e.g. Cummings*, 67 F. Supp. 3d at 602.

22

other state of foreign law.[9]  The Complaint alleges that the Non-New York Plaintiffs, as identified above, reside outside the State of New York.[10]

Seventeen of the Non-New York Plaintiffs are from outside the United States, representing at least eleven foreign countries.  At least some of these foreign domiciles do not recognize a right of publicity.  For example, the United Kingdom does not recognize a right of publicity.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 611 (9th Cir. 2010) ("England does not recognize a right of publicity").  U.S. Courts have routinely dismissed right of publicity claims of plaintiffs domiciled in the United Kingdom.  *See e.g*. *Love*, 611 F.3d at 610 (dismissing right of publicity claim because English law does not recognize a right of publicity); *Diana Princess of Wales Mem'l Fund v. Franklin Mint Co.*, 216 F.3d 1082 (9th Cir. 1999), *as amended on denial of reh'g* (Feb. 24, 2000) ("no right of publicity could pass to Princess Diana's estate upon her death" because England does not recognize a right of publicity).  Thus, amendment

---

[9] "There is no common law right to privacy or publicity in New York, and thus sections 50 and 51 provide the only remedy for such claims."  *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008) (citing *Groden v. Random House, Inc.*, 61 F.3d 1045, 1049 (2d Cir. 1995)).

[10] In the event that Plaintiffs are given leave to amend their Complaint to add claims under the laws of other states or countries, they should be required to plead with specificity which law they are suing under and to provide more than conclusory allegations as to how Moda's conduct violated their rights of publicity. Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").  Moda specifically reserves all of its rights and defenses under applicable state or foreign law.

of the right of publicity claims of Plaintiffs Stoddart, Arrebola, Grenville, and Gunn,

who reside in England or the United Kingdom (Compl., Dkt. 1 ¶¶ 9, 12, 17, 32),

would be futile.

## CONCLUSION

For the reasons set forth herein, the claims by all of the Plaintiffs' under the

Lanham Act and the claims by the twenty-six Plaintiffs not domiciled in the State of

New York should be dismissed. The Court also should decline to exercise

supplemental jurisdiction over any remaining right of publicity claims and dismiss the

Complaint in its entirety.

Dated: New York, New York
      January 15, 2021

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:___/s/ Edward H. Rosenthal_____
      Edward H. Rosenthal
      Kimberly M. Maynard
28 Liberty Street, 35th Floor
New York, New York 10005
Tel: (212) 980-0120
Fax: (347) 438-2114

*Attorneys for Defendant Moda Operandi, Inc.*

24