UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ABBY CHAMPION, ALANNA ARRINGTON,
AMBAR CRISTAL ZARZUELA MONTERO, ANNA
CLEVELAND, ANOK YAI, BLANCA PADILLA,
BRIONKA HALBERT, BROOKE ROBINSON,
CALLUM STODDART, CARA TAYLOR, CLAIRE
DELOZIER, CYNTHIA ARREBOLA, DAMIEN
MEDINA, DYLAN CHRISTENSEN, EMILY
REBECCA HILL p/k/a EMI RED, ENIOLA ABIORO,
GEORGINA GRENVILLE, GRACE ELIZABETH
HARRY CABE p/k/a GRACE ELIZABETH, GRACE
HARTZEL, HIANDRA MARTINEZ, JAL BUI, JOÃO
KNORR, KRISTIN LILJA SIGURDARDOTTIR p/k/a
KRISTIN LILJA, LEONA WALTON p/k/a BINX
WALTON, LINEISY MONTERO, LUCIA LOPEZ
AYERDI p/k/a LUCIA LOPEZ, LUISANA
GONZALEZ, MANUELA MILOQUI p/k/a MANU
MILOQUI, MARIA VITORIA SILVA DE OLIVEIRA
p/k/a MARIA VITORIA, MARIAM URUSHADZE
p/k/a MARISHA URUSHADZE, MAUD
HOEVELAKEN, MAYA GUNN, MYRTHE BOLT,
RACHELLE HARRIS, ROCIO MARCONI, SARA
EIRUD, SELENA FORREST, SHUPING LI, TANG
HE, UGBAD ABDI p/k/a UGBAD, VERA VAN ERP,
VIKTORIIA PAVLOVA p/k/a ODETTE PAVLOVA,
XIAOQIAN XU,

                 Plaintiffs,

    -against-

MODA OPERANDI, INC., ADVANCE
PUBLICATIONS, INC. d/b/a CONDE NAST,
ADVANCE MAGAZINE PUBLISHERS, INC. d/b/a
CONDE NAST,

                 Defendants.

Case No.: 1:20-cv-07255-LAK

------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
ADVANCE PUBLICATIONS, INC.'S AND ADVANCE MAGAZINE PUBLISHERS, INC.'S
MOTION TO DISMISS**

EDWARD C. GREENBERG, LLC
Tamara L. Fitzgerald
Edward C. Greenberg
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
Phone: (212) 697-8777
Fax: (212) 697-2528
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................1

II.  THE ROGERS TEST IS INAPPLICABLE TO THE SUBJECT USES BY
     VOGUE...........................................................................................................1

     **A.**  There is No Artistic Relevance. ...........................................................10

     **B.**  Even If Rogers Applies, the Use Explicitly Misleads as to the Source
             or Content of the Work. ......................................................................11

III. PLAINTIFFS' ALLEGE FALSE OR MISLEADING STATEMENT OF
     FACT THAT IS LIKELY TO CAUSE CONFUSION AS TO THE
     ASSOCIATION WITH, APPROVAL AND ENDORSEMENT OF
     DEFENDANTS .............................................................................................13

     **A**. False or Misleading Statement of Fact.....................................................14

     **B**. Likelihood of Confusion ...........................................................................17

IV.  SUPPLEMENTAL JURISDICTION ...........................................................25

V.   PLAINTIFFS' CLAIMS UNDER N.Y. CIV. RIGHTS LAW §§ 50 51
     SHOULD NOT BE DISMISSED ..................................................................26

     A.  Non-Resident Plaintiffs' Claims Under the N.Y. Civ. Rights Law ...........26

     B.  Vogue's Use of The Images Do Not Fall Within the "Newsworthy"
         Exception to N.Y. Civ. Rights Law §§ 50, 51. ........................................28

         *a. The Use at Issue Is Not an Advertisement in Disguise or Merely
             Incidental or in Close Proximity with Editorial Content*......................*31*

VI.  CONCLUSION...............................................................................................35

## <u>TABLE OF CASES</u>

<u>STATE CASES</u>

*Beverly v. Choices Women's Med. Ctr.,* 78N.Y.2d 745 (1991)......................................31

*Chaplin v. National Broadcasting Co.,* 15 F.R.D. 134 (D.N.Y. 1953).........................27

*Stephano v. News Group Publ'ns,* 64 N.Y.2d 174 (1984).................................29, 30, 32

*Lopez v. Triangle Communications, Inc.*, 70 A.D.2d 359 (1979)...........................32, 33

*Stewart v. Rollingstone, LLC*, 181 Cal. App. 4th 664 (2010)...............................34, 35


<u>FEDERAL CASES</u>

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,* No. 04 Civ. 6107 (DAB), 2006 U.S. Dist. LEXIS 56703, 2006 WL 2289847 (S.D.N.Y. Aug. 8, 2006)............... 17

*Albert v. Apex Fitness, Inc.*, No. 97 Civ. 1151 (LAK), 1997 U.S. Dist. LEXIS 8535, 1997 WL 323899 (S.D.N.Y. June 13, 1997)......................................................................... 17, 27

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007)................................. 15

*Bi-Rite Enters. v. Button Master*, 555 F. Supp. 1188 (S.D.N.Y. 1983)......................... 26

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 103 S. Ct. 2875 (1983)................................ 29

*Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019).......................*passim*

*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008)..................................................*passim*

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S. Ct. 614 (1988).................................... 25

*Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422 (S.D.N.Y. 2020)........................................ 21

*Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228 (S.D.N.Y. 2019)............................................... 21

*Clark v. Celeb Publ'g, Inc.*, 530 F. Supp. 979 (S.D.N.Y. 1981)........................................ 14, 27

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc*., 886 F.2d 490 (2d Cir. 1989) .............................................................................................................................. 2, 6

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979) ............................................................................................................................. 17, 24

*Fulton National Bank v. Hozier*, 267 U.S. 276, 45 S. Ct. 261 (1925)........................................ 26

*Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228 (S.D.N.Y. 2019)............................................... 21

*Hoffman v. Capital Cities/ABC Inc.*, 255 F.3d 1180 (9th Cir. 2001) ........................................... 33

*LMNOPI v. XYZ Films, LLC*, 449 F. Supp. 3d 86 (E.D.N.Y. 2020) ................................. 1, 17, 19

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) ....................................................................................................................................*passim*

*Maltais v. United States*, 439 F. Supp. 540 (N.D.N.Y. 1977) .................................................. 26

*Mathews v. ABC Television, Inc.*, No. 88 CIV. 6031 (SWK), 1989 U.S. Dist. LEXIS 10694 (S.D.N.Y. Sept. 11, 1989) ........................................................................................................ 27

*Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978) .............................. 17

*Patane v. Clark,* 508 F.3d 106 (2d Cir. 2007) ......................................................................... 14

*Pelton v. Rexall Sundown, Inc*. No. 99 CIV 4342 JSM, 2001 U.S. Dist. LEXIS 3825, 2001 WL 327164 (S.D.N.Y. Apr. 4, 2001) ................................................................................. 23, 24

*Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir. 1990) ..................................................... 17, 22

*Price v. Hal Roach Studios, Inc.*,400 F. Supp. 836 (S.D.N.Y. 1975) ......................................... 27

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) .............................................................*passim*

*Twin Peaks Prods. V. Publ'ns Int'l, Ltd., 996 F.2d 1366 (2d Cir. 1993)* .................................. 11

*United States v. United Foods, Inc.,* 533 U.S. 405, 121 S.Ct. 2334 (2001) ...................... 1, 2, 30

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) ... 1, 6

*Virginia Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S. Ct. 1817 (1976) ..................................................................................................................... 2, 7

*Warner Bros. Entm't Inc. v. Ideal World Direct,* 516 F. Supp. 2d 261 (S.D.N.Y. 2007) .......... 17

*Washington International Ins. Co. v. Victoria Sales Corp.,* 1989 U.S. Dist. LEXIS 8306 (S.D.N.Y. 1989) ...................................................................................................................... 25

*White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395 (9th Cir. 1992) .......................................... 1, 2

*Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.*, 809 F. Supp. 267 (S.D.N.Y. 1992) .......... 6, 17, 20

STATUTES

F.R.C.P. 10(c) ..........................................................................................................................14

F.R.C.P. 12(b)(6) ................................................................................................................1, 21

Lanham Act §43(a) ........................................................................................................... *passim*

New York Civ. Rights Law §§ 50, 51 ................................................................................26, 28

OTHER AUTHORITIES

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &
PROCEDURE § 1327 (2d ed. 1990) ....................................................................................14

## I.     INTRODUCTION

Defendants Advance Publications, Inc. and Advance Magazine Publishers, Inc. (hereinafter collectively "Vogue" and "Defendant") have filed a motion to dismiss plaintiffs' complaint for several reasons, most premised on their position that the subject advertisement is editorial and newsworthy, as opposed to commercial. As set forth hereinbelow, such proposition does not hold water as the uses at issue are definitively commercial and advertisements.

## II.     THE *ROGERS* TEST IS INAPPLICABLE TO THE SUBJECT USES BY VOGUE

The *Rogers* Test is applied when the Lanham Act claim arises out of artistic speech, and when artistic and commercial elements are inextricably intertwined. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).[1] To assert that *Rogers* should be applied here is a red herring. The speech at issue here is not Vogue's articles; the speech at issue here is the text "BUY ON MODA OPERANDI" and "SHOP THIS LOOK", each of which directly refer to and incorporate by reference plaintiffs' images and appear in bright red alongside an icon of a *shopping* bag, and which serve as a *hyperlink* to the Moda Operandi ecommerce website. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. Such speech is purely commercial and not artistic, expressive, or editorial. See *United States v. United Foods, Inc.,* 533 U.S. 405, 409, 121 S.Ct. 2334 (2001) (defining "commercial speech" as "speech that does no more than propose a commercial transaction."; *White v.*

---

[1] While the moving papers cite several cases that purportedly applied *Rogers* to dismiss a false endorsement claim on a 12(b)(6) motion, some of the citations appear to be in error.  In *United We Stand*, the Court only cites to *Rogers* once regarding application to commentary, news reporting or criticism, while holding that the mark is not used for an expressive purpose such as commentary, comedy, parody, news reporting or criticism, but instead, to associate itself with the political movement that sponsored the Ross Perot campaign). *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.,* 128 F.3d 86 (2d Cir. 1997). In *Burck v. Mars*, the court *denied* the motion to dismiss the false endorsement claim, finding an issue of fact on whether the use was a parody or false endorsement. In *LMNOP v. XYZ Films, LLC*, the Court dismissed the Lanham Act claim for several reasons, including: 1) plaintiff failed to allege consumer confusion where the film avoided confusion by identifying trademarks associated with its production and distribution companies, such that it showed the actual source of the imagery, and because  clearly showing the viewer the actual source of the imagery and avoiding confusion, 2) the use was only for three seconds in the background making it hard to even recognize the mark at issue; and 3) plaintiff omitted any allegation of deception as to affiliation, connection, association or origin. 449 F. Supp. 3d 86, 95 (E.D.N.Y. 2020).

*Samsung Elecs. Am., Inc.,* 971 F.2d 1395, 1401 (9th Cir. 1992) (finding the use to be commercial as opposed to a protected parody, noting that "[t]he ad's spoof of Vanna White and Wheel of Fortune is subservient and only tangentially related to the ad's primary message: 'buy Samsung VCRs.' "); *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 439 (S.D.N.Y. 2019) ("speech which appropriates the economic value of a … persona or seeks to capitalize off a celebrity's image in commercial advertisements is not protected by the First Amendment…"); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc*., 886 F.2d 490, 495 (2d Cir. 1989) (noting that the primary intent of parodies is expression, whereas the primary intent of commercial exploitation of another's trademark, is to urge another to make a commercial transaction). *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) ("Although the boundary between commercial and noncommercial speech has yet to be clearly delineated, the core notion of commercial speech is that it does no more than propose a commercial transaction"), *citing Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67, 103 S. Ct. 2875, 2880, (1983).

Plaintiffs are not concerned with Vogue's articles, or incidental ads in the margins; rather, plaintiffs take issue with **text that directly refers to Plaintiffs' images and plainly tells the consumer to make a commercial transaction with a third-party commercial advertiser**.[2] Compl. Dkt. 1 ¶¶ 317, 318, 321, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649; Compl. Ex. 1-43; *see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. The United States Supreme Court has held that such speech is definitively commercial. *Virginia Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 762, 96 S. Ct. 1817 (1976) (an advertisement that is "entirely 'commercial,' may be of general public interest"); see *United States v. United Foods*, 533 U.S. 405, 409, 121 S. Ct. 2334, 2337 (2001) (commercial speech

---

[2] Defendant's moving papers refer to Moda Operandi as an advertiser. Memo. In Support, Dkt. 20, pp. 8, 12.

does no more than propose a commercial transaction); *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 67, 103 S. Ct. 2875, 2880 (1983) (finding the advertisement is commercial speech where it refers to a specific product and has an economic incentive, even though it contains discussions on important public issues such as venereal disease).

Here, text that says "BUY ON MODA OPERANDI" is clearly doing no more than proposing a commercial transaction. Compl. Dkt. 1 ¶¶ 317, 318, 321, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649; Compl. Ex. 1-43; *see i.e.,* Compl., Ex. 24, Dkt. 1-8, p. 46. Text that says "SHOP THIS LOOK" is ubiquitously telling the consumer to click on the hyperlink and to shop on Modaoperandi.com to buy the look worn by plaintiffs. Compl. Dkt. 1 ¶¶ 344-346, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Ex. 25, Dkt. 1-9, p. 39.

The text within the photo gallery is quite limited, specifying only the name of the show, designer, in some cases the name of the model or stock agency, and the text "SHOP THIS LOOK". See *inter alia*, Compl., Dkt. 1-7, Ex. 20, p. 65; Dkt. 1-9, Ex. 25, p. 39; Ex. 26, Dkt. 1-8, p. 56. Among the limited text, that which stands out the most is the text in a bright red box stating "SHOP THIS LOOK" alongside an icon of a shopping bag. Compl. Ex. 1-43, *see i.e.,* Compl., Dkt. 1-7, Ex. 20, p. 65; Dkt. 1-9, Ex. 25, p. 39; Ex. 26, Dkt. 1-8, p. 56.

What is more, the text SHOP THIS LOOK, in context, directly references the images of plaintiffs, telling the reader to make a commercial transaction. *Id*. The text and image go hand in hand; indeed, **the text is nothing without the images of plaintiff, as together, they form the entirety of the advertisement**. Compl. Dkt. 1 ¶¶ 317, 318, 321, 328, 329, 336, 337, 344, 349, 542, 543, 553, 585, 597, 601, 649; *see i.e.,* Compl., Dkt. 1-7, Ex. 20, p. 65; Dkt. 1-9, Ex. 25, p. 39; Dkt. 1-8, Ex. 26, p. 56. The statement "SHOP THIS LOOK" is stated specifically to exploit the publicity value of plaintiffs' images and is purely commercial. *Id*.

The text "BUY ON MODA OPERANDI", which is located on the main page for the runway show for each of the subject unauthorized uses, is in direct reference to the photo galleries containing plaintiffs' images, appearing immediately below the image icon for the galleries. Compl. Dkt. 1 ¶¶ 344, 347-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-8, Ex. 24, p. 46.

In at least six instances, the primary image for the photo gallery, which appeared directly above the text "BUY ON MODA OPERANDI" was of plaintiffs ROBINSON, ARREBOLA, WALTON, EIRUD, and ABDI, respectively. Comp. Ex. 8, Dkt. 1-3 pp. 15-16; Ex. 12, Dkt. 1-5, p. 34; Ex. 20, Dkt. 1-7, p. 64; Ex. 25, Dkt. 1-8, p. 46; Ex. 36, Dkt. 1-11, p. 70; Ex. 40, Dkt. 1-13, p. 52. In each of those situations, the text BUY ON MODA OPERANDI specifically referred to their images as well as the slideshow as a whole, where the text "SHOP THIS LOOK" pertained to each image contained therein. Comp. Ex. 1-43, *passim*.

Also on the main page for the runway show were images of the following plaintiffs, respectively, in videos, for the referenced runway show: CHAMPION (Proenza Schouler), Compl. Ex. 1, Dkt. 1-1, p. 31; A.C. MONTERO (Michael Kors and Oscar de la Renta), for Ex. 3, Dkt. 1-1, pp. 53, 55; YAI (Carolina Herrera, Marc Jacobs, Michael Kors, Proenza Schouler), Ex. 5, Dkt. 1-2, pp. 44-47; PADILLA (Oscar de la Renta and Christopher Kane), Compl. Ex. 6, Dkt. 1-2, pp. 67, 69; STODDART (Philip Lim), Ex. 9, Dkt. 1-3, p. 22; TAYLOR (Michael Kors and Proenza Schouler), Ex. 10, Dkt. 1-4, pp. 6-7; MEDINA (Philip Lim), Ex. 13, Dkt. 1-5, p. 47; CHRISTENSEN (Michael Kors), Ex. 14, Dkt. 1-5, p. 53; MARTINEZ (Isabel Marant, Carolina Herrera, Michael Kors, Marc Jacobs, Oscar de la Renta), Ex. 20, Dkt. 1-7, pp. 57, 66, 69, 71; WALTON (Marc Jacobs, Michael Kors, Proenza Schouler, and Salvatore Ferragamo, Ex. 24, Dkt. 1-5, pp. 38, 40, 42, 44, 46; L. MONTERO (Oscar de la Renta, Carolina Herrera, Marc Jacobs, and Michael Kors), Ex. 25, Dkt. 1-9, pp. 35, 37, 43, 44; MILOQUI (Philip Lim), Ex. 28,

Dkt. 1-9, p. 71; HARRIS (Proenza Schouler), Ex. 34, Dkt. 1-11, p. 15; MARCONI (Christopher Kane), Ex. 35, Dkt. 1-11, p. 42; FORREST (Michael Kors and Proenza Schouler), Ex. 37, Dkt. 1-12, pp. 27, 32; HE (Carolina Herrera and Christopher Kane), Ex. 39, Dkt. 1-13, pp. 30, 32. The text BUY ON MODA OPERANDI further refers to said plaintiffs' images. *Id*.

While defendant focuses on editorial content that appears *outside* of the photo galleries at issue, to simply look at whether the images are relevant to the broadly-defined "editorial feature",[3] without examining the commercial nature and purpose of the hyperlinked text would create a nearly absolute privilege for use of images in magazines and other "editorial" publications. Such would be contrary to the intention of the court in *Rogers*. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). In *Rogers*, the Court explains that where the primary intent of the speech at issue is commercial, the Lanham Act applies, finding that the mark in the film title was expressive in the context of the film. *Id*. Here, however, the hyperlinked text at issue, which incorporates plaintiffs' images as part of its advertisement, serves no purpose than to tell the consumer to make a commercial transaction and buy the items worn by plaintiffs. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

Any application of *Rogers* must look at the **use of plaintiffs' images and/or names in the context of this hyperlinked text**. However, as stated above, because the text is commercial, *Rogers* is inapplicable.  In *Rogers*, the Court found the movie title to have a combination of both artistic expression and commercial promotion, but with a primary purpose that was artistic expression. Rogers at 998. By contrast, the ads that incorporate plaintiffs' images and say "SHOP THIS LOOK" or "BUY ON MODA OPERANDI" have a primary purpose that is

---

[3] Defendant annexes its Exhibit "C" to show what defendant views as the full context of the "editorial feature". However, Exhibit "C" does not show one of the uses at issue in the Complaint, is bereft of the BUY ON MODA OPERANDI advertisement with shopping cart and hyperlink to the modaopeprandi.com ecommerce store.

commercial as they literally tell the consumer to make a commercial transaction. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

      The within action is distinct from several cases cited by defendant for the proposition that the claim should be dismissed under *Rogers*. Many of the cases that apply *Rogers* are instances where the subject work is a parody. See, *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc*., 886 F.2d 490, 494 (2d Cir. 1989) (finding that the book "Spy Notes" was a parody on the popular "Cliffs Notes"); *Yankee Publ'g, Inc. v. News Am. Publ'g, Inc*., 809 F. Supp. 267, 271 (S.D.N.Y. 1992) *(finding that the cover of New York Magazine was a joking* play on the Farmer's Almanac). By contrast here, neither the use of plaintiffs' images nor the subject text "BUY ON MODA OPERANDI" and "SHOP THIS LOOK", referring to the images, is part of a joke or satirical commentary. Rather, it is pure commercial speech, telling the consumer to "shop" and "buy" products worn by plaintiffs. *See United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 93 (2d Cir. 1997) (finding that phrase "United We Stand America" was not expressive speech, but rather a slogan to associate itself with the political movement that sponsored the Ross Perot campaign). Whereas in *United We Stand*, the speech was used to draw a connection to the political movement, *Id.*, here, defendant's speech of "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" is used to draw a connection between plaintiffs' and Moda Operandi, wherein the consumer can buy the items worn by plaintiffs in the images. Compl. Dkt. 1 ¶¶ Compl. Dkt. 1 ¶¶ 317, 318, 321, 325, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

      The within action is clearly distinguished from *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), In *Hoffman*, a magazine published a modified image of Dustin

Hoffman, with a different body wearing a Richard Tyler dress and Ralph Lauren shoes, in a feature on current fashion trends, with the text "Dustin Hoffman isn't a drag in a butter-colored silk gown by Richard Tyler and Ralph Lauren heels." *Id* at 1188. The magazine also included a "Shopper's Guide" in the back, which provided a listing of various stores and prices for the shoes and gown. *Id*. at 1185. Said use of Hoffman's image was a parody on a famous image of him from the movie Tootsie, used to illustrate current fashion trends and inform the reader about where they can be purchased and at what rates. *Id*.

By contrast, here, ***rather than*** informing the reader that "Ugbad Abdi is wearing Michael Kors" and that the article of clothing worn by her can be purchased at several different stores, and then listing all of them, Vogue literally has used plaintiffs' images to *command* that the reader buy products from a single store, *to wit*, Moda Operandi. Compl. Dkt. 1 ¶¶ Compl. Dkt. 1 ¶¶ 317, 318, 321, 325, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. The language "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" are much more aggressive than descriptive language stating that "Hoffman isn't a drag in a butter-colored silk gown by Richard Tyler…" *Id*. at 1188. In *Hoffman*, the language informs the reader about what he is wearing and at what stores it is available and at what prices. *Id.* In the within action, the language overtly tells the consumer to make a purchase. Whereas the language in *Hoffman* is informative and pokes fun at the famous image from Tootsie, *Id*., the language in the instant action does no more than propose a commercial transaction. *See Virginia Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S. Ct. 1817 (1976). What is more, in *Hoffman*, the evidence showed that defendant did not receive any consideration from the designers for featuring their clothing in the subject article, yet here, plaintiffs allege that Vogue and Moda

partnered in a business relationship that called for the ad to appear for their own economic benefit. Compl. Dkt. 1, ¶¶ 489-491, 553, 601). *Hoffman at 1185.*

      **Rogers applies when artistic and commercial elements are inextricably intertwined; such is not the case here**. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). In *Hoffman*, the court found that "any commercial aspects were inextricably entwined with expressive elements, and so they could not be separated out from the fully protected whole"). *Hoffman* at 1185. However, here, as defendant acknowledges in its moving papers, it has *removed* the advertising text and hyperlinks from the photo galleries. Memo in Support, Dkt. 20, p. 36. This shows that the artistic and commercial elements are **not** inextricably intertwined. Further, Defendant's commercial speech, which incorporates plaintiffs' images by *direct reference*, has made plaintiffs' images *part* of the advertisements that tell the consumer to buy the items worn by plaintiffs. Such speech, which incorporates plaintiffs' images, does no more than propose a commercial transaction. Compl. Dkt 1 ¶¶ Compl. Dkt 1 ¶¶ 317, 318, 321, 325, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

      The advertisements at issue are not incidental to the uses of plaintiffs' images. See *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 439 (S.D.N.Y. 2019) (illustrating that advertisements of an editorial film are protected by the First Amendment where they are "merely an adjunct of the protected work and promote only the protected work [internal citations omitted]"). By contrast, the advertisement here incorporates by reference the images of plaintiffs, and rather than advertising Vogue's editorial, they are advertisements for consumers to make purchases at third party vendor Moda Operandi's website. Compl. Dkt. 1 ¶¶ Compl. Dkt. 1 ¶¶ 317, 318, 321, 325, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

The subject advertising incorporating plaintiffs' images is not simply "alongside articles" or in "close proximity to sponsored content" as defendant's moving papers imply. Rather the advertising is placed on top of or directly below or beside plaintiffs' images and clearly references the image itself, thus incorporating the images of plaintiffs as ***part of the ad***. *Id*. "SHOP THIS LOOK" tells the consumer to go to ModaOperandi.com via the hyperlink and shop for the items that look like those worn by plaintiffs. *Id*. BUY ON MODA OPERANDI tells the consumer to buy the items depicted in the images from MODA. *Id*. This is in stark contrast to the examples of incidental use having nothing to do with the image in the cases cited by defendant. See, *Burck v. Mars, Inc*., 571 F. Supp. 2d 446 (S.D.N.Y. 2008) (denying motion to dismiss Lanham act claim, even where use was more artistic than commercial and included clear parody of the Naked Cowboy, Statue of Liberty, King Kong, and everyday New York, as the M&Ms were presented in a commercial setting).

Defendant alludes that it might be sufficient for plaintiffs' case if the advertisement identified Moda Operandi as the company advertised. Memo in Support, Dkt. 20, pp. 8, 22. Moda Operandi *is* identified. Not only does the ad on the runway show's homepage state "BUY ON MODA OPERANDI", but the hyperlinks for both that line and "SHOP THIS LOOK" clearly denote that they will direct the consumer to the website for Moda Operandi. Compl. Dkt. 1 ¶¶ Compl. Dkt. 1 ¶¶ 317, 318, 321, 325, 328, 329, 336, 337, 344-349, 542, 543, 553, 585, 597, 601, 649, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. All the consumer needs to do is to hover the cursor over the text and the screen will display the web URL for the hyperlink; this will inform the consumer that they can click on the link to go to Moda Operandi where they can purchase the items worn by plaintiffs. The text itself draws attention to the hyperlink and informs the consumer that it is in fact a hyperlink by leaving the name out on the gallery page. *Id*. By leaving the name out, the advertisement is

presenting a tease, encouraging the consumer to hover or click to find out where they can SHOP THE LOOK worn by plaintiffs. *Id*. From a syntax perspective, the images are the subject of the ad's text. This advertising tactic is arguably more effective at getting the consumer to click and go to the Moda Operandi website than if the advertisement said, "SHOP THIS LOOK ON MODA OPERANDI". The fact that the ad is for Moda Operandi is obvious to the actual consumer using the website. Anyone viewing the image on the slideshow, unless provided with a link to a specific image, would have first visited the main page for that specific runway, wherein they would have seen the text "BUY ON MODA OEPRANDI". Compl. Dkt. 1 ¶¶ 344, 347-348.Further, the text and hyperlink are of the same look and style as the "BUY ON MODA OPERANDI text and clearly go hand in hand. *Id*.

The uses at issue are distinct from that in *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012). The court in *Louis Vuitton* found that the use of the bag was artistically relevant, regardless of whether Warner Brothers intended for it to be a knock off or not, as it was intended to create an artistic association with Louis Vuitton and there is no indication that its use was commercially motivated. By contrast here, the use of the plaintiffs' images in the context of the hyperlink text is not artistically relevant, and is not intended to create an artistic association with anything; its sole purpose is to tell the consumer to make a commercial transaction; there is every indication that its use was commercially motivated. Compl. Dkt. 1 ¶¶ 317, 318, 321, 328, 329, 336, 337, 344, 349, 542, 543, 553, 585, 597, 601, 649. For the above-specified reasons, *Rogers* is inapplicable to this action.

A. **There is No Artistic Relevance**

The uses of plaintiffs' images in the context of the hyperlink text are not artistically relevant. In *Brown v. Showtime Networks, Inc.*, the court explained that the "artistic relevance prong ensures that the defendant intended an artistic—noncommercial—association with the

plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will". 394 F. Supp. 3d 418, 442 (S.D.N.Y. 2019), *citing Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012). Here, defendant's use of "BUY ON MODA OPERANDI" and "SHOP THIS LOOK", which directly point to and incorporate the images of plaintiffs, is clearly intended to exploit the plaintiffs' popularity and good will for a commercial purpose. Compl. Dkt. 1 ¶¶ 541-542, 553, 632). The relevance of plaintiffs' images to the hyperlink text is not artistic—it is plainly commercial. *Id.*

**B.** **Even If *Rogers* Applies, The Use Explicitly Misleads as To the Source or Content of the Work**

The Second Circuit has explained that when assessing if a use "explicitly misleads as to the source of the content of the work", "the relevant question is whether the defendant's use of the mark 'is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized' by the plaintiff". *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 179 (S.D.N.Y. 2012), *citing Twin Peaks Prods. V. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993)*; *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 443 (S.D.N.Y. 2019); see also, *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989) (the explicitly misleading requirement is satisfied if there is an explicit indication of endorsement or having had a role in producing it). Here, as explained above, the text "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" incorporate plaintiffs' images to be part of the advertisement. As alleged in the Complaint, plaintiffs are professional models, who work for companies and agree to participate in advertisements for same. Compl. Dkt. 1 ¶¶ 294-297, 330, 621, 630. Plaintiffs further allege that Vogue's and Moda's consumers know that plaintiffs are models. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631.

Here, because plaintiffs are models who work and appear in advertisements, the fact that their images are used in an advertisement by Vogue for Moda, indicates that plaintiffs have a business advertising relationship with Vogue and Moda. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647. *Contra, Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 444 (S.D.N.Y. 2019) (claim dismissed because plaintiff only alleged conclusory allegations that the use explicitly misled consumers as to the source of the work). The use of plaintiffs' images in the advertisements induces members of the public to believe that the ad was prepared or otherwise authorized by plaintiffs. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647. The advertising text and hyperlink that tells the consumer to purchase items worn by plaintiffs denotes plaintiffs' involvement in the form of sponsorship and/or endorsement and, as explained herein, explicitly misleads as to source or content of the work. Compl. Dkt. 1 ¶¶ 294-297, 330, 348-346, 554-555, 621, 630, 632-633, 639-647.

In *Rogers*, plaintiff's name is in the title of an editorial film, and it does not explicitly mislead as to the famous person endorsing, sponsoring, or approving of the film as the title merely describes content or an artistic interpretation on content. *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989). By contrast, use of a model in an advertisement explicitly misleads as to the model endorsing, sponsoring, or approving of the ad as it is standard course for a model to willingly agree to be a part of an ad and to enter into business with the advertiser as part of same. Compl. Dkt. 1 ¶¶ 294-297, 330, 554-555, 621, 630, 632-633, 639-647. Plaintiffs' work becomes part of their portfolio and effects their branding. Compl. Dkt. 1 ¶¶ 50-297. The use misleads as to plaintiff's authorization of the advertisement and misleads the consumers to believe that plaintiffs are now modeling for and endorsing Moda Operandi as plaintiffs are professional models who routinely enter into deals with companies for commercial advertising. Compl. Dkt. 1 ¶¶ 294-297, 330, 554-555, 621, 630, 632-633, 639-647.

In *Brown v. Showtime Networks, Inc.*, the court noted that the determination on whether a use explicitly misleads as to source or content of the work "is based on the same considerations as the likelihood of confusion factors for trademark infringement". 394 F. Supp. 3d 418, 443 (S.D.N.Y. 2019). In *Brown*, the Court found that B2 Brownhouse Entertainment, as listed in the film credits, does not plausibly confuse as to endorsement because not many people know that it is Bobby Brown's company and not many people would really be reading the film credits, which if viewed, identify Nick Broomfield as the creator of and responsible for the film. *Brown* at 443. By contrast, here, plaintiffs allege that the relevant consumers do know and recognize plaintiffs, know that plaintiffs are models, and would look at the photo galleries at issue. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. As the consumers know that plaintiffs model for advertisements and would see them in the advertisement for Moda, they would likely be misled to believe that the work was prepared in connection with or otherwise authorized by plaintiffs. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 554-555, 622-633, 639-647. Further, there is no exculpatory credit or disclaimer in the instant action as there was in *Brown*. *Id*.

### III. PLAINTIFFS' ALLEGE FALSE OR MISLEADING STATEMENT OF FACT THAT IS LIKELY TO CAUSE CONFUSION AS TO THE ASSOCIATION WITH, APPROVAL AND ENDORSEMENT OF DEFENDANTS

"The elements for a false endorsement claim under the Lanham Act are that defendant: (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc*., 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008); No. 97 Civ. 1151 (LAK), 1997 U.S. Dist. LEXIS 8535, *3, 1997 WL 323899 (S.D.N.Y. June 13, 1997) (15 USC 1125a "is an appropriate vehicle for the assertion of claims of falsely implying the endorsement of a product or service by a real person).

## A. False or Misleading Statement of Fact

Plaintiffs sufficiently allege false or misleading statements of fact. The Complaint alleges *inter alia*, that defendants used plaintiffs' images to make it appear as if plaintiffs endorse Moda and its products, Compl. Dkt. 1, ¶¶ 632-633, that plaintiffs entered into a business agreement with Moda to promote it and its products Compl. Dkt. 1, ¶¶ 634-635, and that such representations are false Compl. Dkt. 1, ¶¶ 636-638. Plaintiffs allege that defendant used the Moda name in connection with plaintiffs' images and that such represents a brand partnership and business relationship between plaintiffs and Moda. Compl. Dkt. 1, ¶639.  Plaintiffs allege that defendant's use has caused a false association with Moda's brand, Compl. Dkt. 1, ¶641, and a false association with the sale of Moda's products. Compl. Dkt. 1, ¶642.

Plaintiffs sufficiently allege that defendant's uses of their images make it appear as if they endorse Moda and its products.[4] Plaintiffs are professional models who work for companies and do advertisements for a living. Compl. Dkt. 1, ¶¶ 621, 330, 294, 295, 296. The advertisements SHOP THIS LOOK and BUY ON MODA OPERANDI, referring to plaintiffs' images, make plaintiffs' images part of the advertisements, and thus make it appear as if plaintiffs were hired by and have agreed to model for, endorse, and do advertisements for MODA and the sale of products by Moda. Compl. Dkt. 1 ¶¶ 52-291, 293, 344-348, 351-352, 554-555, 622-631, 632-633, 639-647, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. See *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008) (where plaintiff has licensed his name and likeness to companies for endorsements and advertisements, court finds his false endorsement claim is plausible, and thus survives a motion to dismiss), citing *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007),

---

[4] FRCP 10(c) ([a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 (2d ed. 1990) (exhibits to a pleading are "an integral part of the pleadings for all purposes").

quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007) (on a motion to dismiss, the Court must consider "whether the pleading alleges 'enough facts to state a claim for relief that is plausible on its face' ").

Vogue argues that the use of plaintiffs' images does not imply that plaintiffs endorse Moda anymore than it implies an endorsement of the other companies and products advertised alongside plaintiff's images such as Hourglass Cosmetics. See Compl. Ex. 6, Dkt. 1-2, p. 43. However, the Hourglass and other ads in the margins are incidental to the use of the image as they are separate from plaintiffs' image and merely along-side and nothing more. *Id*. By contrast, the commercial text telling the consumer to "SHOP THIS LOOK" is in ***direct reference*** to plaintiffs' images. Compl. Dkt. 1 ¶¶ 344-346, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39. Plaintiffs' images are incorporated into the advertisements by reference and thus are effectively part of the ads. *Id. Without plaintiffs' images, the text would be meaningless*; however, when the text is with plaintiffs' image, the advertisement is complete. *Id*.

Whereas in *Hoffman*, the language was descriptive and informative, here, the text is purely commercial and aggressively tells the consumer to make a commercial transaction; there can be no other reasonable interpretation to SHOP THIS LOOK and BUY ON MODA OPERANDI—the purpose is clearly to get the consumer to buy something. Compl. Dkt. 1 ¶¶ 317, 318, 321, 328, 329, 336, 337, 344, 349, 542, 543, 553, 585, 597, 601, 649.

Plaintiffs allege that defendant's uses of plaintiffs' images trades on their images and likenesses to brand Moda, Compl. Dkt. 1, ¶541, and to market and promote the sale of products on the MODA website, Compl. Dkt. 1, ¶542. This is notwithstanding that none of plaintiffs authorized the uses of any of their images by Vogue or Moda for commercial purposes. Compl. Dkt. 1, ¶¶ 544-548, 552. All implications and representations to the contrary are false. *Id*. Plaintiffs acknowledge that they agreed to walk in the runway shows, but they did **not agree** to

*any commercial* uses of their images, including for the runway fashion designers. Compl. Dkt. 1, ¶635. There was zero "understanding" as defendant posits, that the photographs of plaintiffs walking the runways would end up in advertisements. In the modeling world, releases are regularly signed and are either for editorial uses, or for commercial uses, such that it is always clear if the job is for editorial or commercial use; here, as is custom with runway jobs, plaintiffs only permitted editorial use. Compl. Dkt. 1 ¶¶ 319, 338, 350, 544-552, 567, 611, 615-617, 635. Plaintiffs allege that defendant's uses imply that Moda partnered with plaintiffs on a deal that permitted Moda the rights to associate themselves with plaintiffs, and to use plaintiffs' images. Compl. Dkt. 1, ¶¶ 541, 554-555, 632-633, 639-647. Such is false. *Id.*

The Complaint explains how Vouge's uses of plaintiffs' images were aimed at Moda's consumers in connection with Moda's products. Vogue and Moda have overlapping consumers. Compl. Dkt. 1, ¶¶ 623-626, 629-630. Plaintiffs allege that Vogue and Moda entered into a business agreement, whereby Vogue would publish on its website vogue.com, marketing, promotional, and advertising content for the benefit of Moda. Compl. Dkt. 1, ¶¶ 489, 491. Moda facilitated, encouraged, requested, and participated in Vogue's advertising uses of plaintiffs' images. Compl. Dkt. 1, ¶490. Further, the defendants commercially benefited, by getting paid, from its uses of the plaintiffs' images, likenesses, and/or names. Compl. Dkt. 1, ¶601.

Additionally, Vogue published videos and images of Plaintiffs to market, promote and advertise the sale of items from Moda's "trunkshows". Compl. Dkt. 1, ¶344. Specifically, Vogue published images of plaintiffs in photo galleries with the red pop-up icon of a shopping bag on the front of the images and the text "SHOP THIS LOOK". Compl. Dkt. 1, ¶345. As explained herein, the text as well as the "BUY ON MODA OPERANDI" text, included hyperlinks to solicit and take the consumer to the Moda Operandi ecommerce store where they could make commercial transactions for products worn by plaintiffs.  Compl. Dkt. 1, ¶¶ 346-348.

## B. Likelihood Of Confusion

Plaintiffs must show a likelihood of consumer confusion as to their sponsorship or approval of Moda. See *Yankee Publ'g, Inc. v. News Am. Publ'g, Inc*., 809 F. Supp. 267, 272 (S.D.N.Y. 1992) ("trademark owner's rights are violated only where an unauthorized use has a substantial capacity to mislead consumers… into confusion as to the entity furnishing the goods or services."); *Burck v. Mars, Inc*., 571 F. Supp. 2d 446, 454 (S.D.N.Y. 2008) (plaintiff must show that the use is "likely to cause confusion as to the origin, sponsorship, or approval of the goods or services."), citing *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 268 (S.D.N.Y. 2007); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107 (DAB), 2006 U.S. Dist. LEXIS 56703, 2006 WL 2289847, at *10-11 (S.D.N.Y. Aug. 8, 2006). Essential to Lanham Act claims "is a likelihood that the relevant audience will be misled into believing that the plaintiff endorsed the defendant's product or service." *Albert v. Apex Fitness, Inc*., No. 97 Civ. 1151 (LAK), 1997 U.S. Dist. LEXIS 8535, 1997 WL 323899, *3 (S.D.N.Y. June 13, 1997).

The Court in *Pirone* elaborates on the confusion standard:

> "In order to be confused, a consumer need not believe that the party with the trademark actually produced a given product. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."  *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990), citing, *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) and *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) ("the public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement").

Where speech is found to be expressive and where *Rogers* applies, "the likelihood of confusion must be particularly compelling". *LMNOPI v. XYZ Films, LLC*, 449 F. Supp. 3d 86, 95 (E.D.N.Y. 2020), *citing Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 182 (S.D.N.Y. 2012). See *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 443 (S.D.N.Y. 2019) (only a particularly compelling finding of likelihood of confusion can overcome

1st amendment interests). The Court in *Louis Vuitton* elaborates that the only type of confusion that can overcome *Rogers'* protection is if the use misleads consumers into believing that plaintiff produced or endorsed the use. *Louis Vuitton* at 182. *Here, because the speech at issue is commercial and not expressive, this more stringent standard should not apply*. However, even if the speech is found to be expressive and the "particularly compelling" standard for confusion does apply, such is satisfied.

Plaintiffs allege that the use misled consumers into believing that plaintiffs produced or endorsed the ad. Plaintiffs sufficiently allege that Vogue deceived and/or confused relevant consumers into thinking that plaintiff sponsored or approved of Moda, agreed to model for Moda, and approved of the goods sold in the context by and through Moda. Compl. Dkt. 1, ¶ 634, 621-631, 643-649, 296, 294, 293, 52.

Plaintiffs sufficiently allege facts regarding the likelihood of confusion as to the sponsorship of Moda. Compl. Dkt. 1, ¶¶ 643, 644, 645, 646, 647. Plaintiffs allege that Vogue's consumers and Moda's consumers know that plaintiffs are professional models. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. Plaintiffs allege that they routinely enter into business agreements for the use of their images in advertisements. Compl. Dkt. 1 ¶¶ 294-297, 330, 621, 630. Plaintiffs allege that the consumer is confused as to plaintiffs' association with Moda, endorsement, sponsorship, and confusion about the source of images being authorized. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647. The relevant audience is misled into believing or confused that plaintiffs endorsed defendant's product or service. *Id*.

Plaintiffs allege that the relevant consumers will be misled as to the model's association with Moda and the models' providing of modeling services for advertisements to Moda. *Id*. Plaintiff does not allege that Vogue's articles infringe plaintiffs' trademarks; rather, plaintiffs allege that Vogue's advertising text of "BUY ON MODA OPERANDI" and "SHOP THIS

LOOK" infringe plaintiff's trademarks. Compl. Dkt. 1 ¶¶ 344-348, 541, 554-555, 632-633, 639-647, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. As explained above, such speech is commercial; not expressive.

    The within action is distinct from several of the cases cited by defendant. In *LMNOPI v. XYZ Films, LLC*, the Court dismissed the Lanham Act claim where: plaintiff's mark was only shown for 3 seconds in the background making it difficult to even recognize; plaintiff failed to allege consumer confusion; and the film displayed, *inter alia*, trademarks associated with its production and distribution companies to dispel any case for confusion. 449 F. Supp. 3d 86, 95 (E.D.N.Y. 2020). By contrast, here, plaintiffs allege that they are recognizable and well-known by the relevant consumers, Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631, plaintiffs have alleged confusion as explained throughout this section, Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647, and there are no exculpatory disclaimers that clarify plaintiff's non-involvement in the subject unauthorized uses. As explained above at the end of Section II of this Memorandum, the within action is distinct from that of *Brown v. Showtime Networks, Inc*., wherein the court dismissed the Lanham Act where there was no likelihood of consumer confusion.

    In *Louis Vuitton*, the Court found that a likelihood of confusion was not plausible as the difference between the bags was too difficult to notice, and the character's use of the Louis Vuitton name could only create confusion if the character knew that he possessed a knock-off, but the court found that he could be innocently misinformed about the bag such that the likelihood of confusion is minimal at best and not particularly compelling. *Louis Vuitton* at 182. By contrast here, it is utterly plausible that plaintiffs, as professional models, might be confused as having agreed to appear in advertisements for Moda Operandi, as plaintiffs regularly model in advertisements for various companies, Compl. Dkt. 1 ¶¶ 52-291, 293-297, 330, 351-352, 621-631, are shown wearing the items purportedly sold by Moda, Compl. Dkt. 1-1 to 1-13 *passim*,

and their image is accompanied by text referring to their images stating, "BUY ON MODA OPERANDI" and "SHOP THIS LOOK". Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. Such phrases directly associate plaintiffs with Moda Operandi. *Id*.

Whereas in *Louis Vuitton*, the court found that the alleged confusion regarding the bags was caused by a third-party infringer, any confusion created by defendant was indirect. *Id*. at 183. Here, while Moda is selling the products, Vogue published the advertising text pointing to and directly referencing and incorporating plaintiffs' images—Vogue created confusion itself. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. Plaintiffs here allege a business relationship between Vogue and Moda for each of their economic benefit. Compl. Dkt. 1 ¶¶ 489-491, 553, 601.

Whereas the Court in *Yankee Publ'g, Inc. v. News Am. Publ'g, Inc*., found confusion to be improbable, here it is probable. 809 F. Supp. 267, 273 (S.D.N.Y. 1992). In *Yankee*, New York Magazine and The Farmer's Almanac had two totally different audiences, making confusion improbable. *Id*. at 278. In *Yankee*, the Court found New York Magazine's cover to be a clear satire on the Farmer's Almanac, as the content within New York Magazine is diametrically opposite with that in the Farmer's Almanac, such that it was not believable that the cover was of the Farmer's Alamac. *Id*. at 271. This was especially so with the large signature "New York" text associated with New York Magazine emblazoned on the cover. Conversely, here, plaintiffs are professional models who model for retailers and appear in advertisements for a living, Compl. Dkt. 1 ¶¶ 294-297, 330, 621, 630, such that the presence of plaintiffs' images in the subject advertisements is believable and likely to cause confusion to the consumer about plaintiffs agreeing to take part in the advertisement. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647. Further, Vogue and Moda have overlapping audiences. Compl. Dkt. 1, ¶¶ 623-626, 629-630.

The fact that the advertisements include pictures of several models does not negate the Lanham Act claim. In *Burck v. Mars,* the Cowboy character was presented as part of a series of parodies of the New York City experience. *Burck v. Mars, Inc*., 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008). Even though the Cowboy character was alongside other characters such as the Statue of Liberty, King Kong, and everyday New York, the court noted that "[s]ome consumers … may view the M&M Cowboy characters as a part of a larger work depicting New York scenes and parodying famous New York characters. *Id*. at 455-456. But other consumers may mistakenly believe that The Naked Cowboy himself endorsed the copying of his "trademarked likeness" because the M&M Cowboy characters appear in a commercial setting". *Id*.

In *Chanel, Inc. v. RealReal, Inc.*, plaintiff's mark was one among many, but the use was found to be non-infringing as it served a practical and necessary purpose in describing the products sold. 449 F. Supp. 3d 422 (S.D.N.Y. 2020). Here, the use of plaintiffs' image is not necessary to describe the product as it can be advertised on a different model (Compl. Dkt. 1-3 p. 10, second image from top shows a non-plaintiff model posing and wearing the subject apparel), or even depicted against a plain background on no model at all. Compl. Dkt. 1-5, p. 17.

In *Gibson v. SCE Grp., Inc.*, 20 models sued two clubs for the uses of their images in advertisements, where each model was one of many, and the court found that the uses of the images *did* imply an association between plaintiffs and defendants and that the association was false. 391 F. Supp. 3d 228, 245 (S.D.N.Y. 2019). However, the Lanham Act claim was dismissed on summary judgment because the court could not find consumer confusion in large part because plaintiffs failed to submit survey evidence of actual confusion or of plaintiffs' recognizability. Here, the within motion is under FRCP 12(b)(6) and not one for summary judgment, and plaintiffs allege that they are well-known and recognizable. Compl. Dkt. 1 ¶¶ 52-291, 293-297, 330, 351-352, 621-631.

21

Trademark protection does not extend to descriptive marks unless they acquire distinctiveness and secondary meaning, which is when "the name and business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that busines.". *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990). Here, the plaintiffs' images are their respective brands and businesses. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631.

In *Pirone*, the Court primarily dismissed the Lanham Act claim on summary judgment because plaintiff held the trademark in the name "Babe Ruth" and the name did not appear anywhere on the calendar. *Id.* at 582. The court also determined that there was no likelihood of confusion because the image of Babe Ruth was used in a descriptive and editorial fashion, to portray that the calendar was about baseball greats. *Id*. at 584. Further, the fact that the calendar clearly stated with numerous references that it was by MacMillan, obviated any confusion as to source. *Id*. By contrast, here, plaintiffs are models and famous by their image as models; here the use of their name has acquired secondary meaning as their image is synonymous with their business. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. Whereas the use of Babe Ruth's image on the cover of the calendar is merely descriptive of the calendar's subject matter, it does not confuse as to source.  Here, the use of the models' images with the words "SHOP THIS LOOK" and "BUY ON MODA OPERANDI" lends to consumer confusion as to the models' affiliation and business relationship with Moda as their mark is used in an advertisement, and the models regularly participate in advertisements for various companies as part of their business. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 554-555, 622-633, 639-647. The use of babe's image on the calendar did not identify the secondary meaning of the trademark as his name is not synonymous with the business of selling calendars. By contrast, the models' images are

synonymous with selling fashion, and appearing in advertisements. Compl. Dkt. 1 ¶¶ 52-291, 294-297, 330, 621, 630.

The within action is vastly different from that of *Albert v. Apex Fitness, Inc*. No. 97 Civ. 1151 (LAK), 1997 U.S. Dist. LEXIS 8535, 1997 WL 323899 (S.D.N.Y. June 13, 1997). In *Albert*, the Court dismissed the Lanham act claim on motion to dismiss because plaintiff failed to allege that he was well-known or a celebrity; the court also noted that nothing about the use implies that the model personally endorsed the company's products.  Here, plaintiffs allege that they are well-known, have celebrity status, Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631, are models wearing the specific products that are advertised, and the text is telling the consumers to shop the look worn by plaintiffs and to buy the items on Moda Operandi. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. These are stark contrasts to the facts in *Albert*.

Whereas the court found no likelihood of confusion in *Pelton v. Rexall Sundown, Inc*. due to plaintiff's unrecognizability, No. 99 CIV 4342 JSM, 2001 U.S. Dist. LEXIS 3825, 2001 WL 327164 (S.D.N.Y. Apr. 4, 2001), here, plaintiffs are recognizable. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. In *Pelton*, the court dismissed the Lanham Act claim on summary judgment, finding no likelihood of confusion owing largely to plaintiff's unrecognizability. *Pelton* at 10. The court found plaintiff to be not recognizable because it took her 5 years to find out about the use, few articles mention her on the internet and usually in the context of her companion who is an actor. *Id*. Additionally, in the image at issue, her arm is covering her face, revealing the swimsuit covered body of a model who does not appear to be well known or recognizable. *Id*. The Court in *Pelton* further dismissed the claim finding that the image of the non-recognizable body on the supplement bottle does not imply endorsement because, *inter alia*, her name does not appear anywhere on the label, the product does not appear in the picture with her, and a

consumer would more likely see her body and just think the image shows the effects of the product. *Id*. at 9-10. Additionally, the court found an applicable model release. *Id*. at 6-7. By contrast, the instant action could not be more distinct. Plaintiffs in the within action are much more well-known and recognizable. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. What is more, at least one of plaintiffs' names is published with the use, and unlike in Pelton, here, the models *are* depicted wearing the products advertised. See Compl., Dkt. 1-7, Ex. 20, p. 65; Dkt. 1-9, Ex. 25, p. 39; Ex. 26, Dkt. 1-8, p. 56.

Like the plaintiffs in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, here plaintiffs' have a strong and recognizable mark, leading to a likelihood of confusion regarding plaintiffs' endorsement., 604 F.2d 200, 205 (2d Cir. 1979). In Dallas Cowboys, the Court found that the recognizability of the Dallas Cowboys' cheerleaders' outfit lead to a likelihood of consumer confusion. *Id*. at 205-206. The Second Circuit affirmed the District Court's grant of a preliminary injunction to plaintiff, finding that the uniform used in the film closely resembled plaintiff's uniform, which was a strong indication of source in which the cheerleaders own a trademark. *Id*. at 205. The court held that public might be misled to believe that the cheerleaders provided a license to defendant to use the uniform or were involved in some way with the film's production. *Id*. The recognizability factor is stronger in the within action as the images do not merely resemble plaintiffs, but they are of plaintiffs. Compl. Dkt. 1 Ex. 1-43, *passim*. The Complaint alleges that the relevant consumer knows plaintiffs and their images and would recognize them in the subject uses. Compl. Dkt. 1 ¶¶ 52-291, 293, 351-352, 622-631. Plaintiffs are known for their modeling and advertising work, such that their image is a strong indication of source. Compl. Dkt. 1 ¶¶ 52-291, 293-297, 330, 351-352, 621-631. The relevant consumer is likely to be misled here into believing that plaintiffs provided authorization to defendant to use

their image in the advertisements, or were involved in some way in the ad's production. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647.

The within action is similar to that of *Burck v. Mars* as plaintiffs in both cases have previously licensed the use of their image and endorsed products, Compl. Dkt. 1 ¶¶ 294-297, 330, 621, 630, which lends itself to consumer confusion when plaintiffs' image is used in a commercial manner. 571 F. Supp. 2d 446 (S.D.N.Y. 2008). See Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647. In *Burck*, the court denied the motion to dismiss, finding issues of fact of whether consumers would "mistakenly believe that The Naked Cowboy himself endorsed the copying of his "trademarked likeness" because the M&M Cowboy characters appear in a commercial setting (i.e., on the video billboard and inside the M&M World store). *Id*. at 455-456. Similarly to *Burck*, where plaintiff had licensed the use of his image for endorsements and advertising, here, plaintiffs here are professional models who license the use of their image for endorsements and advertising. *Id*. at 449; Compl. Dkt. 1 ¶¶ 294-297, 330, 621, 630. Such factor, when viewed in context of the use, lends itself to confusion about whether plaintiffs did so here with Moda Operandi. Compl. Dkt. 1 ¶¶ 554-555, 632-633, 639-647.

## IV.   <u>SUPPLEMENTAL JURISDICTION</u>

If this court dismisses *each* of plaintiff's Lanham Act claims against *each* defendant, then the Court may continue to exercise ancillary jurisdiction under U.S.C. §1376. To determine if ancillary jurisdiction is appropriate, a "federal court must consider and weigh in each case and at every stage of the litigation the values of judicial economy, convenience, fairness, and comity". *Washington International Ins. Co. v. Victoria Sales Corp.,* 1989 U.S. Dist. LEXIS 8306 (S.D.N.Y. 1989); *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 446 (S.D.N.Y. 2019), *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614 (1988).

Federal courts have recognized ancillary jurisdiction when the subordinate dispute arose out of the same transaction or occurrence as the federal claim. *Maltais v. United States*, 439 F. Supp. 540, 545 (N.D.N.Y. 1977), *citing, Fulton National Bank v. Hozier*, 267 U.S. 276, 280, 45 S. Ct. 261 (1925). Here, the **subordinate dispute arose out of the same transaction or occurrence as plaintiff's federal claim. Both plaintiffs' Lanham Act claim, and New York Civil Rights Law claim, arise out of defendants' use of their image in unauthorized advertisements for Moda Operandi. Additionally, the Southern** District of New York frequently hears and decides cases sounding in §§ 50, 51 of the New York Civil Rights Law.

As such, it would be keeping with the interest of judicial economy, convenience, fairness, and comity to exercise ancillary jurisdiction in this matter, if all of plaintiffs' federal law claims are dismissed. Notwithstanding, for the many reasons set forth herein as well as in the Memorandum of Law in Opposition to Moda's motion, defendants' respective motions to dismiss plaintiffs' Lanham Act claims should be denied.

## V. PLAINTIFFS' CLAIMS UNDER N.Y. CIV. RIGHTS LAW §§ 50, 51 SHOULD NOT BE DISMISSED

### A. Non-Resident Plaintiffs' Claims Under the N.Y. Civ. Rights Law

Defendant seeks to dismiss the New York Civil Rights Law Claim as alleged by the 26 plaintiffs identified in the Complaint as residing outside of the State of New York; defendant does not take issue with the remaining 17 plaintiffs on this point. Notwithstanding, the correct standard for a New York court to assess what right of publicity law to apply to plaintiffs' claims is to "apply its property choice-of-law rules to select the state whose law determines whether a plaintiff has a protectable right of publicity". *Bi-Rite Enters. v. Button Master*, 555 F. Supp. 1188, 1197 (S.D.N.Y. 1983). In New York, the choice of law rules for torts (the Governmental Interests Factors) apply to determine what law should apply to assess if plaintiff's privacy rights were violated. Specifically, the Court must assess **which State has the greatest contact with**

**plaintiff's rights in his or her image, likeness, and reputation**. *Mathews v. ABC Television, Inc.,* No. 88 CIV. 6031 (SWK), 1989 U.S. Dist. LEXIS 10694 (S.D.N.Y. Sept. 11, 1989); *Clark v. Celeb Publ'g, Inc.,* 530 F. Supp. 979 (S.D.N.Y. 1981).

This District has repeatedly applied § 51 of the New York Civil Rights Law, even when the plaintiff was a resident of another state. *See, Mathews v. ABC Television, Inc.,* No. 88 CIV. 6031 (SWK), 1989 U.S. Dist. LEXIS 10694 (S.D.N.Y. Sept. 11, 1989); *Chaplin v. National Broadcasting Co.,* 15 F.R.D. 134, 138 (D.N.Y. 1953); *Price v. Hal Roach Studios, Inc.,*400 F. Supp. 836 (S.D.N.Y. 1975). Additionally, Section 51 is very specific to the use of a person's image for trade or advertising purposes in the State of New York. Here, the offending acts of defendants occurred in New York. As alleged in the Complaint, all of plaintiffs are professional models, and all of plaintiffs are represented by Next Model Management in New York City. Compl. Dkt. 1, ¶50. As professional models, plaintiffs' property rights in his or her image, likeness and reputation are strongly connected to the strength of their modeling careers, where they work, from where they get jobs, and where they are well known as models. The Complaint alleges that all of Plaintiffs' careers are centered in the city and State of New York, Compl. Dkt. 1, ¶51, and that the strength of their images and personas are centered in New York, where plaintiffs have based their modeling careers. Compl. Dkt. 1, ¶292.

As set forth in the accompanying declarations of Faith Kates of Next Model Management, LLC, and each of CHAMPION, CLEVELAND, HALBERT, ROBINSON, DELOZIER, ARREBOLA, HILL, MARTINEZ, BUI, MILOQUI, DE OLIVEIRA, URUSHADZE, HOEVELAKEN, BOLT, HARRIS, MARCONI, FORREST, and HE, are strongly connected to the State of New York.[5]  Each of such plaintiffs' rights in her image,

---

[5] In addition to the text of the Complaint, the Court may consider documents that are appended as exhibits, incorporated by reference, or are otherwise "integral" to the allegations contained therein. *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019), citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may consider a document not annexed to or incorporated by reference within the

likeness and reputation are connected more closely to New York than to any other forum.
Compl. Dkt. 1 ¶¶ 50-51, 292.

Importantly, this action was filed during an unprecedented time in history—during the
middle of a pandemic where travel bans and safety guidelines have halted travel and made
ordinary functioning difficult for many. People have fled large cities like New York and gone to
stay with family, not knowing when travel might be safe again. Some of the listed plaintiffs
actually live in New York, but were temporarily living with their families at the time of filing.
Others, technically live next door in New Jersey, but perform the vast majority of their modeling
services in New York and have their property rights in their image, likeness and reputation
centered in New York. What is more, some plaintiffs live elsewhere, yet still perform most of
their modeling services in New York and obtain most of their modeling jobs from the New York
office, such that their property rights in their image, likeness and reputation are still most
strongly tethered to the State of New York. For the foregoing reasons and those set forth in the
accompanying declarations, defendant's motion ought to be denied regarding these plaintiffs.[6]

B. **Vogue's Use of The Images Do Not Fall Within The "Newsworthy" Exception to N.Y. Civ. Rights Law §§ 50, 51**

At issue here is not Vogue's article on "15 Bridgerton-Worthy Runway Looks to Inspire
Your Own 'Coming Out' Style" (Defendant's Exhibit "C", page 8), but rather clear advertising
language and hyperlinks to Moda's ecommerce store. Such is not newsworthy. There is nothing
newsworthy about saying "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" and
providing consumers with a link to the third-party website at which to make commercial

---

Complaint "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral'
to the complaint." *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 176 (S.D.N.Y.
2012), *citing Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). See also, *Tasini v. New York Times Co.*,
184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (the court is permitted to refer to evidence extrinsic to the pleadings when
a factual jurisdictional challenge is involved).
[6] Plaintiffs GUNN, EIRUD, LI and XU consent to withdraw the New York Civil Rights Law Claims as alleged
against both defendants.

transactions. If Vogue's argument passed here, then Vogue, because it *does* publish news on its website, would be immune from any and all 50,51 actions. This would stand logic on its head.

The issue here is not editorial text, but rather the clearly advertising text, which is in no way newsworthy. Although "a newsworthy article is not deemed produced for the purposes of advertising or trade" (Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436, 441 (2000)), the text "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" are produced for the purposes of advertising and trade. See *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 440 (S.D.N.Y. 2019) ("there is a clear distinction between commercial use and newsworthy use of a person's name and likeness"); *Hoffman v. Capital Cities/ABC Inc*., 255 F.3d 1180, 1184 (9th Cir. 2001)  ("the core notion of commercial speech is that it 'does no more than propose a commercial transaction'"), quoting *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66, 103 S. Ct. 2875 (1983).

The use at issue is not an editorial article—it is a photo gallery and a shopping link with text overtly and expressly telling the consumer to click on it to shop and make a purchase. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46.

Defendant's argument relies heavily on *Stephano v. News Group Publ'ns*, where the court dismissed the action on a motion for summary judgment; yet said case is distinct from the one at hand. 64 N.Y.2d 174 (1984). In *Stephano*, defendants provided affidavits stating that the "Best Bets" column is a "regular news feature of the editorial portion of the magazine, designed to provide readers with information, sometimes including prices, concerning products and services in the New York metropolitan area", that the information is "solely for newsworthy purposes", that "advertising concerns play no part in deciding what to include in [it]", and that they received "no payment for any item mentioned in the column". *Id*. at 180-181.

However, here, the "SHOP THIS LOOK" and "BUY ON MODA OPERANDI" text with hyperlinks were not regular news features, and they were not solely for newsworthy purposes. *See* Memo in Support, Dkt. 20, p. 39. Rather, they and the use of our client's images concern advertising and are clearly commercial. The advertising text and hyperlinks are not a regular feature; they do not provide information, and are in no way solely for newsworthy purposes; they serve no purpose but to solicit a commercial transaction. See *United States v. United Foods, Inc.,* 533 U.S. 405, 409, 121 S.Ct. 2334 (2001) (commercial speech "does no more than propose a commercial transaction"). They absolutely are an advertisement for Moda.

In *Stephano*, the court found that the content at issue was frequently provided as ***information*** in reviews, news announcements of books, movies, shows or other new products including fashions. *Stephano* at 186. Unlike in *Stephano*, here, Vogue is not saying that the items worn by plaintiffs on the runway can be purchased at XYZ stores, will be available on X date and at the price of X; rather, Vogue comes right out and says BUY ON MODA OPERANDI and SHOP THIS LOOK, ***directing*** the consumer to go to the Moda website (as opposed to informing the consumer that they can buy it at three different stores), and telling the consumer to make a commercial transaction. Compl. Dkt. 1 ¶¶ 344-348, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39, Dkt. 1-8, Ex. 24, p. 46. The text was not *informative*; it was *assertively telling* the consumer to shop and make a purchase.

Additionally, the Complaint does allege payment to Vogue via the business relationship between Moda and Vogue. Compl. Dkt. 1 ¶¶ 489-491, 553, 601. Notably, the trial court in *Stephano* held that including information on the availability of the jacket at certain stores was not sufficient to show that the publication was for trade or advertising purposes "without a further showing of benefit to defendant". *Stephano*. at 181. Here, such benefit is alleged. Compl. Dkt. 1

¶¶ 489-491, 553, 601. Plaintiffs allege a business relationship between Vogue and Moda and an economic benefit to Vogue. *Id*. These are significant differences.

> ### a.   The Use at Issue Is Not an Advertisement in Disguise or Merely Incidental or In Close Proximity to Editorial Content.

In the within action, the advertising nature of the subject uses is not even "in disguise", but rather is much more blatant. *See Beverly v. Choices Women's Med. Ctr.,* 78 N.Y.2d 745, 752 (1991) (affirming Appellate Division order, finding that the use of Dr. Beverly's image, name, and title in an article of no longer current news, published within the firm's advertising literature, was not an advertisement in disguise, but rather was used in a direct and promotional commercial manner). The primary purpose of an advertisement in disguise is the advertisement. Here, the primary purpose of "SHOP THIS LOOK" is an ad to get consumers to buy products. Compl. Dkt. 1 ¶¶ 344-346, 553, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-9, Ex. 25, p. 39. The primary purpose of "BUY ON MODA OPERANDI" is an ad to get consumers to make a commercial transaction. Compl. Dkt. 1 ¶¶ 344, 347-348, 553, Dkt. 1-1 to 1-13, Ex. 1-43, *passim, see i.e.,* Compl., Dkt. 1-8, Ex. 24, p. 46.

Defendant repeatedly refers to its "editorial" content, which is not in issue in this action. Plaintiffs do not take issue with Vogue's news coverage about fashion trends. Plaintiffs take issue with the clear red advertising text with hyperlinks, and their use of plaintiffs' images by direct reference, as advertisements.

It is inaccurate to assert that there was an expectation that plaintiffs would be photographed and that those images would be widely used to promote the clothes they were wearing. Compl. Dkt. 1 ¶¶ 319, 338, 350, 544-552, 567, 611, 615-617, 635. That is not how the modeling business works. Plaintiffs were hired to walk the runways and consented to the use of their image for the runway only—this excludes any promotions for products, including the clothes they are wearing on the runway. *Id*. If a designer wants to hire a model to promote their

clothing line, and the model agrees, then they enter into an agreement for advertising use, which is separate and distinct from runway use—runway jobs are just for the runway, period. *Id*. Images of the models on the runway can only be used in editorials, period. *Id*. No advertisements are permitted, period. *Id*.

  In *Stephano*, the Court dismissed the claim on summary judgment, finding that it was not an ad in disguise because there was **no evidence that defendant received payment** for mentioning items in the column. *Id*. at 185. By contrast, here, we allege that Moda paid vogue to include the advertisements at issue which directly reference and incorporate the photographs of plaintiffs. Compl. Dkt. 1 ¶¶ 489-491, 553, 601. In *Lopez,* the Court dismissed the claim on summary judgment, finding that the use was not an advertisement where there was no evidence that it was prepared in conjunction with the advertisers. *Lopez v. Triangle Communications, Inc.*, 70 A.D.2d 359, 361 (1979). Conversely, here, plaintiffs allege that the use at issue was prepared in conjunction with Moda, Compl. Dkt. 1 ¶¶ 489-491, 553, 601, and rather than simply informing the readers of where items can be purchased and at what prices, Vogue includes a link to an ecommerce website and directs its consumers to "BUY" and "SHOP". Compl. Dkt. 1 ¶¶ 346, 348.

  In *Stephano*, the court held that including information on the availability of the product at certain stores was not sufficient to show publication for trade or advertising purposes "without a further showing of benefit to defendant." *Stephano* at 181. See *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (finding no advertisement where the feature identified several stores where the items could be bought and information that it can be purchased at a lower price). Here plaintiffs allege that Vogue and Moda had a business relationship for their mutual economic benefit, and plaintiffs are entitled to discovery on that issue to show that Vogue was paid to run the ads. Compl. Dkt. 1 ¶¶ 489-491, 553, 601.

Plaintiffs images are not merely in proximity of paid advertisements; rather, they are **part** of the advertisements. In *Lopez*, where plaintiff's father consented to the use, but plaintiff accidentally failed to sign a release, the court found that the fact that the article mentioned brands used in the makeover was incidental to the article and the photographs. *Lopez v. Triangle Communications, Inc.*, 70 A.D.2d 359, 361 (1979) Although the magazine included a stand-alone advertisement for one of the mentioned products, evidence showed that the article was prepared wholly without regard to such advertising and the magazine customarily discusses brand names in its articles. By contrast, the red hyperlink advertisements at issue herein, "BUY ON MODA OPERANDI" and "SHOP THIS LOOK", were not customarily used by Vogue. Memo in Support, Dkt. 20, p. 39. They were not published wholly without regard to the image and vice versa; rather they were published with absolute regard and direct reference to the images of plaintiffs. Compl. Dkt. 1-1 to 1-13, *passim*. Whereas, in *Lopez*, the article discusses the brands in the context of a makeover, *Lopez* at 360, here, defendant's text is literally saying "BUY ON MODA OPERANDI" and "SHOP THIS LOOK"; the plea to the consumer to make a commercial transaction could not be more blatant.

The advertising at issue is not merely incidental, in close proximity, or "side by side" with editorial speech. This is easily demonstrated by examining the differences between the use at issue herein and advertisements that are incidental, in close proximity, or "side by side" with Vogue's content. See *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (finding that the article that identified Hoffman as wearing Ralph Lauren shoes was not an advertisement simply because the magazine also contained a stand-alone advertisement for Ralph Lauren in close proximity to the article); *Lopez v. Triangle Communications, Inc.*, 70 A.D.2d 359, 361 (1979) (the fact that the magazine contained advertisements from a manufacturer who was also mentioned in the article, did not make the article an advertisement).

The exhibits to the Complaint show some advertisements *in the margins*, such as for Hourglass Cosmetics. Compl. Ex. 6, Dkt. 1-2, p. 43. Such ad for Hourglass Cosmetics is incidental to and in close proximity with plaintiff's image.

We will examine the nature of the advertisement in the margin. The ad for Hourglass cosmetics features model Rosie Hungtington-Whiteley pressing a makeup instrument against her right cheek. Compl. Ex. 6, Dkt. 1-2, p. 43. The use of *Ms. Whiteley's* image is part of the ad. The use of plaintiff's image on the same page does not advertise Hourglass cosmetics as plaintiff's image has no relationship to the Hourglass ad and is purely incidental to it. Compl. Ex. 6, Dkt. 1-2, p. 43. The ad for Hourglass cosmetics does not have anything to do with plaintiff's image. The Hourglass cosmetics ad does not rely on or trade off of plaintiff's image; rather, the ad holds its own, independent of plaintiff's image and Vogue's content. Compl. Ex. 6, Dkt. 1-2, p. 43.

By contrast, the red hyperlinked advertising text that says "SHOP THIS LOOK" is in direct reference to the look of plaintiff Anok Yai, *Id*., and in direct reference to each of plaintiffs as shown on the respective pages of the various exhibits to the Complaint. Similarly, the red hyperlinked text stating "BUY ON MODA OPERANDI" is in direct reference to the clothing worn by the models as shown in the referenced photo gallery. Compl., Dkt. 1-1 to 1-13, *passim*. The advertisements at issue herein directly reference and go hand in hand with plaintiffs' images. Without plaintiff's images, the advertisements at issue would be meaningless as they would not reference anything—"SHOP THIS LOOK" would refer to nothing, and "BUY ON MODA OPERANDI would be without a subject, leaving the consumer wondering "BUY what?" and "What look?".

In *Stewart v. Rollingstone, LLC*, the Court of Appeals of California reversed a lower court order denying defendant's motion to strike the Complaint sounding under California's Commercial Misappropriation statute, California Civil Code § 3344, finding, *inter alia*, that

close proximity to the advertisement did not make the speech commercial. 181 Cal. App. 4th 664 (2010). In *Stewart*, a cigarette ad appeared on the left-hand page within a magazine and the first page of a multi-page editorial feature appeared on the right-hand page. Id. at 671. The court found that the content of the tobacco company's commercial message had nothing to do with the magazine, which was neither referenced in the advertisement, nor in the feature itself, aside from an editorial footer. *Id*. at 686-687. By contrast, here, the advertisement directly references plaintiffs' images and incorporates them into the advertisement by reference such that they are part of the advertisement; without the images, the advertising text of "BUY ON MODA OPERANDI" and "SHOP THIS LOOK" would be meaningless. Additionally, the United States Supreme Court has held that commercial speech does no more than propose a commercial transaction and Vogue's speech directing the consumer to "BUY ON MODA OPERANDI" and to "SHOP THIS LOOK" by clicking on the hyperlink, by definition, does no more than propose a commercial transaction. Plaintiffs' images are made to be part of these advertisements.

## VI.   <u>CONCLUSION</u>

For the many foregoing reasons, defendant's motion to dismiss the Complaint ought to be denied.

Dated: White Plains, New York
         February 16, 2021

EDWARD C. GREENBERG, LLC

By: <u>s/Tamara L. Fitzgerald (TL 3784)</u>
    <u>s/Edward C. Greenberg (EG 5553)</u>
    445 Hamilton Ave., Suite 1102
    White Plains, New York 10601
    Tel: (212) 697-8777
    Fax: (212) 697-2528
    *Attorneys for Plaintiffs*
