UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ABBY CHAMPION, ALANNA ARRINGTON, : 
AMBAR CRISTAL ZARZUELA MONTERO, :
ANNA CLEVELAND, ANOK YAI, BLANCA :
PADILLA, BRIONKA HALBERT, BROOKE : 20 Civ. 07255 (LAK)
ROBINSON, CALLUM STODDART, CARA :
TAYLOR, CLAIRE DELOZIER, CYNTHIA :
ARREBOLA, DAMIEN MEDINA, DYLAN :
CHRISTENSEN, EMILY REBECCA HILL :
p/k/a EMI RED, ENIOLA ABIORO, :
GEORGINA GRENVILLE, GRACE :
ELIZABETH HARRY CABE p/k/a GRACE :
ELIZABETH, GRACE HARTZEL, HIANDRA :
MARTINEZ, JAL BUI, JOÃO KNORR, :
KRISTIN LILJA SIGURDARDOTTIR p/k/a :
KRISTIN LILJA, LEONA WALTON p/k/a :
BINX WALTON, LINEISY MONTERO, :
LUCIA LOPEZ AYERDI p/k/a LUCIA LOPEZ, :
LUISANA GONZALEZ, MANUELA :
MILOQUI p/k/a MANU MILOQUI, MARIA :
VITORIA SILVA DE OLIVEIRA p/k/a MARIA :
VITORIA, MARIAM URUSHADZE p/k/a :
MARISHA URUSHADZE, MAUD :
HOEVELAKEN, MAYA GUNN, MYRTHE :
BOLT, RACHELLE HARRIS, ROCIO :
MARCONI, SARA EIRUD, SELENA :
FORREST, SHUPING LI, TANG HE, UGBAD :
ABDI p/k/a UGBAD, VERA VAN ERP, :
VIKTORIIA PAVLOVA p/k/a ODETTE :
PAVLOVA, XIAOQIAN XU, :
:
              Plaintiffs, :
:
    -against- :
:
MODA OPERANDI, INC., ADVANCE :
PUBLICATIONS, INC. d/b/a CONDE NAST, :
ADVANCE MAGAZINE PUBLISHERS, INC. :
d/b/a CONDE NAST, :
:
              Defendants. :
------------------------------------------------------------X

**DEFENDANT MODA OPERANDI, INC.'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs' Opposition (the "Opposition"), Dkt. 26, never answers the critical question posed at the beginning of defendant Moda's Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint (the "Motion"), Dkt. 23: Taking into consideration the marketplace conditions in which Plaintiffs' images appear, are reasonable consumers likely to be confused into believing that Plaintiffs endorsed Moda?  Plaintiffs attempt to avoid the inevitably negative answer by raising a series of irrelevant or collateral issues.  For example, Plaintiffs protest that they did not consent to have their images shown on Moda's website.  But for the purposes of its Motion to Dismiss, Moda is not disputing that contention, which is an issue of fact to be decided at a later date if the case is not dismissed.  Similarly, the degree to which some Plaintiffs may be recognizable to certain people in certain contexts does not answer whether Moda's customers will be confused when viewing Plaintiffs' images as they are displayed on Moda's site: without names or biographical information, often partially or completely obscured and mixed among hundreds of other models and thousands of other, similar, images.

Moda's argument does not depend on the consent of the models or their recognizability, whether there is an alternate means of product display, or any of the other issues Plaintiffs raise.  Instead, Moda contends that, given the entirety of Moda's website and the way Plaintiffs' images appear, there is no realistic possibility that ordinarily prudent consumers visiting Moda's site will think Plaintiffs sponsored or endorsed Moda or its products.  Accordingly, Plaintiffs' Lanham Act claims do not meet the plausibility test set forth by the Supreme Court in the *Twombly* and *Iqbal* cases.  Allowing the Lanham Act claims to go forward despite this deficiency will give Plaintiffs an opportunity to pursue lengthy and costly discovery on (among other things) the likelihood of confusion for each of the forty-three different Plaintiffs, inevitably to reach a

conclusion that is already apparent from the face of the pleading: there is no likelihood of confusion.  Plaintiffs' Lanham Act claims must be dismissed.

With respect to Moda's Motion to Dismiss the claims of the twenty-six Non-New York Plaintiffs under Sections 50 and 51 of New York's Civil Rights Law, Plaintiffs rely on a series of old, inapplicable cases, all decided at a time when some courts held that New York substantive law might apply to a common law right of privacy.  This concept of a separate right of privacy has long been discarded, and even Plaintiffs' older cases agree that the law of a plaintiff's domicile governs any right of publicity claim.  Plaintiffs fail to address, much less distinguish, any of the cases in Moda's Motion, which establish that: (a) New York courts look to the domicile of each plaintiff to determine which state law applies; and (b) non-New York domiciles cannot bring claims under New York's statute.  Accordingly, the claims by the Non-New York Plaintiffs for relief under Sections 50 and 51 must be dismissed.

Given that Plaintiffs have chosen to "double down" on untenable legal theories, including the submission of declarations by a number of them and by their modeling agency that do not address the critical shortcomings in their Complaint, Plaintiffs' claims should be dismissed without leave to amend.  The Court also should decline to exercise Supplemental Jurisdiction over the state law claims of the remaining seventeen Plaintiffs.

I. **PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE LANHAM ACT CLAIM**

The Supreme Court's decisions in *Twombly* and *Iqbal* require that before defendants are forced to go through time consuming and expensive discovery, plaintiffs must allege facts that present at least a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-60, 127 S. Ct. 1955, 1966-68 (2007) (the plausibility requirement is important to avoid frivolous or abusive litigation and the threat of discovery expense); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S. Ct. 1937, 1950 (2009) (a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (Allegations must state a plausible claim for relief in order to "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence" to support a claim.).

For the reasons set forth in Moda's Motion, Plaintiffs do not plausibly allege consumers will be confused into believing they are endorsing Moda or the products on its website. Should Plaintiffs' claims be allowed to proceed, Moda would have to endure months of discovery—including discovery on the extent of recognizability of each of the forty-three Plaintiffs and as many as forty-three different surveys assessing whether consumers viewing each individual Plaintiffs' image on Moda's site are likely to be confused—only to establish that there is no likelihood of confusion. *See Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (affirming summary judgment dismissing Lanham Act claims where advertisements did not provide any identifying information about plaintiff models other than their pictures), *quoting Bondar v. LASplash Cosmetic*, No. 12-cv-1417, 2012 WL 6150859 at *7 (S.D.N.Y. Dec. 11, 2012) ("The misappropriation of a completely anonymous face could not form the basis for a false endorsement claim because consumers would not infer that an unknown model was 'endorsing' a product as opposed to lending her image to a company for a fee.").

Plaintiffs' Opposition fails to rebut the clear showing in Moda's Motion that customers viewing Moda's website are not likely to believe that each, or indeed any, of the Plaintiffs are endorsing Moda or its products. Instead, Plaintiffs put forth a series of arguments that do little to address the fundamental question in this case. For example, whether each Plaintiff is well-

known and recognizable (Opp., Dkt. 26 at 2-5) would be an issue if this case proceeds, but it is not recognizability that Moda alleges Plaintiffs have failed to plausibly plead. Regardless of their individual renown, Plaintiffs' images are nameless, often faceless, and used in the same manner as the surrounding images. These and the other marketplace conditions discussed in Moda's Motion render it highly improbable that any meaningful number of ordinarily prudent purchasers will believe any of the Plaintiffs endorsed Moda or its products. *See J.T. Colby & Co. v. Apple Inc.*, No. 11 Civ. 4060 (DLC), 2013 WL 1903883, at *16 (S.D.N.Y. May 18, 2013), *citing Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005) (likelihood of confusion analysis must be conducted in the context of the marketplace conditions under which the alleged infringement occurred).

Plaintiffs' suggestion that Moda need not use Plaintiffs' images or could have used other models or images (Opp., Dkt. 26 at 2-3, 5-7) misses Moda's point, and only reinforces the fact that the marketplace conditions under which consumers encounter Plaintiffs' images do not convey endorsement.[1] Plaintiffs' images are indistinguishable from and interchangeable with each other and with other images of models because they are used only to showcase the apparel and not to "trade off [P]laintiffs' images, popularity, and reputation." Opp., Dkt. 26 at 6.

Moda also is not arguing that it used the nameless and often-obscured faces of Plaintiffs for some parodic purpose. *Id.* at 7. Nor is it arguing, at least for the purposes of this Motion, that Plaintiffs' images are in service of a critique or are trademark fair use. *Id.* at 6.

---

[1] This argument also is based on an inaccurate premise: Plaintiffs' images appear only in the trunkshow portion of Moda's website, which is an online version of a traditional runway or trunkshow where designers attempt to sell the next year's fashion to buyers. Mot., Dkt. 23 at 4-6; Rosenthal Decl., Dkt. 24, Ex. G (Trunkshow Questions Page). As such, the apparel worn by Plaintiffs has not yet been manufactured for consumer purchase and a picture of a model wearing a given article of clothing on the runway is, in most cases, the only way that Moda can depict the item it is hoping its customers will purchase on a made to order basis.

Further, Plaintiffs' insistence that they did not consent to Moda's use (*Id.* at 1, 12-15) is a collateral issue, as are Plaintiffs' assertions that they have sold their photos to or endorsed products for others (*Id.* at 8-10) and that they did not expect their runway and trunkshow images would be used to depict the same apparel from those shows in the analogous online runway or trunkshow (*Id.* at 10-12).  Plaintiffs' intentions, states of mind, and relationships with non-parties have no bearing on the question presented here: whether *consumers* visiting Moda's site are likely to be confused into believing that Plaintiffs endorsed Moda or its products.  *See Alzheimer's Disease and Related Disorders Assoc. v. Alzheimer's Foundation of America, Inc.*, 307 F.Supp.3d 260, 287 (S.D.N.Y. 2018) (recognizing that, without a likelihood of confusion, acts taken by a party to enhance sales do not form the basis of a Lanham Act claim).  It also does not matter whether consumers might think that Plaintiffs "supplied the images off their backs." Opp., Dkt. 26 at 10.  Misconceptions as to the source of Plaintiffs' images are inconsequential.  Only the likelihood of confusion as to the source or sponsorship *of Moda or its products* is relevant and, as Plaintiffs fail to plausibly allege its existence, their Lanham Act claims should be dismissed.

Plaintiffs attempt to escape this standard by picking on minor distinctions in the cases cited by Moda's.  For example, Moda cites *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp.3d 422, 439-440 (S.D.N.Y. 2020), for the proposition that a court assessing whether confusion is plausible must view the specific way and context in which a plaintiff's mark was used.  Plaintiffs respond by pointing to certain factual distinctions between *Chanel* and this case, including arguing that in *Chanel* the use of the plaintiff's mark was necessary to describe the items sold and that the website disclaimed affiliation with Chanel.  Yet those distinctions are inapposite for the underlying point of both *Chanel* and the other cases cited in Moda's Motion, *i.e.* that when

the marketplace conditions—as plead in the Complaint and its references to Moda's website—under which consumers encounter Plaintiffs' images are considered, there is no plausible confusion.[2]

Similarly, Moda cites *Pelton v. Rexall Sundown, Inc.,* No. 99 Civ. 4342 JSM, 2001 WL 327164 at *4 (S.D.N.Y. April 4, 2001), where the court found that the depiction of a partially obscured model on a diet product label would not suggest to an ordinary consumer that the model was sponsoring the plaintiff but rather was used to show the product's benefits.  Plaintiffs respond that the product was not shown in the image in question and that Plaintiffs are much more recognizable than the *Pelton* plaintiff.  Again, Plaintiff's distinction is inapposite: *Pelton* stands for the proposition that the context in which an image appears is instructive on the question of confusion.  Where, as here, Plaintiffs' images are nameless and usually faceless, are scattered amid a sea of similar images, and are clearly only a means to depict high-fashion apparel as it appeared on the runway, there can be no confusion.[3]  The Court should exercise its function as a gatekeeper to dismiss the Lanham Act claims and protect Moda from expensive, time-consuming, and needless discovery.

## II.     THE RIGHT OF PUBLICITY CLAIMS FOR THE 26 NON-NEW YORK DOMICILIARIES MUST BE DISMISSED

In its Motion, Moda establishes that right of publicity claims are governed by the substantive law of the plaintiff's domicile.  *Se. Bank, N.A. v. Lawrence*, 66 N.Y.2d 910 (1985).

---

[2] The cases decided on motion for summary judgment are instructive, as they show that even after discovery, a Lanham Act claim cannot exist if the marketplace realties render confusion unlikely.  Here, discovery is unnecessary because the Complaint and its references to Moda's site provide the Court with all it needs to understand that there is no Lanham Act confusion.

[3] Plaintiffs' effort to explain away the cases finding that confusion is unlikely when plaintiff actually was associated with defendant is unavailing.  Opp., Dkt. 26 at 10-15.  None of the distinctions Plaintiffs raise change the fact that Plaintiffs did, in fact, model Moda's products, rendering any perceived association with those products accurate, not false.

As further articulated in the Motion, New York courts regularly dismiss right of publicity claims brought under New York law where the plaintiff is not a New York domiciliary.  Mot., Dkt. 23 at 21-22; *Groucho Marx Prods., Inc. v. Day & Night Co.*, 689 F.2d 317, 319 (2d Cir. 1982) (holding district court erred in applying New York right of publicity law because plaintiff's domicile determines which substantive law to apply).  Rather than attempting to distinguish or even addressing the authority cited by Moda, Plaintiffs rely on outdated cases that erroneously differentiate between rights of publicity and privacy.  Opp., Dkt. 26 at 16-17.  And even those cases do not support Plaintiffs' claims.[4]

There is no protection for the right of privacy in New York, including any common law protection for the right of publicity, other than the right of publicity set forth in Sections 50 and 51 of New York's Civil Rights Law.  *See Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 182-83 (1984) ("Since the 'right of publicity' is encompassed under the Civil Rights Law as an aspect of the right of privacy, which . . .is exclusively statutory in this state, the *plaintiff cannot claim an independent common-law right of publicity*.") (emphasis added); *see also Messenger v. Gruner + Jahr Printing and Publishing*, 208 F.3d 122, 125-128 (2d Cir. 2000).

Accordingly, Plaintiffs' reliance on *Price v. Hal Roach Studios, Inc.*, 400 F. Supp. 836 (S.D.N.Y. 1975) and *Mathews v. ABC Television, Inc.*,  No. 88 Civ. 6031 (SWK), 1989 WL 107640 (S.D.N.Y. Sept. 11, 1989) is misplaced.  In *Price*, decided before the New York Court of Appeals and federal courts confirmed that there is no protection for the right of privacy in New York other than under the Civil Rights Law, the court erroneously distinguished between a right of publicity and right of privacy, stating that such rights "are clearly separable."  400 F. Supp. at

---

[4] The declarations submitted by eighteen of the twenty-six Non-New York Plaintiffs and their model agency as to activities in New York do not change the choice-of-law analysis.  Plaintiffs must be domiciled in New York in order to bring a claim under Sections 50 and 51.

843.  In any event, the court did not conduct a choice-of-law analysis, but instead analyzed whether what it characterized as a right of publicity survives after death under New York law. *Id*. at 844.  In *Mathews*, the court also improperly distinguished between a right of publicity and privacy, ultimately concluding New York does not recognize a right to privacy.  1989 WL 107640, at *4.  Despite embracing this false distinction, the court held that the proper choice-of-law—the situs rule—applied and dismissed plaintiff's right of publicity claim under New York law because he was a non-New York resident.  *Id.* at *3 ("[S]ubstantive law applied in such right of publicity cases is that of the plaintiff's *residence*.") (emphasis added).

  Plaintiffs' reliance on three other cases is similarly misplaced.  In *Chaplin v. National Broadcasting Co*, 15 F.R.D. 134, 138–39 (S.D.N.Y. 1953), the court did not reach a choice-of-law analysis but rather dismissed the New York right of publicity claim because the speech at issue was non-commercial.  In *Bi-Rite Enters. v. Button Master*, 555 F. Supp. 1188, 1197 (S.D.N.Y. 1983), the court did not decide that the choice of law rule for torts applies to right of publicity claims.  Instead, it concluded that "'a New York Court, considering a right of publicity case, would apply its property choice-of-law rules to select the state whose law determines whether a plaintiff has a protectible right of publicity'. . . Property choice-of-law rules focus on the situs of the property."  *Id*. (internal citations omitted).   And in *Clark v. Celeb Pub., Inc.*, 530 F. Supp. 979, 982 (S.D.N.Y. 1981), while the plaintiff did not bring a claim under Sections 50 and 51 but instead improperly alleged a privacy claim for misappropriation of her image, the court nevertheless concluded "California, rather than New York, law should be applied . . . in a case of this nature, the state of a plaintiff's residency is normally the state of greatest injury."  Courts have remained consistent—the substantive law of a plaintiff's domicile governs their right of publicity claim.

Rather than address the cases set forth in Moda's Motion or amend their pleading to meet the clear legal requirements, Plaintiffs doubled down on a flawed legal position, forcing Moda to expend time and resources making and then defending this Motion.  Accordingly, the right of publicity claims of the twenty-six Non-New York Plaintiffs must be dismissed with prejudice and without leave to amend.[5]

### III. IF THIS COURT DISMISSES PLAINTIFFS' LANHAM ACT CLAIMS IT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

Plaintiffs suggest that "it would be keeping with the interest of judicial economy, convenience, fairness, and comity to exercise ancillary jurisdiction in this matter, if all of [P]laintiffs' federal law claims are dismissed" but fail to point to a single fact, or case, that supports this conclusion.  Opp., Dkt. 26 at 19.  That Plaintiffs' right of publicity claims allegedly arise "out of the same transaction or occurrence" as the Lanham Act claims may support supplemental jurisdiction in the first instance, but does not explain why supplemental jurisdiction would be appropriate *after* Plaintiffs' federal law claims have been dismissed so early in the case.  *See id*.  Courts consistently hold that when federal claims are dismissed early in a case and there is no diversity between the parties, judicial economy, convenience, fairness and comity favor declining supplemental jurisdiction and dismissing the remaining state law claims.  *See Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (affirming district court's decision to decline to exercise supplemental jurisdiction after motion to dismiss federal claims was granted); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (district court's exercise of supplemental jurisdiction where all federal claims had been dismissed early in case was abuse of discretion).  Where a motion to dismiss plaintiff's

---

[5] Plaintiffs state that four of the individual claimants have withdrawn their claims under New York's Civil Rights Law:  Gunn, Eirus, Li and Xu. ( Opp., Dkt. 26 at 18 n.4.)

9

Lanham Act claim is granted, courts routinely decline to exercise supplemental jurisdiction over the remaining right of publicity claims. *See e.g. Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 446 (S.D.N.Y. 2019) (declining to exercise supplemental jurisdiction over right of publicity claims and other state law claims where motion to dismiss of false endorsement claim was granted); *Roberts v. Bliss*, 229 F. Supp. 3d 240, 254 (S.D.N.Y. 2017) (same).

Plaintiffs do not cite cases that support exercising supplemental jurisdiction over their right of publicity claims after their Lanham Act claims are dismissed—in fact, two of the cases cited by Plaintiffs hold the opposite. *See Brown*, *supra*; *Washington Intl. Ins. Co. v Victoria Sales Corp.*, No. 87 Civ. 7110 (RJW), 1989 US Dist LEXIS 8306, at *10-11 (S.D.N.Y. July 19, 1989) (ancillary jurisdiction is not appropriate where federal claims were settled and dismissed).[6]

## CONCLUSION

Plaintiffs' claims under the Lanham Act and the claims of the Non-New York Plaintiffs under New York's Civil Rights Law should be dismissed with prejudice and without leave to amend, and the Court should decline to exercise supplemental jurisdiction over any remaining claims.

Dated: New York, New York
      March 9, 2021

    FRANKFURT KURNIT KLEIN & SELZ, P.C.

    By:   /s/ Edward H. Rosenthal
        Edward H. Rosenthal
        Kimberly M. Maynard
    28 Liberty Street, 35th Floor
    New York, New York 10005
    Tel: (212) 980-0120
    Fax: (347) 438-2114

    *Attorneys for Defendant Moda Operandi, Inc.*

---

[6] Per Your Honor's Rules, a courtesy copy of *Washington Intl. Ins. Co.* is attached as Exhibit A.

10

# EXHIBIT A

 Cited
As of: March 8, 2021 10:30 PM Z

# Washington International Ins. Co. v. Victoria Sales Corp.

United States District Court for the Southern District of New York

July 19, 1989, Decided

No. 87 Civ. 7110 (RJW)

**Reporter**
1989 U.S. Dist. LEXIS 8306 *

WASHINGTON INTERNATIONAL INSURANCE COMPANY, Plaintiff, v. VICTORIA SALES CORPORATION, Defendant. VICTORIA SALES CORPORATION, Third-Party Plaintiff, v. RADIX GROUP INTERNATIONAL, INC., Third-Party Defendant

## Core Terms

ancillary jurisdiction, third party action, third party complaint, judicial economy, federal court, convenience, customs, state law claim, federal claim, subject matter jurisdiction, parties

## Case Summary

**Procedural Posture**
Third-party plaintiff corporation brought a third-party action alleging negligence and breach of contract against third-party defendant company. The company filed a motion to dismiss the complaint against it for lack of subject matter jurisdiction. The action arose out of the main lawsuit concerning a payment due plaintiff surety company from the corporation. After the matter was settled, the corporation commenced the third-party action against the company and alleged that it breached its contract by failing to take action to prevent the customs duties from being assessed. The company sought to have the third-party action dismissed on the ground of lack of jurisdiction. The corporation claimed that the action fell within the court's ancillary jurisdiction. The court granted the company's motion to dismiss. The corporation's claims against the company flowed from the same set of facts as that of the initial action. Because the initial matter was settled, and the surety company, which created diversity and conferred subject matter jurisdiction on the court, was no longer involved in the matter, there was no judicial efficiency gained by retaining jurisdiction over the third-party action. Furthermore, the interests of convenience and fairness to the litigants did not support the continued exercise of ancillary jurisdiction.

**Outcome**
The court granted the company's motion to dismiss the corporation's third-party action against it for negligence and breach of contract.

## LexisNexis® Headnotes

**Overview**
The surety company guaranteed payment to the United States of all customs duties assessed in connection with goods imported by the corporation. The surety company brought the action to recover the payment made. After the matter was settled, the corporation commenced the

Civil Procedure > Preliminary Considerations > Jurisdiction > General Overview

Constitutional Law > The Judiciary > Jurisdiction > General Overview

Administrative Law > Separation of Powers > Jurisdiction

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Ancillary Jurisdiction

Civil Procedure > Parties > General Overview

Civil Procedure > Parties > Joinder of Parties > General Overview

### HN1[ ]  Preliminary Considerations, Jurisdiction

Ancillary jurisdiction refers to the power of a federal court, once it acquires jurisdiction over a case and controversy properly before it, to adjudicate other claims sufficiently related to the initial claim even though there is no independent basis for subject matter jurisdiction over the related claims. Traditionally, ancillary jurisdiction refers to joinder, usually by a party other than plaintiff, of additional claims and parties added after plaintiff's claim has been filed. It is mainly a tool for defendants and third parties whose interest would be injured if their jurisdictionally insufficient claims could not be heard in an ongoing action in federal court. The closely related doctrine of pendent jurisdiction typically refers to joinder of a state-law claim by a party already presenting a federal question claim against the same defendant. The analysis utilized in determining pendent jurisdiction over state law claims is generally also applicable to ancillary jurisdiction.

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Ancillary Jurisdiction

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

### HN2[ ]  Supplemental Jurisdiction, Ancillary Jurisdiction

A two prong test for district courts to utilize in determining whether to exercise ancillary jurisdiction over a claim is as follows: First, the main federal claim and the ancillary state claim must arise out of a common nucleus of operative fact, and second, the court, in its discretion, must determine that the policies of judicial economy, convenience and fairness to litigants are furthered by the assumption of jurisdiction.

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Ancillary Jurisdiction

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

Civil Procedure > Pleading & Practice > Pleadings > Impleader

### HN3[ ]  Supplemental Jurisdiction, Ancillary Jurisdiction

An impleader by a defendant of a third-party defendant under *Fed. R. Civ. P. 14* is always ancillary to the initial federal claim.

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Governments > Courts > Judicial Comity

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Ancillary Jurisdiction

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent

Claims

*HN4*[↧]  **Jurisdiction, Jurisdictional Sources**

The court's duty to examine if the exercise of ancillary jurisdiction is appropriate runs throughout the course of the proceeding. A federal court must consider and weigh in each case and at every stage of the litigation the values of judicial economy, convenience, fairness and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving ancillary or pendent state law claims.

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

*HN5*[↧]  **Subject Matter Jurisdiction, Supplemental Jurisdiction**

If a federal claim conferring jurisdiction is dismissed at an early stage in the proceeding, judicial economy, convenience and fairness to the litigants do not warrant the retention of state law claims and, generally, the state law claims should be dismissed.

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Ancillary Jurisdiction

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

Civil Procedure > ... > Pleadings > Complaints > General Overview

Civil Procedure > ... > Pleadings > Time Limitations > General Overview

*HN6*[↧]  **Supplemental Jurisdiction, Ancillary Jurisdiction**

*N.Y. C.P.L.R. 205(a)* allows a plaintiff to recommence any action in state court within six months after it is dismissed by a federal court on jurisdictional grounds, if it was timely commenced in the first instance.

**Opinion by:** **[*1]**  WARD

## Opinion

MEMORANDUM DECISION

ROBERT J. WARD, UNITED STATES DISTRICT JUDGE

Victoria Sales Corporation ("Victoria"), an importer of goods, brought a third party action against Radix Group International, Inc. ("Radix"), a customs broker, alleging state law claims including negligence and breach of contract. Radix has moved to dismiss the third party complaint against it for lack of subject matter jurisdiction pursuant to *Rule 12(b)(1), Fed. R. Civ. P.*, [1] claiming that no independent basis of jurisdiction exists for the third party action and that the Court should not continue to exercise ancillary jurisdiction over the third party action because the main action has been settled. For the reasons that follow, the motion is granted and the third party action is dismissed without prejudice.

BACKGROUND

The jurisdictional **[*2]** basis of the original action commenced by Washington International Insurance Company ("Washington International"), against Victoria was diversity of citizenship under *28 U.S.C. § 1332*. The action concerned payment due Washington International from Victoria as a result of a suretyship agreement.

Washington International served as a surety for Victoria, guaranteeing payment to the United States Government of all customs duties, additional duties and liquidated damages due or assessed in connection with certain

---

[1] In its motion papers, Radix cites *Rule 12(b)(6), Fed. R. Civ. P.*, which provides for dismissal for failure to state a claim upon which relief can be granted, and not *Rule 12(b)(1)*, which provides for dismissal for lack of jurisdiction over the subject matter. The Court, however, construes Radix's jurisdictional challenge as if it had been brought pursuant to *Rule 12(b)(1)*.

goods imported by Victoria into the United States between December 17, 1983 and January 7, 1986. During this time period, the Customs Service assessed certain charges against Victoria for the importation of its goods. Washington International remitted payment to the Customs Service in satisfaction of its obligations as surety on behalf of Victoria. Washington International then filed the initial action against Victoria to recover the payments made to the Customs Service.

On January 5, 1989, Victoria commenced a third party action against Radix under Rule 14, Fed. R. Civ. P., by filing a third party complaint, claiming that Radix was negligent and breached its contract as customs **[*3]** broker by failing to take action to prevent the customs duties from being assessed on the goods. Victoria seeks to recover from Radix any payment found to be owing to Washington International. Victoria and Radix are both citizens of New York for jurisdictional purposes and therefore no diversity or any other jurisdictional ground independent of the initial action by Washington International exists over the third party complaint.

On or about November 28, 1988, Washington International and Victoria entered into a settlement agreement and executed a stipulation of dismissal of the action between them with prejudice. The stipulation, however, has not been filed with the Court and is being held in escrow by Washington International's attorney pending completion of Victoria's action against Radix. According to the terms of the agreement, Washington International maintains a ten percent participation in any recovery by Victoria against Radix, less ten percent of the counsel fees and expenses incurred in the prosecution of the action against Radix.

Radix claims that the Court lacks subject matter jurisdiction over the third party complaint and seeks dismissal of the action. Victoria maintains **[*4]** that the third party action continues to fall within the Court's ancillary jurisdiction and should not be dismissed.

DISCUSSION

**HN1**[↑] Ancillary jurisdiction refers to the power of a federal court, once it acquires jurisdiction over a case and controversy properly before it, to adjudicate other claims sufficiently related to the initial claim even though there is no independent basis for subject matter jurisdiction over the related claims. *Baylis v. Marriott Corporation, 843 F.2d 658, 663 (2d Cir. 1988)*; C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 5523 (1984).

Traditionally, ancillary jurisdiction refers to joinder, usually by a party other than plaintiff, of additional claims and parties added after plaintiff's claim has been filed. It is mainly a tool for defendants and third parties whose interest would be injured if their jurisdictionally insufficient claims could not be heard in an ongoing action in federal court.

*Baylis v. Marriott Corporation, supra, 843 F.2d at 663*. [2]

**[*5]** In *Stamford Board of Education v. Stamford Educational Association, 697 F.2d 70, 72 (2d Cir. 1982)*, the Second Circuit offered **HN2**[↑] a two prong test for district courts to utilize in determining whether to exercise ancillary jurisdiction over a claim. First, the main federal claim and the ancillary state claim must arise out of "a common nucleus of operative fact" and second, the court, in its discretion, must determine that the policies of "judicial economy, convenience and fairness to litigants" are furthered by the assumption of jurisdiction. *Id; See also United Mine Workers v. Gibbs, 383 U.S. 715, 725-26*. The Court will first consider the power to exercise ancillary jurisdiction and then turn to the discretionary issues of judicial economy, convenience and fairness to the parties.

*A. Power to Exercise Ancillary Jurisdiction*

*Victoria's claims against Radix flow from the same common nucleus of facts as that of the initial action. Indeed,* **HN3**[↑] *an impleader by a defendant of a third party defendant under Rule 14 is always ancillary to the initial federal claim.* See *Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 367 (1977)*; C. Wright and A. Miller, *Federal* **[*6]** *Practice and Procedure: Civil* § 1441, at 223 (1971). Assuming the power to exercise ancillary jurisdiction over the third party complaint exists, the Court must next determine if the interests of judicial economy, convenience, and fairness to the litigants are advanced by the exercise of ancillary jurisdiction in the

---

[2] The closely related doctrine of pendent jurisdiction typically refers to joinder of a state-law claim by a party already presenting a federal question claim against the same defendant. *Baylis v. Marriott Corporation, supra, 843 F.2d at 663-64*. The analysis utilized in determining pendent jurisdiction over state law claims is generally also applicable to ancillary jurisdiction. See *Stamford Board of Education v. Stamford Educational Association, 697 F.2d 70, 72 (2d Cir. 1982)*.

current context of this lawsuit. [3]

### B. Discretion to Exercise Ancillary Jurisdiction

HN4[] *The Court's duty to examine if the exercise of ancillary jurisdiction is appropriate runs throughout the course of the proceeding. A federal court must consider and weigh in each case and at every stage of the litigation the values of judicial economy, convenience, fairness* **[*7]** *and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving ancillary or pendent state law claims. See* Carnegie Mellon v. Cohill, 108 S.Ct. 614, 618 (1988); Stamford Board of Education v. Stamford Educational Association, supra, 697 F.2d at 72-73.

### 1. Judicial Economy

*The action between Washington and Victoria was settled relatively early in the history of this case.* HN5[] ] *If the federal claim conferring jurisdiction is dismissed at an early stage in the proceeding, judicial economy, convenience and fairness to the litigants do not warrant the retention of state law claims and, generally, the state law claims should be dismissed. See* Baylis v. Marriott Corporation, supra, 843 F.2d at 665. Although the action between Washington International and Victoria has not been dismissed, the settlement agreement leaves no facts to be decided or issues to be tried. Washington International is no longer involved in the litigation before the Court and there is no judicial administrative efficiency gained by retaining jurisdiction over Victoria's claims against Radix.

Ancillary jurisdiction over third party claims has been maintained **[*8]** where the initial federal claims were disposed of prior to trial when the court has devoted a substantial amount of time to the issues involved in the case, substantial discovery has occurred and little additional work had to be done to determine the state law claims. *E.g.,* Greenwald v. American Medicare Corp., 666 F. Supp. 489, 492 (S.D.N.Y. 1987). In Curtis v. Sears Roebuck & Co., 754 F.2d 781, 784-85 (8th Cir. 1985), a case relied upon heavily by Victoria, the Eighth Circuit reversed a district court's decision to dismiss a state claim after the federal claim was settled before trial, finding it to be an abuse of discretion. In that case, however, substantial activity had occurred in the district court and only questions of law were outstanding, Id. at 785-86. Thus, the exercise of ancillary jurisdiction considerably furthered the interest of judicial economy. Victoria's action against Radix was not begun until after the settlement with Washington International was finalized. The third party action is still in its infancy and little in the way of judicial resources have been expended concerning the issues in this case. Retaining this action in federal court **[*9]** will not promote judicial economy.

Furthermore, there is no issue of federal interest involved in the ancillary claims asserted by Victoria which weighs in favor of maintaining the suit in federal court. *cf* Stamford Board of Education v. Stamford Educational Association, supra, 697 F.2d at 72-73. (continued exercise of ancillary jurisdiction over state law cross-claims after the federal claims were settled before trial was appropriate given the strong federal interest in determining the appropriateness of the state law claims which concerned indemnification for the costs of defending against a Title VII action). In contrast, the case between Victoria and Radix involves negligence and breach of contract issues especially suited for determination by the state court.

### 2. Convenience and Fairness to Litigants

*In this case, there would be little inconvenience and no discernable prejudice to the parties in forcing them to litigate the claim in state court. There has not been a substantial expenditure of effort before this Court on the merits of the underlying litigation by either Victoria or Radix. In addition, the issues to be resolved in the third party action can easily be determined* **[*10]** *in the state court, affording the parties the benefit of the state court's expertise in these areas of state law.*

*Furthermore,* HN6[] *New York Civil Practice Law and Rules* § 205(a) *allows a plaintiff to recommence any action in state court within six months after it is dismissed by a federal court on jurisdictional grounds, if it was timely commenced in the first instance.* Dunton v. County of Suffolk, 729 F.2d 903, 911 n.8 (2d Cir.) *amended on other grounds,* 748 F.2d 69 (1984). Therefore, dismissal of the third party action will not unduly prejudice Victoria. Accordingly, the Court

---

[3] The Supreme Court, in Finley v. United States, 109 S.Ct. 2003, 2010 (1989), held that a plaintiff may not rely on pendent-party jurisdiction to assert a state claim against one defendant, even when the state claim arises from the same common nucleus of operative facts as the federal claim already asserted against another defendant. *Finley,* however, did not directly address the application of ancillary jurisdiction to a third party complaint instituted by a defendant already in federal court.

declines to continue to exercise ancillary jurisdiction and the third party complaint is dismissed. [4]

CONCLUSION

The exercise of ancillary jurisdiction over the third party action between Victoria and Radix is not appropriate given the settlement of the initial action which conferred subject matter jurisdiction on the **[*11]** federal court. The third party action has not significantly progressed in this Court so that judicial efficiency or economy would support retaining jurisdiction. In addition, the interests of convenience and fairness to the litigants do not support continued exercise of ancillary jurisdiction. Accordingly, Radix's motion to dismiss the third party complaint for lack of subject matter jurisdiction is granted and the third party complaint is dismissed without prejudice. Washington International and Victoria are directed to confer regarding the submission of a stipulation of dismissal of the first party action or an agreement to place the action on the suspense docket, and to submit a stipulation of dismissal or a status letter to the Court by August 25, 1989.

It is so ordered.

Dated: New York, New York, July 19, 1989

**End of Document**

---

[4] Radix has also argued that the claims raised by Victoria are barred by the applicable statute of limitations. In light of the decision dismissing the third party action for lack of subject matter jurisdiction, the Court has not passed upon the statute of limitations argument.