UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                           :
ABBY CHAMPION, et al.,                                     :
                                                           :        1:20-CV-07255-CM
                        Plaintiffs,                        :
                                                           :
        - against -                                       :        **ORAL ARGUMENT REQUESTED**
                                                           :
MODA OPERANDI, INC., ADVANCE                               :
PUBLICATIONS, INC. d/b/a CONDE NAST,                       :
ADVANCE MAGAZINE PUBLISHERS, INC.                          :
d/b/a CONDE NAST,                                          :
                                                           :
                        Defendants.                       :
                                                           :
-----------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF CONDE NAST'S <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

DAVIS WRIGHT TREMAINE LLP

Elizabeth A. McNamara
Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Tel:  (212) 489-8230
Email:  lizmcnamara@dwt.com
          adamrich@dwt.com

*Attorneys for Defendants Advance Publications, Inc. d/b/a Conde Nast, Advance Magazine Publishers, Inc. d/b/a Conde Nast*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND ..................................................................................4

    A.    The Parties ...............................................................................................4

    B.    *Vogue*'s Spring 2020 Ready-to-Wear Runway Coverage ......................4

    C.    Procedural History ...................................................................................7

ARGUMENT ..........................................................................................................8

    I.    PLAINTIFFS' SECTION 51 CLAIMS ARE PRECLUDED BY THE WELL-ESTABLISHED "NEWSWORTHINESS" EXCEPTION .......................8

        1.    Fashion Reporting Is Newsworthy and in the Public Interest...................10

        2.    The Photographs Bore a "Real Relationship" to the Subject Matter of the Article ...............................................................................................11

        3.    The Editorial Feature Is Not Advertising in Disguise ..............................12

            (a)    The Advertising Component Here Was Merely Incidental .......... 13

            (b)    Close Proximity to Advertising Does Not Transform an Editorial Feature into Advertising in Disguise ............................ 14

    II.    JUDGMENT SHOULD BE ENTERED FOR CONDE NAST ON ITS ANTI-SLAPP COUNTERCLAIM ...................................................................18

        A.    New York's Amended Anti-SLAPP Statute...............................................19

        B.    The Damages Provisions of New York's Anti-SLAPP Statute Apply in Federal Court ............................................................................20

        C.    New York's Anti-SLAPP Statute Applies Retroactively .........................23

        D.    Conde Nast Is Entitled to Reasonable Attorneys' Fees and Costs Pursuant to Section 70-a ........................................................................23

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ..............................................................................21

*Abdelrazig v. Essence Commc'ns*,
    225 A.D.2d 498 (1st Dep't 1996) ............................................................................10

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)............................................................................20, 21

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013)......................................................................21

*Ann-Margret v. High Soc'y Magazine, Inc.*,
    498 F. Supp. 401 (S.D.N.Y. 1980) ....................................................................11, 25

*Aronson v. Dog Eat Dog Films, Inc.*,
    738 F. Supp. 2d 1104 (W.D. Wash. 2010)..............................................................24

*Arrington v. N.Y. Times Co.*,
    55 N.Y.2d 433 (1982) ...............................................................................................9

*Bement v. N.Y.P. Holdings, Inc.*,
    307 A.D.2d 86 (1st Dep't 2003) ...............................................................................9

*Beverley v. Choices Women's Med. Ctr.*,
    78 N.Y.2d 745 (1991) .............................................................................................13

*Bongino v. Daily Beast Co.*,
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ............................................................21, 24

*Burck v. Mars, Inc.*,
    571 F. Supp. 2d 446 (S.D.N.Y. June 23, 2008) ...................................................2, 9

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021), *appeal filed*, No. 21-800 (2d Cir. Mar.
    26, 2021) .................................................................................................................23

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993)........................................................................................20

*Creel v. Crown Publishers, Inc.*,
    115 A.D.2d 414 (1st Dep't 1985) ...........................................................................11

*Cruz v. Latin News Impacto Newspaper*,
216 A.D.2d 50 (1st Dep't 1995) ...............................................................................12, 14

*Ctr. For Med.. Progress v. Planned Parenthood Fed. of Amer.*,
2021 WL 3173804 (S.D.N.Y. July 27, 2021) ....................................................................2, 22

*Davis v. Elec. Arts, Inc.*,
775 F. 3d 1172 (9th Cir. 2015) ............................................................................................24

*Dominguez v. Vibe Magazine*,
21 Misc. 3d 1122(A) (Sup. Ct. N.Y. Cty. 2008) ..................................................................12

*Erie R.R. Co. v. Tomkins*,
304 U.S. 64 (1938) ..............................................................................................................21

*Ernst v. Carrigan*,
814 F.3d 116 (2d Cir. 2016) ................................................................................................19

*Finger v. Omni Publ'ns Int'l, Ltd.*,
77 N.Y.2d 138 (1990) .......................................................................................................9, 10

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) .................................................................................................21

*Goldman v. Reddington*,
2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ............................................................3, 20, 22

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995)..................................................................................................9

*Harris v. Amer. Accounting Assoc.*,
2021 WL 5505515 (N.D.N.Y. Nov. 24, 2021) ...........................................................3, 20, 24

*Henry v. Lake Charles Am. Press, LLC*,
566 F.3d 164 (5th Cir. 2009) ...............................................................................................21

*Hoffman v. Capital Cities/ABC, Inc.*,
255 F.3d 1180 (9th Cir. 2001) .............................................................................................15

*Hollander v. Pressreader, Inc.*,
No. 19-cv-2130 (AJN), 2020 WL 2836189 (S.D.N.Y. May 30, 2020) ...................................9

*In re Gleason*,
97 N.Y.2d 117 (2001) ...........................................................................................................23

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) .........................................................................................................18

*La Liberte v. Reid*,
    966 F. 3d 79 (2d Cir. 2020)...........................................................................3, 20, 21

*Lahiri v. Daily Mirror, Inc.*,
    162 Misc. 776 (Sup. Ct. N.Y. Cty. 1937) ...............................................................12

*Lemerond v. Twentieth Century Fox Film Corp.*,
    No. 07 Civ. 4635(LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ....................9

*Lerman v. Flynt Distrib. Co.*,
    745 F.2d 123 (2d Cir. 1984).........................................................................8, 9, 13

*Lohan v. Take-Two Interactive Software, Inc.*,
    31 N.Y.3d 111 (2018) .............................................................................................25

*Lopez v. Triangle Commc'ns*,
    70 A.D.2d 359 (1st Dep't 1979) .......................................................................15, 17

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*,
    94 N.Y.2d 436 (2000) ....................................................................................2, 9, 10

*Morse v. Studin*,
    283 A.D.2d 622 (2d Dep't 2001) ...........................................................................13

*Myskina v. Conde Nast Publ'ns*,
    386 F. Supp. 2d 409 (S.D.N.Y. 2005)...............................................................10, 12

*Nat'l Academy of Television Arts & Sciences, Inc. v. Multimedia Sys. Design, Inc.*,
    No. 20-CV-7269 (VEC), 2021 WL 3271829 (S.D.N.Y. July 30, 2021) .................22

*Palin v. N.Y. Times Co.*,
    510 F. Supp. 3d 21 (S.D.N.Y. 2020).......................................................................23

*Parekh v. CBS*,
    820 F. App'x 827 (11th Cir. 2020) .........................................................................21

*Psihoyos v. Nat'l Examiner*,
    No. 97-7624, 1998 WL 336655 (S.D.N.Y. June 22, 1998) ....................................10

*Renxiong Huang v. Minghui.org*,
    No. 15 Civ. 5582 (ER), 2019 WL 2525416 (S.D.N.Y. June 19, 2019) ..................10

*Reus v. ETC Housing Corp.*,
    72 Misc. 3d 479 (Sup. Ct. Clinton Cty. 2021) .......................................................25

*Robinson v. Snapple Beverage Corp.*,
    No. 99 CIV. 344(LMM), 2000 WL 781079 (S.D.N.Y. June 19, 2000) ..................13

iv

*Sackler v. Am. Broad. Cos., Inc.*,
   71 Misc. 3d 693 (Sup. Ct. N.Y. Cty. 2021) ...........................................................23

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................................................24

*Sherrod v. Breitbart*,
   843 F. Supp. 2d 83 (D.D.C. 2012), *aff'd*, 720 F.3d 932 (D.C. Cir. 2013)..............21

*Stephano v. News Grp. Publ'ns*,
   64 N.Y.2d 174 (1984) ................................................................................. *passim*

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ........................................................................17, 18

**Statutes**

15 U.S.C. §1058 (Section 51 of the Lanham Act) ................................................ *passim*

15 U.S.C. § 1121(a) (Section 43(a) of the Lanham Act) ...............................................7

Cal. Civ. Code § 3344 ...............................................................................................17

California Civil Procedural Code § 425.16(b)(2) .......................................................20

NYCRL §§ 50-51 .............................................................................................. *passim*

NYCRL § 70-a ................................................................................................. *passim*

NYCRL § 76-a ................................................................................................. *passim*

**Other Authorities**

First Amendment ....................................................................................1, 2, 7, 25

Fed. R. Civ. P. 12 ...............................................................................................20, 21

Fed. R. Civ. P. 12(c) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 7, 20, 24

Fed. R. Civ. P. 56 ......................................................................................................20

J. Thomas McCarthy & Roger E. Schechter, *The Rights of Publicity and Privacy* §
   8:100 (2d ed. 2020) ..............................................................................................12

Defendants Advance Publications, Inc. d/b/a Conde Nast and Advance Magazine Publishers, Inc. d/b/a Conde Nast (collectively, "Conde Nast") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as to Plaintiffs' right of publicity claims, and Conde Nast's counterclaim pursuant to N.Y. Civil Rights Law ¶¶ 70-a and 76-a.

## PRELIMINARY STATEMENT

Plaintiffs are fashion models who appeared in *Vogue's* editorial coverage of the Spring 2020 Ready-to-Wear collections (the "Runway Editorial"). By this Court's prior Order,[1] the Court dismissed Plaintiffs' Lanham Act claims against Conde Nast and dismissed the state law right of publicity claims asserted by 26 Plaintiffs who reside outside New York. Order at 37. The Court did not reach the merits of the remaining 17 Plaintiffs' right of publicity claims against Conde Nast under Sections 50-51 of the New York Civil Rights Law.

In dismissing the Lanham Act claims against Conde Nast as "barred by the First Amendment," the Court made a number of findings central to this motion. *Id.* at 14. In particular, the Court determined that the "Runway Editorial unquestionably has both journalistic and commercial aspects to it, but it is plainly an 'expressive work' as that term is understood in First Amendment jurisprudence." *Id.* at 17. And while the Court recognized that it was "undeniable" that the hyperlinks to the Moda Operandi, Inc. ("Moda") website had a commercial purpose, "the purpose of the Runway Editorial, viewed as a whole, is not commercial. It is, rather, to report and comment on the season's various runway collections." *Id* at 16. Put simply, as the Court found, "common sense tells us this is not a simple advertisement." *Id.* (internal citations and quotation

---

[1] *See* 9/22/21 Memorandum and Order Granting in Part and Denying In Part Defendants' Motions to Dismiss ("Order"), Dkt. 51.

marks omitted).  As a result, Plaintiffs remaining right of publicity claims should be dismissed and Conde Nast's counterclaim under New York's anti-SLAPP statute should be granted.

*First*, the Court's prior Order dictates the dismissal of Plaintiffs' remaining right of publicity claims.  As with the Lanham Act, New York's right of publicity statute is "limited in [its] reach because of the First Amendment," *Burck v. Mars, Inc.,* 571 F. Supp. 2d 446, 451 (S.D.N.Y. June 23, 2008), and does not apply to "reports of newsworthy events or matters of public interest." *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000). This liberally applied "newsworthy exception" to New York's statute is a question of law that can *only* be defeated if the use of the plaintiffs' images had no relation to the subject of the report, or it is an advertisement in disguise.

Here, there is no dispute that *Vogue's* coverage of the Spring 2020 designer collection were reports of newsworthy events, and the use of Plaintiffs' images in that reporting was directly related to the subject matter.  Order at 17-18.  Nor is the coverage an "advertisement in disguise." As the Court found, instead of an advertisement, the coverage "is a work of fashion journalism that, like every fashion magazine, happens to contain advertisements."  *Id.* at 16 (*see also*, "[n]othing about the Runway Editorial suggests that Conde Nast included the photos of Plaintiffs . . . for its commercial purposes…" *Id.* at 18).  In short, Plaintiffs' right of publicity claims are barred by the First Amendment and should be dismissed.  *Ctr. For Med.. Progress v. Planned Parenthood Fed. of Amer.*, 2021 WL 3173804, at *3 (S.D.N.Y. July 27, 2021) (McMahon, J.) (meritless lawsuits that seek to "chill[] the exercise of First Amendment freedoms" "should, where possible" be resolved "at the pleading stage") (internal citations and quotation marks omitted).

*Second*, since Plaintiffs' right of publicity claims are so clearly without merit, the Court should also grant judgment for Conde Nast on its anti-SLAPP counterclaim (the "Counterclaim")

pursuant to N.Y. Civil Rights Law ("NYCRL") Sections 70-a and 76-a.  New York's anti-SLAPP statute **requires** that fees and costs be awarded "upon a demonstration . . . that the action involving public petition and participation was . . . **continued** *without a substantial basis in fact and law* and could not be supported by a substantial argument for the extension, modification or reversal of existing law []."  NYCRL § 70-a(1).  The statute applies in federal court because it does not "rais[e] the bar for plaintiffs to overcome a pretrial dismissal motion."  *La Liberte v. Reid*, 966 F. 3d 79, 86 n.1 (2d Cir. 2020) (finding that the "special motion to strike" procedure under California's anti-SLAPP statute did "raise the bar").  Unlike the California statute rejected in *Reid*, New York's anti-SLAPP statute does not dictate any exclusive procedural requirement for obtaining fees or damages.  In applying New York's statute in federal court, as one court recently observed "an anti-SLAPP litigant may obtain costs and attorney's fees without using [CPLR] procedures," *Goldman v. Reddington*, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021), and a claim for relief under the statute can even be asserted in a stand-alone lawsuit, NYCRL § 70-a(1).  Accordingly, fees may be awarded in federal court under Section 70-a.  *Harris v. Amer. Accounting Assoc.*, 2021 WL 5505515, at *15 (N.D.N.Y.  Nov. 24, 2021).

Judgment on Conde Nast's Counterclaim is clearly warranted because this case implicates the core interests that New York sought to vindicate with the fee-shifting provision of its anti-SLAPP statute.  By knowingly continuing their baseless claims – despite repeated notice from Conde Nast that the claims lacked merit – Plaintiffs forced Conde Nast to expend significant resources defending its First Amendment-protected speech.  Under New York law, Conde Nast must be made whole.

For all of these reasons, judgment should be entered for Conde Nast on Plaintiffs' right of publicity claims and on Conde Nast's anti-SLAPP Counterclaim.

## FACTUAL BACKGROUND

The salient facts are described in this Court's prior Order, MTD Order at 4-11, as well as Conde Nast's Memorandum in Support of its Motion to Dismiss, Dkt. 20 at 4-11. A brief recitation is set forth below.

### A.      The Parties

The remaining Plaintiffs are 17 "professional models who are routinely hired by companies for their modeling services to sell products." Complaint ("Compl.") ¶ 330. Defendants Advance Publications, Inc. and Advance Magazine Publishers, Inc. publish Vogue Magazine ("Vogue"). Id. ¶¶ 309-310. As this Court has observed that Vogue occupies:

> an iconic place in the fashion world. . . . It is a truth universally acknowledged – so universally as to be worthy of judicial notice – that designers long to have their work featured in Vogue, and that the models who make their living exhibiting designer clothes aspire to have their photographs appear in the magazine – or, today, on its website or social media account.

Order at 2. Defendant Moda is "an online storefront for . . . high-fashion designer items that are, inter alia, seen on the runway." Compl. ¶ 299. Moda is one of Vogue's many advertisers. *Id.* ¶ 489.

### B.      Vogue's Spring 2020 Ready-to-Wear Runway Coverage

Vogue's website – vogue.com – features a wide range of editorial stories, ranging from politics to wellness. Counterclaim ¶ 39. The site is divided into seven sections, each with its own focus and content. *Id.* The Runway section of vogue.com, which is the focus of Plaintiffs' claims, reports on the latest news concerning fashion designers. *Id.* ¶ 40. Since 1988, each season, Vogue Runway provides exhaustive coverage of nearly every work shown at every major designer show, including reviews and commentary concerning each designer's collection. *Id.* ¶ 41, 44. The presentation of Vogue Runway's editorial coverage is directed by Vogue's editors, and the choices of which designer collections to feature is made solely by those editors – without any influence

from the sales and advertising side of the company. *Id.* ¶ 43.  To illustrate that commentary, Vogue Runway typically presents fashion shows in their entirety from beginning to end in the same order the fashions appeared in the designers' shows. *Id.*

In September 2019, Vogue published the Runway Editorial.  Compl. ¶ 46.  The Runway Editorial features comprehensive coverage of 474 different designers' Spring 2020 collections.[2] On the homepage of the Runway Editorial, visitors can select a designer whose line they wish to review in more detail by clicking the name of the designer from a pull-down menu on the left of the page, or by clicking one of the thumbnails.[3]  From there, a visitor is then brought to that designer's "cover" page, which includes commentary and analysis about the designer's Spring 2020 collection. *See*, *e.g.*, Order at 7-9.  Many of the designer cover pages also feature video from the designer's runway show, and include a section labeled "Atmosphere" that shows wide shots of the models, as well as the audience at each show, providing readers with an even more detailed sense of what the fashion show was like.[4]

Particularly relevant to this action, for each collection included in the Runway Editorial, there is a link to a "slide show," which illustrates the editorial commentary by showing each individual work presented at the show. *See, e.g.*, Compl. Ex. 1, Dkt. 1-1 at 36-37.  The images featured in the slide show depict models, including the Plaintiffs, as they walked the runway for the featured designer show. *Id.*  This slideshow element has been included in the Vogue Runway features for the last several years. *See* McNamara Decl. Ex. D, Dkt. 25-21.

Like most magazines, in print and online, Vogue generates revenue by selling space to

---

[2] https://www.vogue.com/fashion-shows/spring-2020-Ready-to-Wear (last visited Jan. 21, 2022).
[3] *Id.*
[4]  *See,   e.g.*,   https://www.vogue.com/fashion-shows/spring-2020-ready-to-wear/michael-kors-collection/slideshow/atmosphere#1 (last visited Jan. 21, 2022).

advertisers whose products are promoted side-by-side with Vogue's editorial content.  *See* Order at 2 ("Vogue subsists, not on subscription revenue, but on the money it receives from ad sales.")  As to be expected, advertisers place their advertising dollars where they anticipate they will find likely consumers.  Vogue advertisers cover a wide range of industries, many related to the fashion world.  For example, located next to the images of Plaintiffs in the Editorial Feature are ads for various designer products, including:  Otezla, Burberry, Hourglass Cosmetics, and Hermès.  *See* Dkt. 23 at 7.  As is common in the interactive internet space, advertising may include links to the product site, including links to "shop now."   *See* Counterclaim ¶ 54 (providing illustrative examples from the Complaint with links for Levi's and Land O'Lakes butter).  Plaintiffs do not challenge their association with any of this advertising.  Nor do Plaintiffs have any "complaint about Vogue's use of photos of their runway appearances in the Runway Editorial."  Order at 5.

Plaintiffs' action against Vogue instead primarily rests on the small red box in the lower corner of some illustrative photos in the designer "slide shows," with the words, "Shop This Look." Compl. ¶ 345.  The placement of the hyperlinked box varied depending on the platform used to view the content.  While the examples attached to the Complaint show the red box at the bottom of the image, the "Shop This Look" box was displayed at the bottom of the screen when viewed on an iPhone 7 using the Safari browser.  *See* Order at 10.  Notably, "[t]he box does not identify Moda or any retailer," Order at 10, but if a reader elected to click the red box, she would be taken to a page on the Moda website featuring a "trunk show," where "the consumer can purchase the same style items" featured in the runway photographs.  Compl. ¶ 346.  Prior to clicking on the link, the reader would have no way to associate the "Shop This Look" button with Moda.  *See* Order at 23 ("A consumer viewing the slideshow would have no clue, from the photo and superimposed text, that Conde Nast was directing the viewer to Moda's website – as opposed to

Saks Fifth Avenue's, or Bergdof Goodman's, or Neiman Marcus' . . . ."). The Moda website is owned and controlled by Moda. The Moda website does not include any reference to Vogue; nor do the Plaintiffs allege that Vogue is in any way referenced or featured on the Moda website.

Two of the remaining Plaintiffs – Walton and Abdi – also appear on individual designer "cover" pages in the Editorial Feature. Order at 22. The cover pages for each designer's collection displays one or more selected photos from the designer's Spring 2020 and on the photo(s) is a link to the runway slide show. *Id.* The photographs of Walton and Abdi appeared near a second type of even smaller hyperlinked text box in the lower-left corner of the screen: these boxes displayed a small image of a shopping basket along with the words "Buy on Moda Operandi," Compl. ¶ 347, "in very small print," Order at 6.

C.      **Procedural History**

Before Plaintiffs filed their Complaint, Conde Nast sent Plaintiffs' counsel an 11-page letter explaining why Plaintiffs claims lack any basis in law or fact, and warning that Conde Nast would seek recovery of its attorneys' fees if Plaintiffs forced Conde Nast to defend its First Amendment rights in court. Counterclaim ¶ 67. Undeterred, 43 Plaintiffs commenced this action on September 4, 2020, asserting two causes of action against both Vogue and Moda: (1) Violation of New York's Civil Rights Law §§ 50-51 ("Section 51"); and (2) Violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125).

Conde Nast and Moda filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Dkts. 19, 22, and on September 22, 2021, the Court issued an Order granting the motions in part and denying them in part. Order at 37. As to the claims against Conde Nast, the Court dismissed Plaintiffs' Lanham Act claims and dismissed the Section 51 claims asserted by 26 of

the Plaintiffs on the ground that they were not New York residents.  *Id.* at 37.[5]  The Court decided

"not without some reluctance" to retain supplemental jurisdiction over the remaining 17 Plaintiffs'

claims against Conde Nast, *id.* at 35, but the Court did not reach Conde Nast's argument that those

claims were precluded as a matter of law by New York's newsworthiness exception.

     In light of the Court's Order, on October 20, 2021, Conde Nast again wrote to Plaintiffs'

counsel explaining that the remaining right of publicity claims fail.  Conde Nast also put Plaintiffs

on notice that it would assert an anti-SLAPP counterclaim to seek recovery of its fees if Plaintiffs

did not withdraw their claims.  Counterclaim ¶ 71.  Conde Nast filed its Answer to the Complaint

on November 12, 2021, along with a counterclaim pursuant to New York's anti-SLAPP statute,

NYCRL §§ 70-a and 76-a ("anti-SLAPP Statute").  Dkt. 56.  Conde Nast received no response to

its October letter by the date it filed its Counterclaim.  Conde Nast's Counterclaim seeks recovery

of its attorneys' fees and costs pursuant to the anti-SLAPP Statute.  *Id.* ¶ 72.  Plaintiffs answered

the Counterclaim on December 11, 2021.[6]

## ARGUMENT

## I.    PLAINTIFFS' SECTION 51 CLAIMS ARE PRECLUDED BY THE WELL-ESTABLISHED "NEWSWORTHINESS" EXCEPTION

     The Complaint fails to state a claim for any violation of Section 51 because as a matter of

law the complained of uses fit squarely within the "newsworthiness" exception to Section 51

liability.  Accordingly, judgment should be entered for Conde Nast.

---

[5] The Court dismissed the claims of four Plaintiffs without prejudice, granting them leave until October 8, 2021, to file an amended complaint asserting facts to support a right of publicity claim under New York law.  The four Plaintiffs did not file an amended complaint and their claims should be deemed dismissed with prejudice.

[6] Plaintiffs answer to the Counterclaim was due on December 3, 2021.  The answer was filed after Conde Nast's counsel, as a courtesy, put Plaintiffs' counsel on notice that they failed to file a response to the Counterclaim.

"To make out a claim under section 51, a plaintiff must establish (1) that the defendant used plaintiff's name, portrait or picture within the state, (2) *for purposes of advertising or trade*, and (3) without first obtaining plaintiff's written consent." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 129 (2d Cir. 1984) (emphasis added) (citation omitted). Plaintiffs' claims are fatally deficient because they have not pleaded—and cannot establish—that the use of their images was "for advertising purposes or for the purposes of trade" as required by the statute. NYCRL § 51.

New York's right of publicity statute is "limited in [its] reach because of the First Amendment," *Burck*, 571 F. Supp. 2d at 451, and does not apply to "reports of newsworthy events or matters of public interest," *Messenger*, 94 N.Y.2d at 441. *See also Bement v. N.Y.P. Holdings, Inc.*, 307 A.D.2d 86, 89-90 (1st Dep't 2003) ("[The] statutory right to privacy [is] generally . . . inapplicable where the use occurs in the context of a report of newsworthy events or matters of public interest."); *Lerman*, 745 F.2d at 131 ("The trade purposes prong of the statute may not be used to prevent comment on matters in which the public has a right to be informed."). Accordingly, "a newsworthy article is not deemed produced for the purposes of advertising or trade." *Messenger*, 94 N.Y.2d at 441. This is consistent with the purpose of Section 51, which was enacted "to protect privacy without preventing publication of matters of public interest." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1049 (2d Cir. 1995).

The newsworthiness exception to New York's right of publicity statute is "***liberally applied.***" *Hollander v. Pressreader, Inc.*, No. 19-cv-2130 (AJN), 2020 WL 2836189, at *5 (S.D.N.Y. May 30, 2020) (emphasis added) (quoting *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 143 (1990)); *accord Stephano v. News Grp. Publ'ns*, 64 N.Y.2d 174, 184 (1984); *Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433, 440 (1982). Determining whether a challenged publication is newsworthy is a question of law, and, as a result, courts routinely grant dismissal motions on this

9

basis.  *See Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635(LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) (dismissing Section 51 claim and finding that the plaintiff's appearance in the mockumentary film "Borat" was newsworthy as a question of law); *Hollander*, 2020 WL 2836189, at *5 (Section 51 claim barred by newsworthy use); *Renxiong Huang v. Minghui.org*, No. 15 Civ. 5582 (ER), 2019 WL 2525416, at *5 (S.D.N.Y. June 19, 2019) (same).

In assessing the newsworthiness exception, the threshold question is whether the article in which the plaintiff's image appears is newsworthy.  *Bement*, 307 A.D.2d at 90-91.  Once that is determined, "the only query at that point becomes whether the article is an advertisement in disguise or whether its use of plaintiff's name and/or image bears any real relationship to the article."  *Id.  Accord Messenger*, 94 N.Y.2d at 442.  *See also Finger*, 77 N.Y.2d at 143 ("[J]udicial intervention should occur only in those instances where there is 'no real relationship' between a photograph and an article, or where the [use] is an 'advertisement in disguise'") (citation omitted).

"Here, there can be no question that Vogue's use of the plaintiffs' photographs, taken on the runway, in a summary document about the season's new fashions intends an 'artistic' and non-commercial purpose."  Order at 17.  The newsworthiness exception precludes liability as a matter of law because the Runway Editorial (i) is newsworthy, (ii) is not an "advertisement in disguise"; and (iii) its content bore a direct relationship to the use of Plaintiffs' images.

### 1.      Fashion Reporting Is Newsworthy and in the Public Interest

The terms "[n]ewsworthiness" and "public interest" "have been construed in most liberal and far-reaching terms to encompass all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general."  *Myskina v. Conde Nast Publ'ns*, 386 F. Supp. 2d 409, 417 (S.D.N.Y. 2005) (quoting *Psihoyos v. Nat'l Examiner*, No. 97-7624, 1998 WL 336655, at *6 (S.D.N.Y. June 22, 1998)) (internal quotation marks omitted).  Specifically, fashion news is well established to be within the broad

sphere of newsworthy reporting.  *See*, *e.g.*, *Stephano*, 64 N.Y.2d at 184 ("The newsworthiness exception applies…to news stories and articles of consumer interest *including developments in the fashion world*") (emphasis added) (internal citations omitted); *Abdelrazig v. Essence Commc'ns*, 225 A.D.2d 498, 498 (1st Dep't 1996) (holding that article concerning "fashion trends in the Black community" was newsworthy and thus outside the reach of § 51).

As this Court has already found, "the direction of fashion from season to season [is] deemed worthy of coverage in major newspapers," and Vogue occupies "an iconic place in the fashion world."  Order at 1, 2 (Vogue is "[a]mong the most important publications to feature photographs and commentary about couture and designers' new collections").  *See also Creel v. Crown Publishers, Inc.*, 115 A.D.2d 414, 416 (1st Dep't 1985) ("The focus of inquiry in applying the 'public interest' exception is not only upon the particular photograph but also upon the article or book within which the photograph appears.").  And Plaintiffs have no plausible objection to the use of their images to illustrate the Spring 2020 Collections.  As the Court observed, they were "hired by fashion designers to exhibit items of clothing from the designers' latest collections."  Order at 1.  *See Ann-Margret v. High Soc'y Magazine, Inc.*, 498 F. Supp. 401, 405 (S.D.N.Y. 1980) (holding that Section 51 does not apply to accurate representation of a plaintiff's "public performance").  As the Court has found, "[i]t is not plausible to infer that Plaintiffs do not approve of the use of their images to sell clothing generally, because that is what models are hired to do."  Order at 24.  "Simply by walking the runway wearing the clothes, Plaintiffs were advertising the items for sale."  *Id.*

In short, photographs of the models who walked the runways wearing the designers' fashions is a matter of interest to Vogue's readership and is newsworthy.

**2.    The Photographs Bore a "Real Relationship" to the Subject Matter of the Article**

11

Like the "public interest factor," the "real relationship" test is also construed broadly, including nearly all photographs presented in conjunction with newsworthy content unless "the picture complained of has so tenuous a connection with the article that it can be said to have no legitimate relationship to it." *Lahiri v. Daily Mirror, Inc.*, 162 Misc. 776, 783 (Sup. Ct. N.Y. Cty. 1937). Where, as here, the challenged photographs of models wearing designer clothing directly illustrate the subject of the article – those designers' clothing – there is an obvious, incontrovertible "real relationship." *Dominguez v. Vibe Magazine*, 21 Misc. 3d 1122(A) (Sup. Ct. N.Y. Cty. 2008) (photographs of women dressed as topless mermaids at a party bore reasonable relationship to an article about the party); *Myskina*, 386 F. Supp. 2d at 419 (revealing photographs of tennis player had "real relationship" to article about her in magazine).

As this Court already found:

> It is all but impossible to imagine the Vogue 2020 Ready to Wear editorial without any photographs of the runway shows that are being described and critiqued. There is no better way to aid the reader in understanding the collections and Vogue's commentary than to see pictures from the runway shows; and those pictures will necessarily include the models, whose headpieces, hair and makeup are an integral part of any runway show.

Order at 18. Since Vogue used photographs of Plaintiffs to illustrate the designer works they were modeling, the photographs bear a "real relationship" to the subject matter.

### 3.    The Editorial Feature Is Not Advertising in Disguise

The Complaint also does not plausibly infer that the Runway Editorial is an advertisement in disguise. "The 'advertisement in disguise' exception is very narrowly construed." *Cruz v. Latin News Impacto Newspaper*, 216 A.D.2d 50, 52 (1st Dep't 1995) ("Even a fashion article which directs the reader's attention to specific stores and their wares is not an 'advertisement in disguise.'") (quoting *Stephano*, 64 N.Y.2d at 180). "Often mentioned in dictum, the concept has only rarely resulted in a finding of liability for invasion of privacy or infringement of publicity

rights."  J. Thomas McCarthy & Roger E. Schechter, *The Rights of Publicity and Privacy* § 8:100 (2d ed. 2020).  As explained below, the Runway Editorial is not an advertisement in disguise because (a) the commercial aspects were incidental to its primary purpose and (b) mere proximity of advertising content does not transform news reporting into commercial speech.

### (a)      The Advertising Component Here Was Merely Incidental

In the rare instances where courts *have* found that a challenged publication was an advertisement in disguise, those courts held that advertising was the ***primary purpose*** of the challenged publication at issue.  *See*, *e.g.*, *Robinson v. Snapple Beverage Corp.*, No. 99 CIV. 344(LMM), 2000 WL 781079, at *4 (S.D.N.Y. June 19, 2000) (where rappers' pictures and voices were used in a vignette promoting goodwill games, "the Court is unable to even find a disguise"); *Beverley v. Choices Women's Med. Ctr.*, 78 N.Y.2d 745, 752 (1991) (calendar commemorating women's rights, which was widely disseminated to promote defendant's medical services business, was "*on its face*" an advertisement); *Morse v. Studin*, 283 A.D.2d 622 (2d Dep't 2001) (plastic surgeon's use of "before" and "after" photographs of plaintiff in a "newsletter" mailed to 4,000 patients and containing gift certificates for free consultations held to be an advertisement in disguise).  On the other hand, where, as here, "the advertisement is merely incidental to a privileged use[,] there is no violation of § 51."  *Lerman*, 745 F.2d at 130.

The facts here are easily distinguishable from those cases where courts found that advertising was the primary purpose of a challenged publication.  Vogue is a respected and established editorial publication, occupying an "iconic place in the fashion world," and as the exhibits to the Complaint make clear, the primary purpose of the Runway Editorial was to present designer outfits modeled at the Spring 2020 Ready-to-Wear show, not to sell clothes on Moda. *See* Compl. Exs. 1-43; Order at 2.  As this Court has found:

[T]he purpose of the Runway Editorial, viewed as a whole, is not commercial.  It

is, rather, to report and comment on the season's various runway collections.  The
opportunity to purchase clothing is made available to the reader, but only in the
context of a preview of the designer's entire collection and journalistic commentary
on that collection.  The commercial hyperlinks occupy but a small fraction of each
page of Runway Editorial:  the words "Moda Operandi" are barely visible on the
cover page and are not seen at all on the photographs of the individual designs in
the slide show.

Order at 16.  *See also id.* at 18 ("Nothing about the Runway Editorial suggests that Conde Nast

included the photos of Plaintiffs in order to exploit their purported renown for its commercial

purposes – or for any reason other than to illustrate the clothing that was being exhibited in the

runway shows, which are themselves newsworthy events, and to make the commentary in the

world's leading fashion magazine intelligible.").

The primary, editorial purpose of the Runway Editorial is further evidenced by the fact that

Vogue has long included virtually identical runway features without any "Shop This Look" links.

*See* McNamara Ex. D, Dkt. 25-21.  In other words, the Runway Editorial stands alone without the

hyperlinked button Plaintiffs' claim rests on.  Given the foregoing – as already recognized by this

Court – it is beyond implausible to suggest that the primary purpose of the Runway Editorial was

advertising for Moda. There is simply no basis for suggesting here that Conde Nast's use of

Plaintiffs' photographs fits within the "very narrowly construed" advertisement in disguise

exception.  *Cruz*, 216 A.D.2d at 52.

> **(b)     *Close Proximity to Advertising Does Not Transform an Editorial
> Feature into Advertising in Disguise***

A right of publicity claim does not arise simply because advertising appears incidental to

or adjacent to the editorial use – if that were true, it would eviscerate the newsworthiness exception

completely, since editorial coverage on matters of public interest is almost always presented side-

by-side with paid advertising.  Here, the link to Moda's site existed alongside other advertisements

(including hyperlinked advertisements) from many other companies as varied as Hermès, Levi's,

Best Buy, Land O'Lakes, and Mango. *See infra* at 6. As the Court found, the Runway Editorial is simply "a work of fashion journalism that, like every fashion magazine, happens to contain advertisements." Order at 16.

Indeed, advertising in editorial publications often has an obvious connection to the content of the editorial feature and editorial features may even include information relevant to the sale of an advertiser's goods. *See, e.g., Lopez v. Triangle Commc'ns*, 70 A.D.2d 359, 361 (1st Dep't 1979) ("make-over" feature in *Seventeen* Magazine held not to be an advertisement in disguise where the article mentioned the product of a manufacturer who advertised in that issue); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001) (magazine article that superimposed Dustin Hoffman's head onto a model's body, identified in the text as wearing Ralph Lauren shoes, was not an advertisement, even though there was a Ralph Lauren advertisement in the magazine and a "Shopper's Guide" that identified the price of the shoes and retailers selling the shoes). As the Court has already held, the Runway Editorial is similar to the editorial work considered in *Hoffman*: "'Common sense tells us that this is not a simple advertisement.'" Order at 16 (quoting *Hoffman*, 255 F.3d at 1186).

*Stephano* is also illustrative. There, the New York Court of Appeals held that the unauthorized use of a professional model's photograph in a fashion column about the availability of a bomber jacket for purchase was protected from liability under the newsworthiness exception. The court held that there was no triable issue of whether the column was an actionable advertising usage, even though the editorial copy included express "sales" information, noting that the pictured bomber jacket "features the same cut at a far lower price—about $225," and included the approximate date it would be available, along with the names of the stores where it could be purchased. 64 N.Y.2d at 179; *see also* Figure 1. By contrast, as reflected in Figure 1, the main

15

components of the Runway Editorial slideshow are the Vogue logo, the name of the feature, "Spring 2020 Ready-to-Wear," the name of the designer and the small, red "Shop This Look" text box at the bottom of the screen, linking to Moda's site. As the Court found:

> except on the "home" page for each designer's segment on the Runway Editorial [which is only relevant to Plaintiffs Walton and Abdi], there is no reference to Moda on any of the plaintiffs' photographs – the words "Moda Operandi" do not appear at all on any of the pages of the designer's slide show. . . . Any physical proximity between the pictures of Plaintiffs and either an explicit reference to Moda (which occurs only on a designer's home page) or a link to Moda (which does not identify the retailer by name) is insufficient to create an explicit link between the Plaintiffs and Moda.

Order at 19.

**Figure 1: "Best Bets" Column from *Stephano* versus Vogue Runway slideshow**



The Runway Editorial bears several of the characteristics that the Court of Appeals cited in *Stephano* as indicative of newsworthiness, and not "advertising in disguise." For example, both

the *New York Magazine* "Best Bets" column at issue in *Stephano* and the Vogue Runway Feature at issue here were "regular news feature[s] of the editorial portion of the magazine, designed to provide readers with information," and the information was provided solely for newsworthy purposes without respect to "advertising concerns." *Stephano*, 64 N.Y.2d at 180.  A side-by-side comparison shows that the "Best Bets" column at issue in *Stephano* contained far more advertising content than the Vogue Feature here.  *See* Figure 1.

In *Stephano*, informing the conclusion that the "Best Bets" column was not an advertisement in disguise was the fact that the magazine received no payment for mentioning items in the column.  64 N.Y.2d at 180.  The same is true here:  Plaintiffs do not allege (nor could they) that the decision to include any particular photographs or designer works was influenced by any payment from Moda; to the contrary, selection of the photographs was driven solely by the editorial purpose of Vogue – wall-to-wall coverage of the Spring 2020 Ready-to-Wear collection.  *See*, *e.g.*, *Lopez*, 70 A.D.2d at 361 (beauty make-over feature that identified specific products sold by *Seventeen*'s advertisers was not an advertisement in disguise where there was no evidence that the article was prepared in conjunction with the advertisers).  Even if Vogue did receive payments from Moda in conjunction with the Runway Editorial, any suggestion that Vogue's editorial coverage was dictated by such payments is belied by the incontrovertible fact the editorial feature is still online, complete with the photographs of Plaintiffs, but without the link to Moda's site.  Vogue's coverage stands alone, with or without Moda's advertising.  Moreover, the sheer scale of the Runway Editorial's coverage – covering every work presented by 474 different designers – makes it beyond implausible that the coverage was controlled by Moda.

*Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010), is also instructive.  In that case, the plaintiffs asserted a claim under California's commercial misappropriation statute, Cal. Civ.

17

Code § 3344, arising from the use of their names in a *Rolling Stone* magazine "four-page foldout" feature entitled, "Indie Rock Universe" – that was interwoven with advertising for Camel cigarettes. *Id.* The *Stewart* court found that the feature was "noncommercial speech as a matter of law," because "a magazine's editorial content [is not] deemed transformed into commercial speech merely because of its proximity to advertisements touching on the same subject matter." *Id.* at 683, 687.

> As we have already noted, while the magazine is "engaged in commerce," it is not engaged in the production, distribution, or sale of cigarettes. Nor does it represent cigarette manufacturers. . . . While advertising naturally assists in the financing of the magazine, the publication's editorial purpose is the presentation of written analysis of the contemporary American scene—noncommercial speech.

*Id.* at 684 (citing *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 969 (2002)).

Like the defendant in *Stewart*, Vogue is an editorial magazine that sells advertising to retailers, but is not itself alleged to be "engaged in the production, distribution, or sale" of the retail goods sold by Moda. *Stewart*, 181 Cal. App. 4th at 684. Like *Rolling Stone* (and *New York Magazine*), Vogue "is primarily a periodical commentating on events of [fashion] and cultural interests of the day," whose advertisers help finance Vogue's noncommercial speech. *Id.* Furthermore, like the *Stewart* case, Plaintiffs cannot plausibly allege that Vogue's editorial decisions concerning Vogue's Runway editorial coverage (which features every design in the Spring 2020 collections of 474 designers) was dictated or driven by any Moda advertising. *See id.* at 688.

Ultimately, the Runway Editorial is the kind of comprehensive, in-depth editorial coverage of emerging styles and trends that Vogue has been delivering for more than 100 years. Since the mere presence of related advertising does not change the fundamentally public interest character of this work, Section 51 liability cannot lie as a matter of law.

## II.   JUDGMENT SHOULD BE ENTERED FOR CONDE NAST ON ITS ANTI-SLAPP COUNTERCLAIM

The Court should also enter judgment for Conde Nast on its Counterclaim under New York's anti-SLAPP Statute, which courts in the Second Circuit have found applies in federal court, and applies retroactively to claims commenced before the recent amendments to the Statute.

### A.      New York's Amended Anti-SLAPP Statute

"SLAPP is an acronym for a 'strategic lawsuit against public participation,' which is a suit that is brought primarily to chill the valid exercise of a defendant's right to free speech . . . ." *Ernst v. Carrigan*, 814 F.3d 116, 117 (2d Cir. 2016).  In November 2020, New York enacted a series of amendments to its anti-SLAPP law that significantly expanded protections for defendants in meritless cases – like this one – which arise from "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest."  NYCRL § 76-a.

The amended statute broadly defines "action involving public petition and participation" as a "claim based upon: (1) any communication in . . . a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition."  NYCRL § 76-a(1)(a).  Moreover, the term "public interest" "shall be construed broadly, and shall mean *any subject other than a purely private matter*." NYCRL § 76-a(d) (emphasis added).

Particularly relevant here, Section 70-a(1) provides that:

> A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, *may maintain an action, claim, cross claim or counterclaim* to recover damages, including costs and attorney's fees, from any person who commenced ***or continued*** such action; provided that:  (a) costs and attorney's fees ***shall be recovered*** upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not

be supported by a substantial argument for the extension, modification or reversal of existing law . . . .

NYCRL § 70-a(1) (emphasis added).  As set forth below, these statutory provisions apply in this case and warrant an award of fees and costs to Conde Nast.

### B.      The Damages Provisions of New York's Anti-SLAPP Statute Apply in Federal Court

The fee-shifting provision of New York's anti-SLAPP statute applies in federal court.  *See, e.g.*, *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (affirming fees under Nevada anti-SLAPP statute and holding that "'[a]ttorney's fees mandated by state statute are available when a federal court sits in diversity,' these rules would apply in state court had suit been filed there [and] is substantive within the meaning of *Erie*") (quoting *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993)); *Harris*, 2021 WL 5505515, at \*15 (awarding attorneys' fees pursuant to § 70-a after finding that plaintiff failed to plead a claim upon which relief could be granted); *Goldman*, 2021 WL 4099462, at \*4-5 (denying motion to dismiss anti-SLAPP counterclaim because it does not conflict with any federal rule of civil procedure).

The Second Circuit has made clear that the question of whether a state's anti-SLAPP statute applies in federal court hinges on whether the statute "raises the bar for plaintiffs to overcome a pretrial dismissal motion."  *Reid*, 966 F. 3d at 86 n.1.   "[T]he test is whether a Federal Rule of Civil Procedure answers the same question" as the procedural vehicle required under the statute.  *Id.* at 87 (citation and internal quotation marks and alterations omitted).  In *Reid*, the Second Circuit held that the fee provisions of California's anti-SLAPP statute do not apply in federal court because – unlike the New York statute – the California anti-SLAPP statute provides only one (exclusive) procedural vehicle that may be used to obtain a fee award:  a "special motion to strike" under California Civil Procedural Code § 425.16(b)(2).  *Reid*, 966 F.3d at 85.  *Reid* held that because California's special motion to strike "answers the same question" as Federal Rules of Civil

Procedure 12(b)(6) and 56, "federal courts must apply Rules 12 and 56 instead of California's special motion to strike." *Id.* at 88.

*Reid* is readily distinguished from *Adelson*, where the Second Circuit affirmed a fee award under Nevada's anti-SLAPP statute, finding that statute's fee provision to be "unproblematic." *Adelson*, 774 F.3d at 809 (citing *Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938)). As the district court held in *Adelson*, "the traditional rule is that state statutes authorizing attorney's fees are substantive in nature when they embody a substantial policy of the state," and the Nevada anti-SLAPP statue (like the one enacted by New York), "reflects a substantial policy of the state to protect its citizens' constitutional rights to . . . free speech." *Adelson v. Harris*, 973 F. Supp. 2d 467, 493 n.21 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). The difference that permitted application in federal court of Nevada's anti-SLAPP statute – as the Second Circuit later explained in *Reid* – is that the "special motion to dismiss" procedure set forth under "'[t]he Nevada statute does not establish a "reasonable probability of success" standard that must be met without discovery, like the California Anti-SLAPP law.'" *Reid*, 966 F.3d at 86 n.3 (quoting *Adelson*, 973 F. Supp. 2d at 493 n.21). The Second Circuit's approach is consistent with the law of other circuits where the fee-shifting provisions of anti-SLAPP statutes have been applied in federal court when they do not present procedural hurdles that conflict with the Federal Rules. *See e.g.*, *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1322-23 (S.D. Fla. 2020) (Florida's anti-SLAPP statute applies in federal court because it imposes no procedural requirement that answers the same question as Fed. R. Civ. P. 12 or 56) (citing *Parekh v. CBS*, 820 F. App'x 827 (11th Cir. 2020)); *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009); *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 (D.D.C. 2012), *aff'd*, 720 F.3d 932 (D.C. Cir. 2013). *Compare Abbas v. Foreign Policy Grp., LLC*, 783 F.3d

1328, 1337 n.5 (D.C. Cir. 2015) (rejecting application of D.C. anti-SLAPP statute because its

"special motion to dismiss" "answers the same question" as Fed. R. Civ. P. 12 and 56).

Unlike the anti-SLAPP statute of California, New York's anti-SLAPP statute does not

dictate the use of *any* particular procedural mechanism for obtaining fees or damages.  Instead,

Section 70-a requires only that the defendant "demonstrat[e]" that the plaintiff's SLAPP suit was

"commenced or continued without a substantial basis in fact and law and could not be supported

by a substantial argument for the extension, modification or reversal of existing law."  Section 70-

a(1)(a).  One way (but not the exclusive way) a defendant can make this demonstration is by

utilizing the procedural mechanisms set forth in N.Y. C.P.L.R. ("CPLR") §§ 3212 (g) and (h).  *Id.*

But since Section 70-a makes clear that the CPLR procedures are not required to make this

demonstration, there is no conflict with the federal rules.  *See Goldman*, 2021 WL 4099462, at \*5

("To be sure, [NYCRL § 70-a] contemplates that a party pursuing an anti-SLAPP claim will be

able to use those special summary-judgment procedures.  But the provision creating a cause of

action also makes clear that an anti-SLAPP litigant may obtain costs and attorney's fees *without*

using those [CPLR] procedures").  *See also Ctr. for Med. Progress*, 2021 WL 3173804, at \*9

(observing that defendant in SLAPP suit "may maintain an action . . . to recover damages,

including costs and attorney's fees") (quoting § 70-a).[7]

The only requirement imposed on federal courts applying the fee provision of New York's

---

[7] One court in this District has held that Section 70-a is "inapplicable in federal court," but that court's analysis only considered the procedural mechanisms provided under CPLR §§ 3211(g) and (h).  *Nat'l Academy of Television Arts & Sciences, Inc. v. Multimedia Sys. Design, Inc.*, No. 20-CV-7269 (VEC), 2021 WL 3271829 (S.D.N.Y. July 30, 2021).  To the extent that the decision in *Multimedia* found that the statute does not allow federal courts to apply any other procedural tools for determining whether a claim lacks substantial basis in law or fact, Conde Nast respectfully contends that, for the reasons set forth above, that holding is directly contrary to the plain language of Section 70-a(1).

anti-SLAPP statute is that once they have found that the action was "continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law," the statute requires that the court "*shall*" award reasonable attorneys' fees and costs to the defendant.  NYCRL § 70-a(1)(a) (emphasis added).  Since Section 70-a is substantive and does not conflict with any federal rule, it applies in federal court.

C.    **New York's Anti-SLAPP Statute Applies Retroactively**

Every court that has considered the question has uniformly held that the amended anti-SLAPP statute applies retroactively to lawsuits – like this one – that were filed prior to its enactment.  *See Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (finding the new anti-SLAPP statute is "remedial" and "should be given retroactive effect in order to effectuate its beneficial purpose") (citation omitted), *appeal filed*, No. 21-800 (2d Cir. Mar. 26, 2021); *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 27 (S.D.N.Y. 2020) ("It is clear that § 76-a is a remedial statute that should be given retroactive effect."); *Sackler v. Am. Broad. Cos., Inc.*, 71 Misc. 3d 693, 698 (Sup. Ct. N.Y. Cty. 2021) ("[T]he anti-SLAPP amendments are intended to apply retroactively in order to effectuate the remedial and beneficial purpose of the statute.") (citing *In re Gleason*, 97 N.Y.2d 117, 122 (2001)).  Moreover, the express language of Section 70-a provides that it applies retroactively because it extends to suits that were "commenced *or continued* without a substantial basis in fact and law . . . ."  NYCRL § 70-a(1)(a) (emphasis added).

D.    **Conde Nast Is Entitled to Reasonable Attorneys' Fees and Costs Pursuant to Section 70-a**

The Court should award reasonable attorneys' fees and costs to Conde Nast pursuant to New York's anti-SLAPP Statute.  The Statute protects news reporting on fashion, which is indisputably "conduct in furtherance of the exercise of the constitutional right of free speech."

NYCRL § 76-a(2); *see*, *e.g.*, *Sackler*, 71 Misc. 3d at 701 (applying the new SLAPP law to news reporting).  Moreover, Section 76-a provides that the term "public interest" "shall be construed *broadly*, and shall mean *any subject other than a purely private matter*."  NYCRL § 76-a(1)(c) (emphasis added).  The Runway Editorial's coverage of the Spring 2020 Ready-to-Wear collections indisputably falls within the "broad" reach of Section 76-a.  Furthermore, courts routinely apply anti-SLAPP statutes to right of publicity claims.  *See*, *e.g.*, *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016); *Davis v. Elec. Arts, Inc.*, 775 F. 3d 1172 (9th Cir. 2015); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1114 (W.D. Wash. 2010) (applying Washington anti-SLAPP statute to right of publicity claim).

Next, for the reasons discussed at length above, *see supra* § I, Plaintiffs' right of publicity claims were "continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."  NYCRL § 70-a(1)(a).  Since Plaintiffs' right of publicity claims are precluded as matter of law by the newsworthiness exception, *see supra* § I, their claims indisputably fail to meet the test of having a "*substantial* basis in fact or law."  For example, in *Harris*, 2021 WL 5505515, at *13-14, the court awarded attorneys' fees under Section 70-a after finding that the plaintiff's claims failed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).  *See also Bongino*, 477 F. Supp. 3d at 1324 (holding that defendant is eligible for a fee award under Florida's anti-SLAPP statute after dismissing plaintiff's claims pursuant to Rule 12(b)(6)).

The fact that Plaintiffs continued their meritless claims – even after Conde Nast explained why they lack substantial basis in law, Counterclaim ¶¶ 67, 71, and even after this Court made clear that the Runway Editorial, "viewed as a whole, is not commercial," Order at 16 – is an additional basis for awarding anti-SLAPP fees here.  As one court found in awarding anti-SLAPP

fees to a media defendant:

> Plaintiffs knew or should have known long ago of the non-meritorious and futile nature of the instant litigation.  The conduct is especially egregious where, as here, the defendant is a news media organization exercising the fundamental rights of a free press, which New York Courts have long and zealously guarded.  Owing simply to the exercise of their constitutional rights, defendants have been forced to suffer this litigation.  Under the circumstances, the award of costs and attorney fees is mandatory.

*Reus v. ETC Housing Corp.*, 72 Misc. 3d 479, 488 (Sup. Ct. Clinton Cty. 2021).

Finally, Plaintiffs have not attempted to make *any* "argument for the extension, modification or reversal of existing law" much less a "substantial" one, as required to avoid liability under the anti-SLAPP statute.  NYCRL § 70-a(1)(a).  Nor could they.  The newsworthiness exception is firmly rooted in the nation's foundational commitment to a free press.  "Indeed, at bottom, courts have cabined section 51 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest' guaranteed by the First Amendment."  *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 120 (2018) (quoting *Ann-Margret*, 498 F. Supp. at 404).

By forcing Conde Nast to defend itself against meritless litigation arising from the exercise of First Amendment-protected activity, Plaintiffs violated New York's anti-SLAPP statute and are liable for Conde Nast's attorneys' fees and costs.  Unless Plaintiffs are held accountable for their tortious activity, the purpose of the anti-SLAPP law will be frustrated and it will be open season on New York publishers forced to defend against lawsuits that inhibit their exercise of constitutionally protected free speech rights.

## **CONCLUSION**

For the foregoing reasons, judgment should be entered for Conde Nast on Plaintiffs' right of publicity claims and on Conde Nast's anti-SLAPP Counterclaim.

Dated:  New York, New York
       January 21, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By  */s/ Elizabeth A. McNamara*
     Elizabeth A. McNamara
     Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel. (212)-489-8230
Email:  lizmcnamara@dwt.com
       adamrich@dwt.com

*Attorneys for Defendants Advance*
*Publications, Inc. d/b/a/ Conde Nast*
*and Advance Magazine Publishers,*
*Inc., d/b/a Conde Nast*